No. 22-55890

---

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

Kyle Hanagami,

*Plaintiff-Appellant*

v.

Epic Games, Inc., a North Carolina corporation; and
Does 1 through 10, inclusive,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Central District of California
No. 2:22-cv-02063-SVW-MRW
Hon. Stephen V. Wilson

---

## EXCERPTS OF RECORD
### Volume 1 of 1

---

David L. Hecht
Maxim Price
Kathryn Lee Boyd
HECHT PARTNERS LLP
125 Park Avenue, 25th Floor
New York, NY 10017
Tel: (212) 851-6821
*Attorneys for Plaintiff-Appellant*
*Kyle Hanagami*

## INDEX

| Document | File Date | ECF NO. | ER NO. |
|---|---|---|---|
| **Volume 1** | | | |
| Order Granting Motion To Dismiss [38] | 08/24/2022 | 45 | 4-18 |
| Reply Brief In Support of Motion to Dismiss | 06/13/2022 | 43 | 19-37 |
| Opposition Brief to Defendant's Motion to Dismiss | 06/06/2022 | 39 | 38-70 |
| Request for Judicial Notice In Support of Plaintiff's Opposition to Defendant's Motion to Dismiss | 06/06/2022 | 40 | 71-74 |
| Notice of Manual Filing of Lodging of Exhibits 1 and 2 to the Declaration of David L. Hecht | 06/06/2022 | 38 | 75 |
| Declaration of David L. Hecht In Support of Plaintiff's Opposition to Motion to Dismiss | 06/06/2022 | 41 | 76-78 |
| Exhibit 1 to Declaration of David L. Hecht | 06/06/2022 | 41-1 | 79 |
| Exhibit 2 to Declaration of David L. Hecht | 06/06/2022 | 41-2 | 80 |
| Motion to Dismiss | 05/27/2022 | 31 | 81-112 |
| Request for Judicial Notice In Support of Defendant's Motion to Dismiss | 05/27/2022 | 32 | 113-117 |
| Notice of Manual Filing of Lodging of Exhibits A and B to the Declaration of Dale Cendali | 05/27/2022 | 34 | 118 |
| Declaration of Dale Cendali | 05/27/2022 | 33 | 119-121 |
| Exhibit A to Declaration of Dale Cendali | 05/27/2022 | 33-1 | 122 |
| Exhibit B to Declaration of Dale Cendali | 05/27/2022 | 33-2 | 123 |

| | | | |
|---|---|---|---|
| Exhibit C to Declaration of Dale Cendali | 05/27/2022 | 33-3 | 124-126 |
| Exhibit D to Declaration of Dale Cendali | 05/27/2022 | 33-4 | 127-136 |
| Exhibit E to Declaration of Dale Cendali | 05/27/2022 | 33-5 | 137-140 |
| Exhibit F to Declaration of Dale Cendali | 05/27/2022 | 33-6 | 141-150 |
| Exhibit G to Declaration of Dale Cendali | 05/27/2022 | 33-7 | 151-164 |
| Exhibit H to Declaration of Dale Cendali | 05/27/2022 | 33-8 | 165-170 |
| Complaint | 03/29/2022 | 1 | 171-194 |
| Exhibit A to Complaint | 05/27/2022 | 1-1 | 195-197 |
| Notice of Appeal | 09/23/2022 | 46 | 198 |
| Docket Entries | | | 199-203 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02063-SVW-MRW | Date | August 24, 2022 |
|---|---|---|---|
| Title | *Kyle Hanagami v. Epic Games Inc.* | | |

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE |
|---|---|

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:**       ORDER GRANTING MOTION TO DISMISS [38]

### I.    INTRODUCTION

Before the Court is a motion to dismiss filed by Defendant Epic Games against Plaintiff Hanagami.   Bringing suit under the Copyright Act and California's Unfair Competition Law, Plaintiff alleges that Defendant copied Plaintiff's Registered Choreography by creating an animated dance for Defendant's *Fortnite* game.

For the below reasons, Defendant's motion to dismiss is GRANTED.

### II.    BACKGROUND

Plaintiff Kyle Hanagami is a professional choreographer and dance instructor in Los Angeles, California.   Compl. ¶ 11, ECF No. 1.   On November 11, 2017, Plaintiff published a YouTube video of himself and others dancing to the song "How Long," by Charlie Puth.   *Id.* ¶ 16.   The approximately five-minute long video[1] includes five different groups of two or three dancers performing the same choreography.   *Id.*; *see* Declaration of Dale M. Cendali ("Cendali Decl."), Ex. A.[2]

Plaintiff's video is registered with the United States Copyright Office on February 20, 2021, at Copyright Registration Number PA 2-277-839, which "covers the 'How Long' Choreography," but excludes "music" from the registration (the "Registered Choreography").   *Id.* ¶ 1, *see* Ex. A.

---

[1] As of July 27, 2022, the video is available at the following URL: https://www.youtube.com/watch?v=iW2yUrXXRTI.
[2] In deciding the motion to dismiss, the Court may consider the pleadings, exhibits attached to the Complaint, and other materials integral to the Complaint.   *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

Initials of Preparer                    :
                                               PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02063-SVW-MRW | Date | August 24, 2022 |
|----------|------------------------|------|-----------------|
| Title | *Kyle Hanagami v. Epic Games Inc.* | | |

Defendant Epic Games, Inc., is a video game company that develops and distributes various video games. Compl. ¶¶ 18–19. One of its games is *Fortnite*, a free-to-play multiplayer shooting game where players can explore a virtual world, build and destroy structures, and compete to be the last player alive. *Id.* ¶¶ 4, 20–22.

Though *Fortnite* is free to play, it has an in-game marketplace (the "Item Shop") where players can purchase virtual currency to, in turn, purchase virtual customizations for their in-game characters. *Id.* ¶ 22. These customizations include new clothes, weapons, or, as relevant here, "emotes." *Id.* Emotes are animated movements or dances, which players can perform in *Fortnite*. *Id.*

The emote at the heart of this case is called "It's Complicated." *Id.* ¶ 38. Players can purchase the "It's Complicated" emote in the Item Shop to perform while playing *Fortnite*. *Id.* ¶ 39; *see* Cendali Decl., Ex. B. Plaintiff alleges that the "It's Complicated" emote contains "the most recognizable portion of Plaintiff's Registered Choreography, the portion for the hook at the beginning of the chorus of the song[.]" *Id.* ¶ 40.

The portion of the work at issue is set to four counts of music; the dancers repeat the movements twice in the song's chorus (the "Steps"). Having reviewed Plaintiff's video and Defendant's emote, the Court compared side-by-side still images of the dances, which are included at the end of this order in an appendix. *See* Appendix. Ten of the poses in the video and the emote are the same. *See id.*[3]

Plaintiff brings claims of direct and contributory copyright infringement and a claim for unfair competition. Compl. ¶¶ 53–88. Defendant moves to dismiss each of Plaintiff's claims.

### III.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to

---

[3] The parties reference the works by discussing the number of counts or beats each work contains, but arrive at different numbers. First is Plaintiff's Registered Choreography, which he refers to as a 96-count choreography, repeated five times. *See* Opp'n at 16. Defendant refers to the work as including 104 counts of music, repeated five times. *See* Mot. at 4. Second are Plaintiff's steps, which are set to four beats of music and performed twice (but non-consecutively) in the sixteen-beat chorus. Third is the "It's Complicated" emote, which includes sixteen beats of music. Plaintiff's Steps are performed over the first four beats of Defendant's sixteen-beat emote.

Initials of Preparer                                  :

PMC

**ER_005**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02063-SVW-MRW | Date | August 24, 2022 |
|---|---|---|---|
| Title | *Kyle Hanagami v. Epic Games Inc.* | | |

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). Thus, "[w]hile legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679

## IV.    DISCUSSION

### A.  COPYRIGHT INFRINGEMENT

A plaintiff bringing a claim for copyright infringement must sufficiently allege: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). The "second element has two distinct components: 'copying' and 'unlawful appropriation.'" *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018). Here, Plaintiff alleges ownership of the Registered Choreography and copying. *See* Compl. ¶ 1. The question before this Court is whether the Plaintiff has sufficiently stated a claim of "unlawful appropriation." *Rentmeester*, 883 F.3d at 1117.

To evaluate "unlawful appropriation," courts look to whether the works are "substantially similar." *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1118 (9th Cir. 2018). The test for substantial similarity in the Ninth Circuit contains both an "extrinsic" and an "intrinsic" component. The extrinsic component compares "specific criteria which can be listed and analyzed" to determine whether the works are substantially similar. *Funky Films, Inc. v. Time Warner Entm't Co.*, L.P., 462 F.3d 1072, 1077 (9th Cir. 2006). The intrinsic component examines an ordinary person's subjective impressions of the similarities between the two works. *Id.*

"Only the extrinsic test's application may be decided by the court as a matter of law." *Rentmeester*, 883 F.3d at 1118 (citations omitted). Before comparing the works under the extrinsic test, the Court "must 'filter out' the unprotectable elements of the plaintiff's work—primarily ideas and concepts, material in the public domain, and *scènes à faire* (stock or standard features that are commonly associated with the treatment of a given subject)." *Id.* (citations omitted). "The protectable elements

Initials of Preparer          :

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02063-SVW-MRW | Date | August 24, 2022 |
|---|---|---|---|
| Title | *Kyle Hanagami v. Epic Games Inc.* | | |

that remain are then compared to corresponding elements of the defendant's work to assess similarities in the objective details of the works." *Id.* (citations omitted).

### 1. Filtering

Defendant argues that Plaintiff's Steps are unprotectable and must therefore be "filtered out" in assessing the similarity between the two works. The Court begins with *Rentmeester*, which both parties rely on. The plaintiff alleged that the defendant, Nike, copied a photograph of Michael Jordan leaping toward basketball hoop with a basketball above his head in a "*grand jeté*" pose. *Rentmeester*, 883 F.3d at 1115. Alone, this pose was unprotectable. *Id.* at 1119.

However, the Ninth Circuit grappled with the difficulty of "filtering out" a work's protected and unprotected elements. *See Rentmeester*, 883 F.3d at 1117–23. The court explained, "[c]ertain types of works can be dissected into protected and unprotected elements more readily than others." *Id.* at 1118. For example, with "novels, plays, and motion pictures," many "protectable elements of expression" like "plot, themes, dialogue, mood, setting, pace, characters, and sequence of events" can be objectively compared. *Id.* at 1118–19.

In terms of "filtering," however, the court explained that, though "photos can be broken down into objective elements that reflect the various creative choices the photographer made in composing the image—choices related to subject matter, pose, lighting, camera angle, depth of field, and the like[,] [citation], none of those elements is subject to copyright protection when viewed in isolation." *Id.* at 1119.

The Ninth Circuit explained:

For example, a photographer who produces a photo using a highly original lighting technique or a novel camera angle cannot prevent other photographers from using those same techniques to produce new images of their own, provided the new images are not substantially similar to the earlier, copyrighted photo. With respect to a photograph's subject matter, no photographer can claim a monopoly on the right to photograph a particular subject just because he was the first to capture it on film. A subsequent photographer is free to take her own photo of the same subject, again so long as the resulting image is not substantially similar to the earlier photograph.

*Id.* Though one of the photo's "highly original elements" was Jordan's pose, the pose alone was not copyrightable. Rather, the photographer was "entitled to protection only for the way the pose is expressed in his photograph, a product of not just the pose but also the camera angle, timing, and shutter

Initials of Preparer _____ : _____

PMC

**ER_007**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02063-SVW-MRW | Date | August 24, 2022 |
|---|---|---|---|
| Title | *Kyle Hanagami v. Epic Games Inc.* | | |

speed [the photographer] chose." *Id.*   Nevertheless, the court did not "filter out" the pose or any of the elements that, when "viewed in isolation," would not be subject to protection.   *See id.*

Choreography is similar.   Defined as "the composition and arrangement of a related series of dance movements and patterns organized into a coherent whole," choreographic works are composed of a number of individual poses that, when "viewed in isolation," would not be protectable.

Here, Defendant contends that not only are the individual poses unprotectable, but the Steps as a whole—the two-second combination of eight bodily movements, set to four beats of music—are unprotectable.   Defendant argues that the Steps are similar to the pose in *Rentmeester*, an idea or "building blocks for a choreographer's expression."[4]

In large part, Defendant relies on guidance from the U.S. Copyright Office, which recognizes the continuum between copyrightable choreography and uncopyrightable dance.   *See* U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 805.1 (3d ed. 2017) ("Compendium (Third)"); *see also Horgan v. Macmillan, Inc.,* 789 F.2d 157, 161 (2d Cir. 1986) ("Social dance steps and simple routines are not copyrightable.... Thus, for example, the basic waltz step, the hustle step, and the second position of classical ballet are not copyrightable.").[1]   Courts defer to the Copyright Office's views expressed in such materials "only to the extent that those interpretations have the 'power to persuade.'"   *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038, 1042 (9th Cir. 2014), *as amended* (July 9, 2014).

Guidance from the Copyright Office suggests that the Steps are unprotectable.   For example, the Copyright Office rejected a claim to steps called the "Floss," but when those steps were incorporated into a longer work, the Copyright Office registered the work.   *See* Cendali Decl., Ex. D, Ex. E.   The Copyright Office rejected a claim to the "Carlton" because it was merely a "simple routine," *see id.*, Ex. F at 6, and a claim to a dance called the "Five-Petal Flower" routine, *id.*, Ex. H.   And the Copyright Office explained in its Compendium, that even if the "Made in the USA" dance might be registered as a whole

---

[4] Conceptually, this is similar to *Newton v. Diamond*, where the district court considered whether three notes sampled from a song were protectable, and decided they were not.   *See Newton v. Diamond*, 204 F. Supp. 2d 1244, 1254 (C.D. Cal. 2002).   On appeal, the Ninth Circuit "assum[ed] that the sampled segment of the composition was sufficiently original to merit copyright protection, [but] nevertheless affirm[ed] on the ground that [the defendants'] use was *de minimis* and therefore not actionable." *Newton v. Diamond*, 388 F.3d 1189, 1192 (9th Cir. 2004).   Plaintiff reads this line to suggest that the Ninth Circuit disagreed with the district court's decision; however, the Ninth Circuit did not reach the question.   The parties do not cite any other authorities that would enable the Court to compare music sampling and Defendant's "sampling" of Plaintiff's choreography. Facially, Defendant's conduct here could be analogized to a defendant copying a brief phrase from an underlying musical composition and incorporating that into its own work.   However, because the issue is not before the Court, the Court thinks it inappropriate to resolve at this stage.

Initials of Preparer                :

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02063-SVW-MRW | Date | August 24, 2022 |
|---|---|---|---|
| Title | *Kyle Hanagami v. Epic Games Inc.* | | |

when "[d]uring the chorus, the dancers form the letters 'U, S, A' with their arms…the Office would reject a claim limited to the 'U, S, A' gesture."   Compendium (Third) § 805.5(A).

To a degree, Plaintiff's Steps here involve more creativity than "the basic waltz step, the hustle step, and the second position of classical ballet."   *Horgan*, 789 F.2d at 161.   But Plaintiff's Steps resemble the Floss, the Carlton, or other examples in the Copyright Compendium:

> José Eduardo da Silva created the choreography for a complex dance production titled, Tango de Janeiro. One of the dances in the production incorporates an extensive number of steps and routines from a social dance.   While the overall production could be registered as a choreographic work, the U.S. Copyright Office would reject a claim limited to the adapted social dance.

> Butler Beauchamp is a wide receiver for a college football team. Whenever he scores a touchdown, Butler performs a celebratory dance in the endzone. The dance merely consists of a few movements of the legs, shoulders, and arms. The Office would refuse to register this dance as a choreographic work.

*See* Compendium (Third), §§ 805.4(D), 805.5(A).

Moreover, the Copyright Act's legislative history specifically states that "choreographic works do not include social dance steps and simple routines." H.R. Rep. No. 94-1476, at 54 (1976), reprinted in 1976 U.S.C.C.A.N. at 5667; S. Rep. No. 94-473, at 52 (1975); *see Brantley v. Epic Games, Inc.*, 463 F. Supp. 3d 616, 623 (D. Md. 2020) (discussing, but not deciding, whether the Running Man dance could be subject to copyright protection).   And the Compendium recognizes that "social dances, simple routines, and other uncopyrightable movements cannot be registered as separate and distinct works of authorship, *even if they contain a substantial amount of creative expression*."   *See* Compendium (Third), § 805.4(D) (emphasis added).

Plaintiff does nothing to distinguish this guidance, simply arguing it is not persuasive without explaining why.   Rather, Plaintiff references his originality and creativity in composing the Steps, something to which the Court is sympathetic.   *See Rentmeester*, 883 F.3d at 1115; *compare Folkens*, 882 F.3d at 774 ("[A] depiction of two dolphins crossing under sea, one in a vertical posture and the other in a horizontal posture, is an idea first expressed in nature and as such is within the common heritage of humankind.").   But whichever way the Court evaluates Plaintiff's Steps—two seconds, four beats of music, or eight body positions, repeated ten times throughout the Registered Choreography—Defendant has the better of the argument.   There is no authority to suggest that Plaintiff's Steps are protectable when

Initials of Preparer                    : _____

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02063-SVW-MRW | Date | August 24, 2022 |
|----------|----------------------|------|-----------------|
| Title | *Kyle Hanagami v. Epic Games Inc.* | | |

viewed out of the context of the whole of Plaintiff's work; indeed, the weight of authority suggests otherwise.

On the continuum of choreography, the Steps are closer to a short routine like the "Floss" dance or to the "U, S, A" movements, neither of which would not be protectable.  Numerically, the Steps make up as small component of Plaintiff's work, suggesting that the Copyright Office would not register the two-second Steps as a discrete work.[5]  "The fact that a dance or movement may contain more than a trivial amount of original authorship is irrelevant to th[e] determination."  Compendium (Third), § 805.5(B).

Accordingly, the Court concludes that, like in *Rentmeester*, Plaintiff is "entitled to protection only for the way the [Steps] [are] expressed in his [Registered Choreography]," a product of the various creative choices Plaintiff made in composing the Registered Choreography—i.e., in the entire five-minute work.  *See Rentmeester*, 883 F.3d at 1119; *see also Feist*, 499 U.S. at 347–48 (finding that an author's selection and arrangement of factual material are entitled to protection if sufficiently original, even though the author cannot claim copyright protection for the underlying factual material).

### 2. Substantial Similarity

With the above discussion in mind, the Court evaluates the "similarities in the objective details of the works."  *Rentermeester*, 883 F.3d at 1118. (citations omitted).  In conducting an extrinsic analysis, the Ninth Circuit requires the works to be "considered as a whole."  *Apple Comput., Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994).[6]

Choreographic works are based on a myriad of creative elements, including rhythmic movement in a defined space, compositional arrangement, musical or textual accompaniment,[7] dramatic content, presentation before an audience, and execution by skilled performance.  *See* Compendium (Third),

---

[5]  By Plaintiff's count, there are 480 counts of choreography in Plaintiff's total work (96 counts of choreography, repeated five times).  The Steps are performed for a total of 40 counts (eight counts in each chorus).  This amounts to 8% of Plaintiff's work.  The Court references this figure not to suggest that Defendant's copying was *de minimis*, but because it illustrates that Plaintiff's Steps are only a small component of Plaintiff's work.  This too weighs against a finding that the Steps are protectable in isolation.

[6]  Though Defendant argues that the Steps make up only a small portion of the entirety of the *Fortnite* ecosystem, this invites an incorrect analysis: in *Newton*, the Ninth Circuit recognized that the substantiality of the copying "is measured by considering the qualitative and quantitative significance of the copied portion in relation to the *plaintiff's* work as a whole."  *Newton*, 388 F.3d at 1192 (emphasis added).

[7]  Here, Plaintiff's copyright registration excludes music.  *See* Compl., Ex. A.

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

**ER_010**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02063-SVW-MRW | Date | August 24, 2022 |
|---|---|---|---|
| Title | *Kyle Hanagami v. Epic Games Inc.* | | |

§ 805.2(A)–(F).  Here, the two works are not substantially similar, because other than the four identical counts of poses—which are unprotected alone—Plaintiff and Defendant's works do not share any creative elements.  *See Pasillas v. McDonald's Corp.*, 927 F.2d 440, 443 (9th Cir. 1991) (no infringement where unprotectable elements copied).  The two works contain a series of different poses performed in different settings and by different types of performers: Plaintiff's dance is performed by humans in the physical world, and Defendant's Emote by animated characters in a virtual world.  The works are performed for different audiences, as Plaintiff's video was performed at Plaintiff's dance studio and published for a YouTube audience.  Defendant's Emote is performed by *Fortnite* players in-game for an in-game audience.  Beyond the Steps, Plaintiff identifies no other similar creative elements in Plaintiff and Defendant's choreographic works.

Therefore, dismissal of Plaintiff's copyright claims is appropriate.

**B. UNFAIR COMPETITION LAW**

Next, Defendant moves to dismiss Plaintiff's Unfair Competition Claim, which Defendant asserts is preempted by the Copyright Act.[8]  The Ninth Circuit applies a two-part test to evaluate preemption in this context.  *See Laws v. Sony Music Ent. Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006).

There is no dispute that the first element of the test, whether the "subject matter" of the state law claim falls within the "subject matter" of copyright, is satisfied.  Thus, the Court turns to the second element—whether the rights asserted under state law are equivalent to the "exclusive rights" of copyright holders.  *Id.* at 1137–38; *see also Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1019 (9th Cir. 2017).

**1. Equivalent Rights Requirement**

Section 106 affords copyright owners the "exclusive rights" to display, perform, reproduce, or distribute copies of a copyrighted work, to authorize others to do those things, and to prepare derivative works based upon the copyrighted work.  *Maloney*, 853 F.3d at 1019 (citing 17 U.S.C. § 106).  "To survive preemption, the state cause of action must protect the rights which are qualitatively different from the copyright rights.  The state claim must have an extra element which changes the nature of the action."  *Id.* (citation omitted).

---

[8] Defendant also makes a motion to strike based on anti-SLAPP grounds.  Because Plaintiff's unfair competition claim is preempted, the Court need not address this motion.

Initials of Preparer         :

PMC

**ER_011**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02063-SVW-MRW | Date | August 24, 2022 |
|---|---|---|---|
| Title | *Kyle Hanagami v. Epic Games Inc.* | | |

Plaintiff argues that Defendant's use of the Registered Choreography created a "false impression" that Plaintiff endorsed *Fortnite*.  Opp'n at 22– 23 (citing Compl. at ¶¶ 48–49, 83–84).  However, the cited portions of the complaint make clear that Plaintiff's claim is based on the copying of Plaintiff's registered choreography.[9]  Without more, this is insufficient to avoid preemption.  *See Brantley,* 463 F. Supp. 3d at 623; *see also Pellegrino v. Epic Games, Inc.*, 451 F. Supp. 3d 373, 390 n. 9 (E.D. Pa. 2020)

*Laws,* which held that the Copyright Act preempted the plaintiff's right to publicity claim, is illustrative.  *Laws v. Sony Music Ent. Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006).  There, the plaintiff brought a right of publicity claim claim against a defendant who reproduced a sample of the plaintiff's voice in a song.  *Id.* at 1136.  The court held that even though the right to publicity claim included an additional element—"commercial use"—plaintiff's claim was still, in essence, a copyright claim.  *Id.*; *see also Del Madera Props. v. Rhodes & Gardner,* 820 F.2d 973, 977 (9th Cir.1987), *overruled on other grounds, Fogerty v. Fantasy, Inc.,* 510 U.S. 517 (1994) (finding unfair competition claim preempted where plaintiff alleged unlawful misappropriation that was "part and parcel of the copyright claim").

Here, too, Plaintiff's argument that Epic's use of the choreography involves the additional element of "false endorsement" does not transform the nature of the action.  *See* Compl. ¶ 84 ("By misappropriating Hanagami's dance and through the improper copying and use of the Registered Choreography, Defendants have engaged in business acts or practices that constitute unfair competition[.]").  To the contrary, the unfair competition claim is based exclusively on the misappropriation of the original work, which is "part and parcel of the copyright claim."  *See Del Madera*, 920 F.2d at 977.

Therefore, Plaintiff's Unfair Competition claim is preempted by the Copyright Act.

**V.   CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.

**IT IS SO ORDERED.**

---

[9] Paragraphs 48 and 49 assert in a conclusory manner that Defendant created a "false impression that Hanagami endorsed Fortnite."  Without additional facts, these conclusions are insufficient to state a claim or "transform the nature of the action." *Laws,* 448 F.3d at 1144.

:

Initials of Preparer

PMC

**ER_012**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02063-SVW-MRW | Date | August 24, 2022 |
|---|---|---|---|
| Title | *Kyle Hanagami v. Epic Games Inc.* | | |

## APPENDIX

| Plaintiff's Choreography | Defendant's Emote |
|---|---|

1.




2.




Initials of Preparer      PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02063-SVW-MRW | Date | August 24, 2022 |
|---|---|---|---|
| Title | *Kyle Hanagami v. Epic Games Inc.* | | |

3.

 

4.

 

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02063-SVW-MRW | Date | August 24, 2022 |
|----------|------------------------|------|-----------------|
| Title | *Kyle Hanagami v. Epic Games Inc.* | | |

**5.**

 

**6.**

 

Initials of Preparer   PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02063-SVW-MRW | Date | August 24, 2022 |
|---|---|---|---|
| Title | *Kyle Hanagami v. Epic Games Inc.* | | |

**7.**

 

**8.**

 

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02063-SVW-MRW | Date | August 24, 2022 |
|---|---|---|---|
| Title | *Kyle Hanagami v. Epic Games Inc.* | | |

**9.**

 

**10.**

 

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02063-SVW-MRW | Date | August 24, 2022 |
|---|---|---|---|
| Title | *Kyle Hanagami v. Epic Games Inc.* | | |

**11.**




_____ : _____

Initials of Preparer

PMC

**ER_018**

Dale M. Cendali (admitted *pro hac vice*)
dale.cendali@kirkland.com
Joshua L. Simmons (admitted *pro hac vice*)
joshua.simmons@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Yungmoon Chang (SBN 311673)
yungmoon.chang@kirkland.com
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
Telephone: (310) 552-4200
Facsimile: (310) 552-5900

*Attorneys for Defendant Epic Games, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLE HANAGAMI, an individual,<br><br>        Plaintiff,<br><br>    v.<br><br>EPIC GAMES, INC., a North Carolina Corporation, et al.,<br><br>        Defendants. | CASE NO. 2:22-cv-02063-SVW-MRWx<br><br>**DEFENDANT EPIC GAMES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND SPECIAL MOTION TO STRIKE (ANTI-SLAPP), OR IN THE ALTERNATIVE, MOTION TO STRIKE CERTAIN FORMS OF RELIEF**<br><br>Complaint Filed Date:  March 29, 2022<br><br>Judge:          Stephen V. Wilson<br>Hearing Date:  June 27, 2022<br>Time:            1:30pm<br>Courtroom:    10A |

# TABLE OF CONTENTS[1]

**Page**

I.   INTRODUCTION ...................................................................................... 1

II.  ARGUMENT .............................................................................................. 2

    A.   Plaintiff's Copyright Infringement Claims Should Be Dismissed ................ 2

        1.   Fortnite Is Not Substantially Similar to Plaintiff's Choreography ........................................................................ 2

        2.   The Steps Are Not Protectable ............................................... 3

        3.   The Steps Are Not Substantially Similar to the Emote ....... 7

    B.   Plaintiff's UCL Claim Should Be Dismissed and Stricken ............ 9

        1.   The Copyright Act Preempts Plaintiff's UCL Claim .......... 9

        2.   Plaintiff's Claim Separately Should Be Stricken ............... 10

    C.   Certain of Plaintiff's Requested Remedies Should Be Stricken ................. 12

III. CONCLUSION .......................................................................................... 12

---

[1] Capitalized terms not defined herein were defined previously in Epic's opening brief. Dkt. 31 ("Br.").

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3 **Cases**

4  *Apple Comput., Inc. v. Microsoft Corp.*,
     35 F.3d 1435 (9th Cir. 1994) ....................................................... 2
5

6  *Estate of B.H. v. Netflix, Inc.*,
     No. 21 Civ. 06561, 2022 WL 551701 (N.D. Cal. Jan. 12, 2022) ........................... 11, 12

7  *Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC*,
     803 F.3d 1032 (9th Cir. 2015) ....................................................... 5
8

9  *Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC*,
     No. 11 Civ. 05506, 2012 WL 6548505 (C.D. Cal. Dec. 14, 2012) ....................... 4, 5, 7

10 *Brantley v. Epic Games, Inc.*,
     463 F. Supp. 3d 616 (D. Md. 2020) ....................................................... 1, 2, 9
11

12 *Brown v. Entm't Merchants Ass'n*,
     564 U.S. 786 (2011) ....................................................... 11

13 *Butler v. Target Corp.*,
     323 F. Supp. 2d 1052 (C.D. Cal. 2004) ....................................................... 10
14

15 *Chey v. Pure Flix Ent. LLC*,
     No. 16 Civ. 04362, 2017 WL 5479640 (C.D. Cal. Feb. 10, 2017) ....................... 8

16 *Consumer Justice Ctr. v. Trimedica Int'l, Inc.*,
     107 Cal. App. 4th 595 (2003) ....................................................... 12
17

18 *Cusano v. Klein*,
     473 F. App'x 803 (9th Cir. 2012) ....................................................... 10, 11

19 *Derek Andrew, Inc. v. Poof Apparel Corp.*,
     528 F.3d 696 (9th Cir. 2008) ....................................................... 2, 12
20

21 *DuMond v. Reilly*,
     No. 19 Civ. 08922, 2021 WL 733311 (C.D. Cal. Jan. 14, 2021) ....................... 8

22 *Fahmy v. Jay-Z*,
     No. 07 Civ. 05715, 2008 WL 11284593 (C.D. Cal. Mar. 19, 2008) ....................... 2, 9
23

24 *FilmOn.com Inc. v. DoubleVerify Inc.*,
     7 Cal. 5th 133 (2019) ....................................................... 12

25 *Fisher v. Dees*,
     794 F.2d 432 (9th Cir. 1986) ....................................................... 3
26

27 *Gable v. Nat'l Broad. Co.*,
     727 F. Supp. 2d 815 (C.D. Cal. 2010) ....................................................... 9

28

*Harper & Row Pubs., Inc. v. Nation Enters.*,
  471 U.S. 539 (1985).................................................................................. 8

*Henley v. Devore*,
  No. 09 Civ. 00481, 2009 WL 10697982 (C.D. Cal. July 8, 2009)............................. 10

*Horgan v. Macmillan, Inc.*,
  789 F.2d 157 (2d Cir. 1986) .........................................................4, 5, 6, 7

*Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co.*,
  170 F. Supp. 3d 1249 (C.D. Cal. 2016)............................................................ 10

*Make Him Smile, Inc. v. Trek Bicycle Corp.*,
  No. 17 Civ. 07136, 2018 WL 5986983 (C.D. Cal. Jan. 18, 2018) ...................... 9

*Maloney v. T3Media, Inc.*,
  853 F.3d 1004 (9th Cir. 2017) ...................................................................... 10

*Meeropol v. Nizer*,
  560 F.2d 1061 (2d Cir. 1977) ........................................................................ 8

*Morris v. Bus. Concepts, Inc.*,
  283 F.3d 502 (2d Cir. 2002) .......................................................................... 5

*Motown Record Corp. v. George A. Hormel & Co.*,
  657 F. Supp. 1236 (C.D. Cal. 1987) ............................................................. 10

*N.Y. Mercantile Exch., Inc. v. IntercontinentalExchange, Inc.*,
  389 F. Supp. 2d 527 (S.D.N.Y. 2005), *aff'd*, 497 F.3d 109 (2d Cir. 2007) .................. 5

*Newton v. Diamond*,
  388 F.3d 1189 (9th Cir. 2004) ...................................................................... 3

*No Doubt v. Activision Publ'g, Inc.*,
  192 Cal. App. 4th 1018 (2011) .................................................................... 11

*Ojjeh v. Brown*,
  43 Cal. App. 5th 1027 (2019) .......................................................... 10, 11, 12

*Pasillas v. McDonald's Corp.*,
  927 F.2d 440 (9th Cir. 1991) ........................................................................ 7

*Pellegrino v. Epic Games, Inc.*,
  451 F. Supp. 3d 373 (E.D. Pa. 2020)................................................... 2, 9, 10

*Rentmeester v. Nike, Inc.*,
  883 F.3d 1111 (9th Cir. 2018) ...................................................................... 4

*Rickets v. CBS Corp.*,
  439 F. Supp. 3d 1199 (C.D. Cal. 2020) ......................................................... 9

*Rosen v. Netfronts, Inc.*,
  No. 12 Civ. 00658, 2013 WL 3467205 (C.D. Cal. July 9, 2013)............................ 12

*Roy Exp. Co. Establishment v. Columbia Broad. Sys., Inc.*,
  503 F. Supp. 1137 (S.D.N.Y. 1980) ................................................................ 8

*Schroeder v. Volvo Grp. N.A., LLC*,
  No. 20 Civ. 05127, 2020 WL 6562242 (C.D. Cal. Sept. 3, 2020) .............................. 10

*Serova v. Sony Music Entm't*,
  44 Cal. App. 5th 103 (2020) ................................................................ 11

*Skidmore v. Led Zeppelin*,
  952 F.3d 1051 (9th Cir. 2020) ................................................................ 7

*Solid Oak Sketches, LLC v. 2K Games, Inc.*,
  No. 16 Civ. 00724, 2016 WL 4126543 (S.D.N.Y. Aug. 2, 2016) .............................. 12

*Sollberger v. Wachovia Sec., LLC*,
  No. 09 Civ. 90766, 2010 WL 11595839 (C.D. Cal. Feb. 22, 2010) ............................ 9

*Stafford v. Dollar Tree Stores, Inc.*,
  No. 13 Civ. 01187, 2014 WL 1330675 (E.D. Cal. Mar. 28, 2014) ............................ 5

*Swirsky v. Carey*,
  376 F.3d 841 (9th Cir. 2004) ................................................................ 9

*Tamkin v. CBS Broad., Inc.*,
  193 Cal. App. 4th 133 (2011) ................................................................ 10, 11

*Unicom Sys., Inc. v. Farmers Grp., Inc.*,
  No. 04 Civ. 04604, 2007 WL 9705875 (C.D. Cal. June 12, 2007) .............................. 8

*Wilbanks v. Wolk*,
  121 Cal. App. 4th 883 (2004) ................................................................ 11

*Williams v. Gaye*,
  895 F.3d 1106 (9th Cir. 2018) ................................................................ 8

*Wolstenholme v. Hirst*,
  271 F. Supp. 3d 625 (S.D.N.Y. 2017) ........................................................ 10

*Zhang v. Heineken N.V.*,
  No. 08 Civ. 06506, 2010 WL 11596643 (C.D. Cal. Sept. 29, 2010) ............................ 4

**Statutes**

Cal. Code Civ. P. § 425.16(e) ................................................................ 10

**Other Authorities**

U.S. Copyright Office, Compendium of U.S. Copyright Office Practices (3d
  ed. 2017) ................................................................ 4, 5, 6, 9

*Patry on Copyright* § 10:141 ................................................................ 8

Registration of Claims to Copyright,
  77 Fed. Reg. 37,605 (June 22, 2012) ........................................................ 5, 7

## I.    INTRODUCTION

Stripped of its heated rhetoric, Plaintiff's opposition reveals that the Complaint seeks to change fundamental copyright principles and impose liability where it does not now exist. It claims that copyright covers material that Congress explicitly said it does not, contravening both the Copyright Office and the courts. It seeks to create a copyright-like state law remedy despite the Copyright Act's preemption clause. Yet, the legal rules, particularly those governing dance, foreclose these claims as a matter of law.

*First*, Plaintiff's copyright claim must be dismissed, as the Steps do not satisfy the legal definition of choreography. In fact, the Copyright Office has refused to register far more complicated and recognizable routines. Yet, the opposition does not explain how the two-second Steps are protectable when the Carlton, Floss, Milly Rock, and Five-Petal Flower are not. Nor does it explain how a sequence of 26 yoga poses can be too simple, but his "eight movements" are not. If those routines of greater complexity do not satisfy the legal test, neither do the Steps.

Further, the works must be considered "as a whole," and Plaintiff's brief admits that *Fortnite* is a massive, "virtual reality space." Opp. 2. Thus, the works cannot be substantially similar, and Plaintiff does not argue they are. Instead, without citation, this Court is asked to focus on only the Emote. Even so, there is no substantial similarity. Building blocks of expression, such as short phrases, geometric shapes, and simple dance routines, must be filtered out. Plaintiff cannot save his claim by calling the Steps the "heart" of his work, as that concept applies to only fair use. Similarly, his brief's focus on cases about "static silhouettes" and "poses" misses the point: they show that courts routinely dismiss claims where the allegedly copied material is unprotectable. The opposition ignores the crux of Epic's motion. The copyright claims should be dismissed.

*Second*, Plaintiff's UCL claim is preempted by the Copyright Act. Plaintiff's brief admits that the Steps are within copyright's subject matter. Opp. 22 n.8. And it does not dispute that his claim is based on alleged copying. *Brantley v. Epic Games, Inc.* held such claims preempted. 463 F. Supp. 3d 616, 627 (D. Md. 2020). Rather than address

1  *Brantley*, Plaintiff recasts his claim as false endorsement.  Yet, his UCL claim does not

2  mention that theory.  Compl. ¶¶ 84–88.  Even if it did, when the alleged false

3  endorsement is caused by copying, the claim still must be dismissed.  *See Fahmy v. Jay-*

4  *Z*, No. 07 Civ. 05715, 2008 WL 11284593, at *9 (C.D. Cal. Mar. 19, 2008); *see also*

5  *Pellegrino v. Epic Games, Inc.*, 451 F. Supp. 3d 373, 390 n.8 (E.D. Pa. 2020) (confusion

6  that results from alleged copying not "qualitatively different").

7       The opposition also attempts to avoid Epic's separate motion to strike pursuant to

8  California's anti-SLAPP statute, but the Complaint's UCL allegations are precisely the

9  type of baseless cause of action that chills free speech.  Compl. ¶ 41.  Plaintiff's brief

10  asks the Court to ignore the rights of Epic and its talented animators simply because Epic

11  is a for-profit company.  Many artists own, operate, or work at for-profit companies.

12  Their expression should not be chilled, and Epic's motion should be granted.

13       ***Third***, the opposition brief does not address Epic's arguments regarding punitive

14  and exemplary damages. Those remedies should be stricken.  As to attorney's fees,

15  "when the first act in a series of acts constituting continuing infringement occurs" before

16  registration, attorney's fees are not available even thereafter.  *Derek Andrew, Inc. v. Poof*

17  *Apparel Corp.*, 528 F.3d 696, 700–01 (9th Cir. 2008) (unaddressed by Plaintiff's brief);

18  Compl. ¶¶ 38, 56 (alleged copying before registration); Opp. 23 ("still occurring").

19       For these reasons, Epic requests that its motion be granted in its entirety.

20  **II.    ARGUMENT**

21       **A.    Plaintiff's Copyright Infringement Claims Should Be Dismissed**

22       Plaintiff's copyright claims should be dismissed.  Whether the works (*i.e.*, the

23  registered work versus *Fortnite*) are "considered as a whole," or the choreography is

24  compared to the Emote alone, they are not substantially similar as a matter of law.  Br. 8–

25  19.  As Plaintiff's brief admits, unprotectable elements must be filtered.  Opp. 8.  As the

26  Steps are mere building blocks that are unprotectable in isolation, they must be too.

27       1.    *Fortnite* Is Not Substantially Similar to Plaintiff's Choreography

28       The works must be "considered as a whole."  Br. 10 (quoting *Apple Comput., Inc.*

*v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994)).  Plaintiff's brief does not dispute this or claim that his choreography is substantially similar to *Fortnite*.  Instead, citing no cases, it argues that the Emote should be considered separately, analogizing to bootlegged films.  Opp. 12.  Yet, in its hypotheticals, entire films are copied, not a mere two-second clip.  Further, the Complaint alleges that *Fortnite* is the infringing work.  Compl. ¶¶ 2–3. It asserts that, in *Fortnite*, players are "able to have their avatars perform the emotes," *id.* ¶ 30, and that the emotes are used "to personalize a player['s] *Fortnite* experience," *id.* ¶ 31; *see also* Opp. 12.  Chapter 2, Season 3 of *Fortnite* was released "with the 'It's Complicated' emote," Compl. ¶ 38, which a "*Fortnite* player's avatar can perform . . . during *Fortnite* gameplay," *id.* ¶ 39.  It asks the Court "to prevent *Fortnite* from further using his" choreography.  *Id.* ¶ 52; *see id.* ¶¶ 65, 79 (use of choreography "in *Fortnite*").[2]

Plaintiff's brief also argues that *Newton v. Diamond* "assumed that the sampled segment . . . was sufficiently original."  Opp. 12.  That is wrong.  The Ninth Circuit did not reach that issue as, despite the "high degree of similarity between the works," the "use was *de minimis*."  388 F.3d 1189, 1192, 1195 (9th Cir. 2004).  As Epic explained, *Newton* held that copying a six-second sample in a four and a half-minute recording "was not significant enough."  *Id.* at 1196.  The same must be true of the alleged copying of two seconds of Steps from Plaintiff's five-minute choreography.  Br. 10.[3]

### 2.   The Steps Are Not Protectable

The Steps must be filtered out.  They do not meet the legal requirements to be protectable choreography.  Br. 11–18.  Thus, this Court, like others have done, can decide substantial similarity as a matter of law.  *Id.* at 9–10, 13 & n.7, 17.[4]

---

[2]   Plaintiff's opposition references the Item Shop, but admits that the Emote is used in *Fortnite*, Opp. 12, and does not dispute that Epic's exhibit shows how it appears in *Fortnite*.  Dkt. 33 ("Cendali Decl.") Ex. B.

[3]   *Fisher v. Dees* (cited at Opp. 12) involved a much longer alleged infringement that was held to be a non-infringing parody.  794 F.2d 432, 434 & n.2 (9th Cir. 1986).

[4]   Plaintiff's brief points to the kinds of works, Opp. 9–10 & n.4, or building blocks, *id.* at 15, in Epic's cases, but does not dispute that motions to dismiss routinely are granted based on the copied elements being unprotectable.  Br. 9, 13 & n.7.

Plaintiff's brief raises three arguments, none of which withstands scrutiny. ***First***, addressing just two cases, it asserts that, unlike photographs, novels, and motion pictures, or any other forms of creative expression, choreography is not filtered. Opp. 8, 15. As to *Rentmeester v. Nike, Inc.*, it concedes that courts "must 'filter out' the unprotectable elements," but treats the court's list as exclusive, when it was a nonexclusive list of examples. 883 F.3d 1111, 1118 (9th Cir. 2018). The opposition ignores the numerous other cases where that principle was applied to other elements. Br. 13, 17. It also asserts that *Zhang v. Heineken N.V.*'s holding that words and short phrases are filtered, does not apply beyond literary works. Opp. 15 (citing No. 08 Civ. 06506, 2010 WL 11596643, at *4 (C.D. Cal. Sept. 29, 2010)). This ignores the case's express language, *id.* at *4 ("all creative works draw on the common wellspring that is in the public domain"), and the many cases applying that principle to building blocks of other forms of expression. Br. 13, 17; Compendium of U.S. Copyright Office Practices § 805.4(D) (3d ed. 2017) ("Compendium") (uncopyrightable movements are "building blocks for a choreographer's expression" like "words and short phrases" are "for writers").

***Second***, Epic's opening brief spent three pages discussing numerous authorities showing the legal distinction between choreography, which is protectable, and dance steps and simple routines, which are not. Br. 14–17. Plaintiff's opposition ignores these when it asserts that Epic "does not—because it cannot—cite a single case that supports its argument that the" Steps are unprotectable. Opp. 13. It also relies extensively on *Horgan v. Macmillan, Inc.*, Opp. 5–6, without considering its rule that choreography is the "arrangement of dance movements and patterns," but does not include "simple routines," because they are "the choreographer's basic material in much the same way that words are the writer's basic material." 789 F.2d 157, 161 (2d Cir. 1986) (remanding for determination whether copying constituted infringement); Br. 14. Similarly, *Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC* reasoned that a "compilation of simple routines . . . would not be registrable unless it results in a category of copyrightable authorship." No. 11 Civ. 05506, 2012 WL 6548505, at *3 (C.D. Cal. Dec.

14, 2012) (quoting Registration of Claims to Copyright, 77 Fed. Reg. 37,605, 37,607 (June 22, 2012) ("Copyright Office Policy Statement")), *aff'd*, 803 F.3d 1032 (9th Cir. 2015). Thus, although choreography "may incorporate simple routines," "the mere selection and arrangement of physical movements does not in itself support a claim of choreographic authorship." *Id.*[5]

These cases show the spectrum of dance protection. *Horgan* did involve choreography copying. There, Macmillan published a book containing 60 color photographs of George Balanchine's production of *The Nutcracker* ballet, interspersed with "narration of the story, including those portions not portrayed visually." 789 F.2d at 159. In *Bikram's,* the "Sequence of 26 yoga poses" did not "fall within the definition of . . . a choreographic work because of [its] simplicity." 2012 WL 6548505, at *4. The two-second sequence of four Steps is even less protectable.

Moreover, these cases rely extensively on the Copyright Office's view of what legally constitutes choreography, as should this Court. Br. 17; *see also* Opp. 5 (quoting Compendium § 307). Plaintiff's opposition admits that the Copyright Office is entitled to "deference." Opp. 14–15; Br. 17. His cases even confirm that courts should accept the Office's views as to what "building blocks" are filtered. *See N.Y. Mercantile Exch., Inc. v. IntercontinentalExchange, Inc.*, 389 F. Supp. 2d 527 (S.D.N.Y. 2005) (relying on words and short phrases guidance), *aff'd*, 497 F.3d 109 (2d Cir. 2007); *see Morris v. Bus. Concepts, Inc.*, 283 F.3d 502, 505 (2d Cir. 2002) (Copyright Office "interpretation persuasive"). But when the rubber hits the road, Plaintiff's opposition asks this Court to ignore the Copyright Office's repeated application of these principles. It argues that the Office "has not reviewed" the Steps on their own, Opp. 14, which misses the point. The Compendium explains that "[i]ndividual dance steps and short dance routines are the building blocks of choreographic expression, and allowing copyright protection for these

---

[5]   Plaintiff's brief claims that "choreographic works remains undefined in the Ninth Circuit," Opp. 6, but the *Bikram's* district court's decision is still persuasive authority after the Ninth Circuit affirmance on other grounds. *See Stafford v. Dollar Tree Stores, Inc.*, No. 13 Civ. 01187, 2014 WL 1330675, at *5 (E.D. Cal. Mar. 28, 2014).

elements would impede rather than foster creative expression." Compendium § 805.5(A) (citing *Horgan*, 789 F.2d at 161). As Epic explained (and Plaintiff's brief ignores), applying the same dance-related principles as the courts, the Copyright Office refused to register dance routines far more complicated than the Steps. Instead of addressing the Office's application of these principles and how it decisively explains why the Steps are not protectable, Br. 14–16, Plaintiff's opposition simply ignores them.

*Third*, Plaintiff's opposition suggests that his Steps satisfy the requirements to be choreography. Granting that a "*grande jeté*," a "downward dog," and the "*Dirty Dancing*" movement are unprotectable ideas, it seeks to distinguish them as involving a "short, static, silhouette or pose." Opp. 13. It confuses the distinct requirements to filter out ideas, on the one hand, and building blocks of expression, on the other. Br. 13. A routine may be more than one pose or idea; that does not make it copyrightable choreography, *see supra* 4–6, any more than a short phrase is protectable because it is made of two or more words. A work that is copyrightable as a whole may contain unprotectable elements. Br. 11 & n.5.

Plaintiff's opposition also misses the mark claiming that the Steps are recognizable or complex. Opp. 7, 11, 13, 15.[6] "[E]ven if the routine is novel or distinctive," it is not protectable. Br. 14 (quoting Compendium § 805.5(A)). Indeed, the Copyright Office refused registration to various allegedly famous and complicated dance steps. *Id.* at 15–16 & n.8 (describing "The Floss," "The Dance by Alfonso Ribeiro - Variation B," "Milly Rock Dance," and "Five-Petal Flower"). Once again, the Complaint does not distinguish Plaintiff's Steps from those that the Office held were not protectable.[7]

Plaintiff's brief also emphasizes his count of eight movements (each body movement separately) as compared to Epic's count of four steps (the complete

---

[6] Plaintiff's brief argues in passing that the "It's Complicated" name supports his claim, Opp. 3, but the name refers to the Emote as a whole, not Plaintiff's Steps.

[7] Plaintiff's brief states in passing that the refusal letters (which are official records of public acts of a federal agency) are "improperly submitted," Opp. 14, but does not explain why. Dkt. 32 (Epic's Req. Jud. Not.) at 3 n.1.

movements of the upper and lower body).  Opp. 8 n.3, 13.  But it does not dispute that the Steps take two seconds to perform or that they last four counts.  Br. 5.  Nor does it matter to the law.  Either way, the two-second Steps are a legally unprotectable short routine. *See supra* 4–6; Br. 18–19.  And it does not matter that the Steps are strung together, Opp. 8–9, 13, as that also was the case for the multi-step "Carlton," Pilobolus' intricate dance, and the sequence of 26 poses in *Bikram's*.  The opposition still does not explain why Plaintiff's four Steps are protectable when far more complicated routines are not.

Finally, Plaintiff's opposition is wrong that "Epic's position erases copyright protection for choreography."  Opp. 9.  "Choreographic authorship is considered, for copyright purposes, to be the composition and arrangement of a related series of dance movements and patterns organized into an integrated, coherent, and expressive whole." Copyright Office Policy Statement at 37,607.  Such a "copyright is infringed only where the works share, in substantial amounts, the 'particular,' i.e., the 'same,' combination." *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1075 (9th Cir. 2020).  Copying the entire arrangement of steps that constitute *The Nutcracker* could infringe.  *Horgan*, 789 F.2d at 164.  But a choreographer cannot register a ballet and then assert that all other dance performances that use a two-second combination of unprotectable steps somehow infringes the copyright that exists in only the entire arrangement.  *See Skidmore*, 952 F.3d at 1075 (copyright in arrangement "cannot mean any 'set' of artistic building blocks" as "many works of art can be recast as compilations of individually unprotected constituent parts").  Thus, the Steps are not protectable when removed from the context of the entire, five-minute choreographic work Plaintiff registered.

### 3.   The Steps Are Not Substantially Similar to the Emote

As the Steps are too small a component to be protectable and must be filtered out, there can be no substantial similarity.  Br. 18 (collecting cases).  The opposition does not address Epic's cases.  Instead, it asserts without citation: "There is no portion of a copyrighted work that the law simply permits another to copy, no matter how short." Opp. 16.  That is not the law.  Br. 9, 13 & n.7; *see Pasillas v. McDonald's Corp.*, 927

F.2d 440, 443 (9th Cir. 1991) (no infringement where unprotectable elements copied); *DuMond v. Reilly*, No. 19 Civ. 08922, 2021 WL 733311, at *24 (C.D. Cal. Jan. 14, 2021) (same); *Unicom Sys., Inc. v. Farmers Grp., Inc.*, No. 04 Civ. 04604, 2007 WL 9705875, at *15 (C.D. Cal. June 12, 2007) (same).[8]

Epic also explained that, even if the Steps in isolation *were* protectable, dismissal would be warranted as they are not substantially similar to the Emote, which is materially longer. Br. 18–19. Instead of addressing this, Plaintiff's brief tries to avoid dismissal by raising extraneous arguments. *First*, it asserts that, although the Steps are a tiny portion of his choreography, they are the "heart of the work." Opp. 16. The "heart of the work" is not applied to determine substantial similarity; it comes from the doctrine of fair use, as is clear from the cases cited in the opposition. *See Harper & Row Pubs., Inc. v. Nation Enters.*, 471 U.S. 539, 564–66 (1985); *Meeropol v. Nizer*, 560 F.2d 1061, 1070–71 (2d Cir. 1977); *Roy Exp. Co. Establishment v. Columbia Broad. Sys., Inc.*, 503 F. Supp. 1137, 1145 (S.D.N.Y. 1980).[9] As discussed above, even distinctiveness or novelty will not save an unprotectable routine. *See supra* 6.

*Second*, Plaintiff's opposition redescribes his choreography. Opp. 16–17. These arguments are immaterial: "the works themselves supersede . . . 'any contrary allegations, conclusions or descriptions.'" *Chey v. Pure Flix Ent. LLC*, No. 16 Civ. 04362, 2017 WL 5479640, at *4 (C.D. Cal. Feb. 10, 2017). The Court may review Exhibits A and B to the Cendali Declaration to see the full works and decide for itself. Dkt. 32 (Epic's Req. Jud. Not.). Even accepting the misdescriptions in Plaintiff's opposition as true,[10] the Steps

---

[8]   Plaintiff's argument that "[c]horeography is entitled to broad, not thin, protection," Opp. 16, is a red herring. Plaintiff's own case says that broad protection still requires "substantial similarity to *protected* elements of the copyrighted work." *Williams v. Gaye*, 895 F.3d 1106, 1119–20 (9th Cir. 2018).

[9]   Fair use "is a much different type of inquiry" than substantial similarity. *Patry on Copyright* § 10:141. Moreover, Plaintiff's cases are factually distinguishable. *Harper & Row*, 471 U.S. at 540 ("generous . . . excerpts"); *Meeropol*, 560 F.2d at 1070–71 ("1957 words"); *Roy Exp.*, 503 F. Supp. at 1145 (several minutes).

[10]  Plaintiff's brief says the choreography "contains 96 counts, repeated five times in the video," Opp. 16, but that does not change the length or protectability of the two-

1  still would not be protectable or substantially similar to the Emote because of everything

2  else in the Emote.  Discovery and expert opinions will not change that.[11]  The copyright

3  claims should be dismissed.

4  **B.  Plaintiff's UCL Claim Should Be Dismissed and Stricken**

5  Plaintiff's UCL claim should be dismissed as preempted, Br. 19, and also stricken,

6  *id.* at 3–4, 19; Dkt. 30 (Epic Mot.) at 1.  We discuss each issue below in turn.

7  1.  The Copyright Act Preempts Plaintiff's UCL Claim

8  Plaintiff's UCL claim is preempted as it is based on (1) dance, and (2) copying.

9  Br. 20–21.  Plaintiff's brief admits the first prong.  Opp. 22 n.8.  As to the second, it does

10  not deny his claim is based on alleged copying.  *E.g.*, Compl. ¶ 44.  It is preempted.  *See*

11  *Brantley*, 463 F. Supp. 3d at 624, 627; *see also Pellegrino*, 451 F. Supp. 3d at 387–88.

12  The opposition attempts to recast the UCL claim as involving a false endorsement.

13  Opp. 22–23.  Yet Plaintiff's recitation in the Complaint does not mention one.  Compl.

14  ¶¶ 83–84;[12] *see Make Him Smile, Inc. v. Trek Bicycle Corp.*, No. 17 Civ. 07136, 2018

15  WL 5986983, at *4 (C.D. Cal. Jan. 18, 2018) (plaintiff must allege use "to imply

16  endorsement of a product").

17  The claim also is preempted as the alleged endorsement is caused by "copying."

18  *Cf. Pellegrino*, 451 F. Supp. 3d at 389 n.8.  Courts in this District routinely dismiss such

19  claims.  *See Ricketts v. CBS Corp.*, 439 F. Supp. 3d 1199, 1210 (C.D. Cal. 2020)

20

21  ———————

   second Steps, or the uncopied material.  Plaintiff's made-for-litigation video, *id.* at 17,

22  ignores the choreography and the Emote's other movements.  It implies that the works
have the same music, *id.*, but that is not true, Cendali Decl. Exs. A, B, and Plaintiff's

23  registration disclaimed the audiovisual material, Compl. ¶ 56, Ex. A, at 3 ("Materials
excluded from this claim: music"); Compendium § 805.8(A).

24  [11] *Swirsky v. Carey*, 376 F.3d 841, 849 (9th Cir. 2004) (cited at Opp. 17), is inapposite as

25  expert testimony on choreography's legal definition would be inappropriate.  *See*
*Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 835 (C.D. Cal. 2010).

26  [12] The Complaint's incorporation of prior allegations by reference is a prohibited

27  "shotgun pleading."  *See Sollberger v. Wachovia Sec., LLC*, No. 09 Civ. 90766, 2010
WL 11595839, at *6–7 (C.D. Cal. Feb. 22, 2010).  And even those allegations are

28  based on the same acts of copying.  Compl. ¶¶ 48–49.

(preemption where false credit caused by copying work); *Fahmy*, 2008 WL 11284593, at *9 (preemption where false endorsement caused by copying); *Motown Record Corp. v. George A. Hormel & Co.*, 657 F. Supp. 1236, 1239–40 (C.D. Cal. 1987) (preemption where false implication caused by work's use).  As Plaintiff's brief does not dispute that his claim is based on such allegations, Br. 21 (citing Compl. ¶¶ 84, 87), it is preempted. *See Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1019 (9th Cir. 2017); *Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co.*, 170 F. Supp. 3d 1249 (C.D. Cal. 2016); *see also Wolstenholme v. Hirst*, 271 F. Supp. 3d 625, 644 (S.D.N.Y. 2017).[13]

## 2.   Plaintiff's Claim Separately Should Be Stricken

Plaintiff's UCL claim also should be stricken under California's anti-SLAPP provision.  It is preempted, *see supra* 9–10, so Plaintiff has not met his burden of showing a probability of success.  Br. 19–21.  Thus, if the claim targets an "act in furtherance of [Epic's] right of . . . free speech . . . in connection with a public issue," Cal. Code Civ. P. § 425.16(e); *Tamkin v. CBS Broad., Inc.*, 193 Cal. App. 4th 133, 142–43 (2011), Epic's motion to strike the claim should be granted.  Contrary to the opposition's assertion that Epic "fails to identify what this 'act' is or its context," Opp. 19, it is clear: Plaintiff's claim concerns Epic's alleged copying of the Steps into its Emote and *Fortnite*.  Br. 19; Opp. 20.

An act is made "in furtherance of the right of free speech," if "the act helps to advance that right or assists in the exercise of that right."  *Ojjeh v. Brown*, 43 Cal. App. 5th 1027, 1039 (2019).  This is satisfied by the creation or dissemination of an expressive

---

[13]  Plaintiff's authorities support this principle, and are otherwise distinguishable.  *See Butler v. Target Corp.*, 323 F. Supp. 2d 1052, 1057 (C.D. Cal. 2004) (preemption where allegations based on acts "of reproduction"; defendants conceded remaining claims were not); *Henley v. Devore*, No. 09 Civ. 00481, 2009 WL 10697982, at *14 (C.D. Cal. July 8, 2009) (preemption where works misappropriated; claim based on persona different); *see also Schroeder v. Volvo Grp. N.A., LLC*, No. 20 Civ. 05127, 2020 WL 6562242, at *7–8 (C.D. Cal. Sept. 3, 2020) (claim based on model's face not within subject matter).  As 17 U.S.C. § 301 does not apply to federal claims, the *Pellegrino* court considered the Lanham Act claim that Plaintiff references (at 23) under the distinct *Dastar* doctrine.  451 F. Supp. 3d at 385–86.

work.  *See Cusano v. Klein*, 473 F. App'x 803, 804 (9th Cir. 2012) (dissemination); *Estate of B.H. v. Netflix, Inc.*, No. 21 Civ. 06561, 2022 WL 551701, at *1 (N.D. Cal. Jan. 12, 2022) (creation); *Tamkin*, 193 Cal. App. 4th at 143 (creation).  *Fortnite* is a video game, a form of creative expression, and the First Amendment protection applies.  Br. 19 (quoting *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 790 (2011)).[14]

As to whether the act was "in connection with a matter of public interest," courts "look to the content of the speech and assess the functional relationship between the speech and the public conversation about the matter of public interest."  *Ojjeh*, 43 Cal. App. 5th at 1042.  For example, such a connection exists when expressive works, including video games, include material concerning "individuals or entities who are in the public eye."  *See Cusano*, 473 F. App'x at 804; *Serova v. Sony Music Entm't*, 44 Cal. App. 5th 103, 119 (2020) (public interest in "famous entertainer," as well as "creation of works"); *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 898 (2004); *No Doubt*, 192 Cal. App. 4th at 1027 (video game protected due to public interest in fame of depicted band).  It also exists where the expressive work itself is of public interest.  *See B.H.*, 2022 WL 551701, at *1 (show was "huge hit" based on social media); *Tamkin*, 193 Cal. App. 4th at 143 (creation of TV episode was "issue of public interest" due to fans' online postings).

Here, contrary to the opposition's argument that the Emote does not "talk[] explicitly about [Plaintiff's] dancing," Opp. 20–21, the *Complaint* itself alleges that relationship.  Br. 19.  It claims Plaintiff is "one of the most recognizable faces & names in choreography/dance within social media," Compl. ¶ 15, and that his dance is "wildly popular and immediately recognizable," *id.* ¶ 71.  It argues that, when the Emote was released, the Steps were "immediately recognized," *id.* ¶ 3, and that there was a "reaction from many players worldwide," *id.* ¶ 41; Opp. 13 (same).  And it links its allegations to a supposed "outcry on social media" regarding prior lawsuits involving "dances and

---

[14] Plaintiff's brief asserts that "*Fortnite* is the platform . . . not the speech itself," Opp. 21, but that is contrary to *Brown* and California law.  *See No Doubt v. Activision Publ'g, Inc.*, 192 Cal. App. 4th 1018, 1027 (2011) (use of band members' likenesses in video game qualified as protected speech).

EPIC'S REPLY ISO MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
11   Case No. 2:22-cv-02063-SVW-MRWx

movement in *Fortnite*." Compl. ¶¶ 34, 51. These allegations show the public interest.

As Plaintiff's opposition failed to meet Plaintiff's burden, *see supra* 9–10, his claim must be stricken.[15] Plaintiff's brief asserts that the statute should not apply to for-profit firms, Opp. 18, but that is not the law. Companies and their creative employees are protected by the anti-SLAPP statute the same as anyone else. *See, e.g.*, *B.H.*, 2022 WL 551701, at *1 (Netflix protected). Moreover, Plaintiff's brief ignores the statute's Constitutional purpose of "early judicial screening of legal claims targeting free speech." *Ojjeh*, 43 Cal. App. 5th at 1035. That is why it "must be construed broadly," *id.*, so that meritless claims, like Plaintiff's, are dismissed.

## C. Certain of Plaintiff's Requested Remedies Should Be Stricken

Plaintiff is precluded from seeking certain remedies. ***First***, Plaintiff's opposition does not dispute that punitive and exemplary damages are not available. Br. 22–23. ***Second***, attorney's fees for copyright infringement are not available because the alleged infringement began before Plaintiff registered his dance. Br. 22. Plaintiff's brief does not argue otherwise. Instead, it asserts that "the infringement of copyright has occurred and is still occurring after the effective date." Opp. 23. When the alleged infringement begins before registration, fees remain unavailable even after it. *See Derek*, 528 F.3d at 700; *Rosen v. Netfronts, Inc.*, No. 12 Civ. 00658, 2013 WL 3467205, at *3 (C.D. Cal. July 9, 2013); *see also Solid Oak Sketches, LLC v. 2K Games, Inc.*, No. 16 Civ. 00724, 2016 WL 4126543, at *3 (S.D.N.Y. Aug. 2, 2016).[16]

## III. CONCLUSION

Epic respectfully requests that its motion be granted and, as Plaintiff's brief has not explained how the Complaint could be amended to state a claim, with prejudice.

---

[15] Plaintiff's cases do not involve expressive works or plaintiff admissions. *See FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 140 (2019) (confidential reports not part of public debate); *Consumer Justice Ctr. v. Trimedica Int'l, Inc.*, 107 Cal. App. 4th 595, 601 (2003) (supplement properties not of public interest).

[16] As fees are unavailable taking the allegations as true, discovery is unnecessary.

EPIC'S REPLY ISO MOTION TO
DISMISS PLAINTIFF'S COMPLAINT          12   Case No. 2:22-cv-02063-SVW-MRWx

1    DATED:  June 13, 2022                    Respectfully submitted,

2
                                              */s/ Dale M. Cendali*
3                                             _____
                                              Dale M. Cendali (admitted *pro hac vice*)
4                                             dale.cendali@kirkland.com
                                              Joshua L. Simmons (admitted *pro hac vice*)
5                                             joshua.simmons@kirkland.com
                                              KIRKLAND & ELLIS LLP
6                                             601 Lexington Avenue
                                              New York, New York 10022
7                                             Telephone: (212) 446-4800
                                              Facsimile: (212) 446-4900

8                                             Yungmoon Chang (SBN 311673)
                                              yungmoon.chang@kirkland.com
9                                             KIRKLAND & ELLIS LLP
                                              2049 Century Park East
10                                            Los Angeles, CA 90067
                                              Telephone: (310) 552-4200
11                                            Facsimile: (310) 552-5900

12                                            *Attorneys for Defendant Epic Games, Inc.*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Epic's Reply ISO Motion to            13    Case No. 2:22-cv-02063-SVW-MRWx
Dismiss Plaintiff's Complaint

**ER_036**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>PROOF OF SERVICE</u>**

On June 13, 2022, I electronically filed the foregoing **REPLY IN SUPPORT OF DEFENDANT EPIC GAMES, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND SPECIAL MOTION TO STRIKE (ANTI-SLAPP), OR IN THE ALTERNATIVE, MOTION TO STRIKE CERTAIN FORMS OF RELIEF** with the Clerk of the Court by using CM/ECF system, which will send a notice of electronic filing to all persons registered for ECF. All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-3.1.1 have been so served.

*/s/ Dale M. Cendali*
Dale M. Cendali

1   Hecht Partners LLP
2   Kathryn Lee Boyd (SBN 189496)
    6420 Wilshire Blvd., 13th Floor
3   Los Angeles, CA 90048

4   David L. Hecht (*Pro Hac Vice*)
5   Maxim Price (*Pro Hac Vice*)
    125 Park Avenue, 25th Floor
6   New York, NY 10017
7   Tel: 212-851-6821

8   *Attorneys for Plaintiff Kyle Hanagami*

9

10              THE UNITED STATES DISTRICT COURT FOR THE

11                  CENTRAL DISTRICT OF CALIFORNIA

12

13   Kyle Hanagami, an individual,      CASE NO. 2:22-cv-02063-SVW-MRWx

14              Plaintiff,               **PLAINTIFF KYLE HANAGAMI'S**
                                         **OPPOSITION TO DEFENDANT EPIC**
15        v.                             **GAMES, INC.'S MOTION TO**
     Epic Games, Inc., a North           **DISMISS PLAINTIFF'S COMPLAINT**
16   Carolina corporation; and           **AND SPECIAL MOTION TO STRIKE**
     Does 1 through 10, inclusive,       **(ANTI-SLAPP), OR IN THE**
17                                       **ALTERNATIVE, MOTION TO**
18              Defendants.              **STRIKE CERTAIN FORMS OF**
                                         **RELIEF**
19
20                                       Complaint Filed: March 29, 2022
21                                       Judge:        Stephen V. Wilson
                                         Hearing Date: June 27, 2022
22                                       Time:         1:30pm
23                                       Courtroom:    10A
24
25
26
27
28
     ─────────────────────────────────────────────────────
                **OPPOSITION TO MOTION TO DISMISS**

                            **ER_038**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ...................................................................................1

II.   LEGAL STANDARD .............................................................................5

III.  ARGUMENT ..........................................................................................7

    A.   Epic's "It's Complicated" Emote Infringes the Registered
        Choreography ...............................................................................7

        1.   The Works as a Whole are Substantially Similar ....................11

        2.   The Infringed Choreography Alone is Protectable ..................13

        3.   The Infringed Portion is Substantially Similar to the Emote ....16

    B.   Epic's Anti-SLAPP Motion to Strike is Frivolous..............................18

        1.   Epic's Conduct In No Way Furthers the Exercise of Their Rights
            to Petition or Free Speech In Connection With an Issue of Public
            Interest....................................................................................19

        2.   The Copyright Act Does Not Preempt the Unfair Competition
            Claim......................................................................................22

    C.   Attorneys' Fees Are Available to Hanagami ......................................23

IV.   CONCLUSION ......................................................................................24

i

**TABLE OF CONTENTS**

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Aagard v. Palomar Builders, Inc.*,

5

   344 F. Supp. 2d 1211 (E.D. Cal. 2004) ........................................................... 22

6

*Abdullah v. Walt Disney Co*

   No. 215CV09581SVWJPR, 2016 WL 5380930, (C.D. Cal. Mar. 14,

7

   2016.. ........................................................................................................... 10

8

*Ashcroft v. Iqbal*,

9

   556 U.S. 662 (2009) .......................................................................................... 5

10

*Baral v. Schnitt*,

11

   1 Cal. 5th 376 (2016) ................................................................................... 19, 22

12

*Batzel v. Smith*,

13

   333 F.3d 1018 (9th Cir. 2003) .......................................................................... 6

14

*Baxter v. MCA, Inc.*,

15

   812 F.2d 421 (9th Cir. 1987) ........................................................................... 7

16

*Bell Atlantic Corp. v. Twombly*,

   550 U.S. 544 (2007) .......................................................................................... 5

17

*Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC*,

18

   803 F.3d 1032 (9th Cir. 2015) ..................................................................... 6, 14

19

*Butler v. Target Corp.*,

20

   323 F. Supp. 2d 1052 (C.D. Cal. 2004) .......................................................... 23

21

*Consumer Justice Center v. Trimedica Int'l, Inc.*,

22

   107 Cal. App. 4th 595 (2003) ..................................................................... 20, 21

23

*Cusano v. Klein*,

24

   473 F. App'x 803 (9th Cir. 2012) ................................................................... 21

25

*Downing v. Abercrombie & Fitch*,

   265 F.3d 994 (9th Cir. 2001) .......................................................................... 22

26

27

28

ii

**TABLE OF AUTHORITIES**

*Eminence Cap., LLC v. Aspeon, Inc.*,
   316 F.3d 1048  (9th Cir. 2003) ......................................................... 25

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991) .................................................................... 5, 7

*FilmOn.com Inc. v. DoubleVerify Inc.*,
   7 Cal. 5th 133 (2019)........................................................ 18, 20, 21

*Fisher v. Dees*,
   794 F.2d 432 (9th Cir. 1986) .......................................................... 12

*Folkens v. Wyland Worldwide, LLC*
   882 F.3d 768 (9th Cir. 2018) .......................................................... 14

*Harper & Row Publishers*,
   471 U.S., 105 S. Ct. ............................................................. 2, 17, 18

*Henley v. Devore*,
   No. SACV 09-0481-JVS, 2009 WL 10697982 (C.D. Cal. July 8,
   2009).......................................................................................... 23

*Horgan v. MacMillan, Inc.*
   789 F. 2d 157 (2nd Cir. 1986) ............................................... 5, 6, 8, 9

*Keller v. Elec. Arts Inc.*,
   724 F.3d 1268 (9th Cir. 2012) ........................................................... 6

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025 (9th Cir. 2008) ........................................................... 5

*Mattel, Inc. v. MGA Entm't, Inc.*,
   616 F.3d 904 (9th Cir. 2010) .......................................................... 16

*McCulloch v. Albert E. Price, Inc.*,
   823 F.2d 316 (9th Cir. 1987) ............................................................. 8

*Meeropol v. Nizer*,
   560 F.2d 1061 (CA2 1977).......................................................... 2, 18

*Morris v. Bus. Concepts, Inc.*,
   283 F.3d 502 (2d Cir. 2002) ........................................................... 15

iii

**TABLE OF AUTHORITIES**

**ER_041**

*Navellier v. Sletten,*
   29 Cal. 4th 82 (2002) ........................................................................ 7

*New York Mercantile Exch., Inc. v. IntercontinentalExchange, Inc.,*
   389 F. Supp. 2d 527 (S.D.N.Y. 2005), aff'd, 497 F.3d 109 (2d Cir.
   2007) ............................................................................................... 15

*Pellegrino v. Epic Games, Inc.,*
   451 F. Supp. 3d 373 (E.D. Pa. 2020) ............................................ 4, 23

*Puckett v. Hernandez*
   No. 2:16 Civ. 02199, 2016 WL 7647555  (C.D. Cal. Dec. 21, 2016) ............. 10

*Reece v. Island Treasures Art Gallery, Inc.*
   468 F. Supp. 2d 1197 (D. Haw. 2006) ............................................. 14

*Reflex Media, Inc. v. Pilgrim Studios, Inc.*
   No. 2:18 Civ. 02260, 2018 WL 6566561 (C.D. Cal. Aug. 27, 2018) ............... 11

*Rentmeester v. Nike, Inc.,*
   883 F.3d 1111 (2018) ................................................................. *passim*

*Rice v. Fox Broad. Co.,*
   330 F.3d 1170 (9th Cir. 2003) .......................................................... 5

*Rosen v. Netfronts, Inc.,*
   No. CV-12-658 CAS, 2013 WL 3467205 (C.D. Cal. July 9, 2013)........... 23, 24

*Ross v. Kish,*
   145 Cal. App. 4th 188 (2006) ........................................................... 7

*Roy Export Co. Establishment v. Columbia Broadcasting System, Inc.,*
   503 F.Supp. .................................................................................. 18

*Rusheen v. Cohen,*
   37 Cal. 4th 1048 (2006) ............................................................... 6, 7

*Schroeder v. Volvo Group North America, LLC,*
   No. LACV 20-05127-VAP, 2020 WL 6562242 (C.D. Cal. Sept. 3,
   2020) ............................................................................................ 23

iv

**TABLE OF AUTHORITIES**

*Sheldon v. Metro-Goldwyn Pictures Corp.*,
  *81 F.2d 49 (2d Cir. 1936) cert. denied*, 298 U.S. 669, 56 S.Ct. 835,
  80 L.Ed. 1392 (1936) ........................................................................... 1

*Swirsky v. Carey*,
  376 F.3d 841 (9th Cir. 2004) ......................................................... 16, 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ............................................................................ 5

*Three Boys Music Corp. v. Bolton*,
  212 F.3d 477 (9th Cir. 2000) ............................................................... 8

*Thomas v. Walt Disney Co.*
  337 F. App'x 694 (9th Cir. 2009). ..................................................... 8

*USA Waste of California, Inc. v. City of Irwindale*,
  184 Cal. App. 4th 53 (2010) ............................................................. 18

*White v. Twentieth Century Fox Corp.*
  572 F. App'x 475 (9th Cir. 2014). ..................................................... 9

*Wild v. NBC Universal*
  513 F. App'x 640 (9th Cir. 2013) ...................................................... 10

*Wild, Newton v. Diamond*
  388 F.3d 1189 (9th Cir. 2004) .......................................................... 12

*Wilkbanks v. Wolk*,
  121 Cal. App. 4th 883 (2004) ........................................................... 21

*Williams v. Gaye*
  895 F.3d 1106 (9th Cir. 2018) .......................................................... 16

*Zhang v. Heineken*
  No. 08 Civ. 06506, 2010 WL 11596643 (C.D. Cal. Sept. 29, 2010) ............... 15

**Statutes**

17 U.S.C. § 102 ................................................................. *passim*

17 U.S.C. § 412 ................................................................. *passim*

v

**TABLE OF AUTHORITIES**

California Code of Civil Procedure § 425.16 .................................................. *passim*

California Business & Professions Code § 17200 ................................................ 22

**Court Rules**

Federal Rule of Civil Procedure 12(b)(6) .................................................. 1

Federal Rule of Civil Procedure 15(a) .................................................. 1

vi

**TABLE OF AUTHORITIES**

1    Plaintiff Kyle Hanagami ("Plaintiff" or "Hanagami"), by and through his
2    undersigned counsel at Hecht Partners LLP hereby submits his memorandum of
3    points and authorities in opposition to the Motion to Dismiss pursuant to Federal
4    Rule of Civil Procedure 12(b)(6) and Special Motion to Strike pursuant to
5    California Code of Civil Procedure § 425.16 (the "Motion") filed by Defendant
6    Epic Games, Inc. ("Epic" or "Defendant").

7    ## I.    INTRODUCTION

8    In the words of Judge Learned Hand, "no plagiarist can excuse the wrong by
9    showing how much of his work he did not pirate." *Sheldon v. Metro-Goldwyn*
10   *Pictures Corp., 81 F.2d 49, 56 (2d Cir. 1936) cert. denied*, 298 U.S. 669, 56 S.Ct.
11   835, 80 L.Ed. 1392 (1936).  Epic's motion to dismiss Hanagami's copyright claims
12   is based on three contentions (1) Epic can and will copy and sell anyone's
13   choreography, with impunity, because Epic's marketplace is in a virtual world that
14   Epic created; (2) "only" a quarter of the accused emote was copied from Hanagami,
15   thus it is not substantially similar; and (3) the portion of the choreography that Epic
16   copied here is short and thus not entitled to protection.  Each of Epic's arguments
17   is flawed: (1) Epic cannot recontextualize the infringing emote from a discrete item
18   that is sold in the Fortnite marketplace for the equivalent of five U.S. Dollars into
19   a mere portion of the entire Fortnite digital universe at large; (2) Epic admits that
20   at least a quarter of the accused emote is identical to Hanagami's choreography and
21   ignores the allegation that it represents the "heart" and most recognizable portion
22   of Hanagami's original work; and (3) Epic mischaracterizes the copied portion of
23   Plaintiff's choreography through incorrect pseudo-expert analysis supported by
24   nothing more than Epic's attorneys' say so. Epic copied, repackaged, offered for
25   sale, and sold part of Hanagami's choreography (the "Registered Choreography"),
26   which is protected by copyright law. Rather than deny this, Epic hopes the Court
27   will simply permit this kind of infringement.

28   Each emote that Epic sells is a singular item that is offered in Epic's online

- 1 -

store, and infringement must be considered in that context. Enterprises like Fortnite are video games at the very surface level, in name only. Complaint, Dkt. No. 1 ("Compl.") at ¶21. Instead, Fortnite has become a metaverse, a virtual reality space in which users can interact with a computer-generated environment and other users. *Id.* at ¶¶21-25. Aside from the game aspect, there are social events, concerts, parties, dances, syndicated story-driven seasons, contextualized advertising, virtual museums, and, relevant to this case, the online "Item Shop." *Id.* These are each discrete elements of the online world that Fortnite has become. *Id.* at 25-30. Epic has found tremendous success by providing the "game" part of its virtual reality space for free while selling virtual goods and customizations, like the emote at issue here, in its Item Shop. *Id.* at 31. Copyright infringement in a book is not measured against all of the books in a bookstore, nor would copyright infringement by a smartphone software application be measured against all of the software that is available for that phone. As we all move toward a more virtual world, it is becoming even more important that we recognize intellectual property infringement in virtual environments. The correct context for Epic's infringement is the discrete emote sold in Epic's Item Shop and not, as Epic claims, all the elements of the platform that constitute Fortnite.

Likewise, the correct context of the substantial similarity test is to compare the two works against each other. Epic's analysis of the percentage of the infringing work that it did not copy is not relevant. The Supreme Court recognized this in *Harper & Row Publishers, Inc. v. Nation Enterprises*, which involved "the direct takings from the unpublished manuscript constitut[ing] … 13% of the infringing article." 471 U.S. 539, 566, 105 S. Ct. 2218, 2233, 85 L. Ed. 2d 588 (1985) (citing *Meeropol v. Nizer*, 560 F.2d 1061, 1071 (CA2 1977) (copyrighted letters constituted less than 1% of infringing work but were prominently featured)). Here, the pirated choreography is a very substantial part of the infringing emote, whether or not one accepts Epic's premise that it comprises "only" one-quarter of the emote.

- 2 -

1      Moreover, that portion is not just substantially similar, it is identical.

2      This case does not involve mere "building blocks of expression." Epic claims

3  that Hanagami is seeking to restrict the arts by copyrighting basic dance

4  movements. But each of the examples provided by Epic ("*grand jeté*," downward-

5  dog, or the lifting of a female performer like in Dirty Dancing) is a static silhouette

6  that represent the idea for a movement as captured by a pose. Epic's analysis breaks

7  down when they fail to provide any connection between those basic ideas and the

8  choreography at issue here. Though it may be short, the portion of Hanagami's

9  choreography that Epic copied packs a punch. It contains at least eight shapes (or

10  positions), and pathways (transitions) in between. Professional dancers make it look

11  easy; but it takes skill and creativity to choreograph a short chorus or "hook" for a

12  dance that catches the eye. Compl. at ¶40. Epic knows that these short dances have

13  value because Epic seeks them out and sells them for money. Moreover, had Epic

14  shown a single instance where this series of dance moves was independently

15  performed elsewhere before or since the Registered Work, the simple "building

16  blocks of expression" argument might have held water. The sheer irony of Epic's

17  assertion that the emote is too simple when Epic named it "**It's Complicated**" is

18  palpable.

19      Epic fails to address fact that they copied the most recognizable portion and

20  mischaracterizes the Registered Work. Notably, the registered work is not a 5-

21  minute, 520 count dance, as Epic claims, it is a 96-count choreography that is

22  demonstrated five times in one video. The infringing emote contains choreography

23  copied from the **heart of the work**—the only section of choreography that occurs

24  twice within each 96-count routine and ten times throughout the Registered Work;

25  it occurs every time the chorus of the song plays and is the most recognizable part

26  of the dance and the theme that ties each of the five repetitions together. *Id.* at ¶40.

27  "Upon its release, the reaction from many players worldwide was immediate

28  recognition of the 'It's Complicated' emote as embodying the Registered

- 3 -

1   Choreography." *Id.* at ¶41. So recognizable was the choreography that, the day the

2   emote was released, a third party unrelated to Hanagami posted a video comparing

3   the Registered Choreography to the emote. *Id.* Epic's infringement is akin to the

4   "Blurred Lines" litigation discussed below.

5   Epic cites to lawsuits that were previously filed and voluntarily dismissed

6   following the Supreme Court's decision in *Fourth Estate*, because plaintiffs in

7   those cases did not have copyright registrations in hand. But, as Epic admits, none

8   of those lawsuits involved a registered copyright. Epic also omits that (1) not all of

9   those lawsuits involved copyright claims, and (2) another plaintiff, Leo Pellegrino,

10   a famous saxophonist, overcame a motion to dismiss in the Eastern District of

11   Pennsylvania. *Pellegrino v. Epic Games, Inc.,* 451 F. Supp. 3d 373, 386–87 (E.D.

12   Pa. 2020) (denying Epic's motion to dismiss as to Pellegrino's Lanham Act claim

13   in Count VI to the extent that it is based on a false endorsement theory).

14   Finally, Epic, a well-funded for-profit entity, has not engaged in the type of

15   public speech, in connection with a public issue, that the anti-SLAPP law protects.

16   Epic copied a dance and sold it as an emote in its digital store. There was no

17   commentary, satire, or discussion of the dance involved. There is no nexus between

18   Epic's sale of someone else's Choreography and any public issue.[1] Moreover, anti-

19   SLAPP statutes are meant to discourage frivolous litigation by well-funded entities

20   to suppress the speech of lesser-funded ones, which is inverted here. Thus, anti-

21   SLAPP is inapplicable.

22   Epic found Plaintiff's choreography online and, noticing that it was

23   immensely popular, determined that its customers would pay Epic money to see their

24   Fortnite characters performing the most recognizable refrain from it. Epic thus

25   knowingly and unjustly profited from the hard work and skill of a professional

26

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

28   [1] That is, unless Epic agrees, at this early stage, that the emote was purposefully and explicitly directed to and intended to refer to or discuss Hanagami or his choreography.

- 4 -

1  choreographer. It's not all that complicated; if you like a choreography and want to

2  charge others money to see it, you must license it from the original creator.

3  **II.   LEGAL STANDARD**

4  On a motion to dismiss for failure to state a claim, courts accept as true all

5  well-pleaded allegations of material fact and construes them in a light most favorable

6  to the non-moving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d

7  1025, 1031–32 (9th Cir. 2008). The court may only consider the allegations

8  contained in the pleadings, exhibits attached to or referenced in the complaint, and

9  matters properly subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights,*

10  *Ltd.*, 551 U.S. 308, 322 (2007).

11  To state a claim for copyright infringement, a complaint must allege "(1)

12  ownership of a valid copyright, and (2) copying of constituent elements of the work

13  that are original." *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1174 (9th Cir. 2003) (citing

14  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). To survive a

15  motion to dismiss, the complaint "must contain sufficient factual matter, accepted as

16  true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

17  U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

18  (2007)). A claim is plausible "when the plaintiff pleads factual content that allows

19  the court to draw the reasonable inference that the defendant is liable for the

20  misconduct alleged." *Id.*

21  The 1976 amendments to the Copyright Act explicitly recognized

22  "choreographic works" as eligible for copyright protection. *See* 17 U.S.C. § 102.

23  However, the Copyright Act did not provide a definition for choreography. To

24  resolve the ambiguity, "Congress gave federal courts the flexibility to interpret the

25  scope of the existing subject matter categories." Compendium of Copyright Office

26  Practices, Compendium III ("Compendium III") § 307 (2017). In *Horgan v.*

27  *MacMillan, Inc.*, the Second Circuit analyzed whether still photographs of a ballet

28  can infringe the copyright on the ballet's choreography. 789 F.2d at 160. To resolve

- 5 -

the dispute, the Second Circuit utilized the definition of choreography that was found in the Compendium II, which states that, "Choreography is the composition and arrangement of dance movements and patterns, and is usually intended to be accompanied by music." 789 F.2d 157, 161 (2d Cir. 1986); Compendium II § 450.01. The Second Circuit then held that the test for infringement was not "whether the original work may be reproduced from the copy—as the district judge held—but whether the alleged copy is substantially similar to the original." 789 F.2d at 161. Using this analysis, the Court acknowledged that the still photographs could have infringed the copyright on the ballet's choreography. *See id.* at 162–63.

Almost twenty years after *Horgan*, the Ninth Circuit was tasked with determining whether a hot yoga routine qualifies as a choreographic work under the Copyright Act. *See Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC*, 803 F.3d 1032, 1043 (9th Cir. 2015) ("The parties debate the meaning of the term 'choreography,' which we have not yet defined in the copyright context."). However, the Ninth Circuit refrained from deciding the question and held that a sequence of yoga positions was not copyrightable because "it is an idea, process, or system to which copyright protection may 'in no case' extend." *Id.* at 1043–44 ("In this case, we need not decided whether to adopt the Copyright Office's definition of 'choreographic work' or fashion another on our own …."). Accordingly, choreographic works remains undefined in the Ninth Circuit.

California's Anti-SLAPP statute "is designed to discourage suits that 'masquerade as ordinary lawsuits but are brought to deter common citizens from exercising their political or legal rights or to punish them for doing so." *Keller v. Elec. Arts Inc*., 724 F.3d 1268, 1271 (9th Cir. 2012) (quoting *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003)). The purpose of the statute is "to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights." *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1055–56 (2006). A special motion to strike under CCP § 425.16 entails a two-step process. *Navellier v*

- 6 -

*Sletten*, 29 Cal. 4th 82, 88 (2002). First, the defendant must make a threshold showing that the challenged cause of action arises from protected activity. *Rusheen*, 37 Cal. 4th at 1056. If the defendant makes this showing, then secondly, the plaintiff must "demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by plaintiff is credited." *Id*. However, "the court does not weigh the evidence or make credibility determinations." *Ross v. Kish*, 145 Cal. App. 4th 188, 197 (2006).

## III.   ARGUMENT

### A.   Epic's "It's Complicated" Emote Infringes the Registered Choreography

Hanagami owns a valid copyright registration, No. PA 2-277-839. Compl. at ¶1. The complaint alleges that Epic's "It's Complicated" emote "contains the most recognizable portion of Hanagami's Registered Choreography, the portion of the hook at the beginning of the song, which repeats several times throughout the song." Compl. at ¶40; *see Feist Pubs., Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361 (1991).

To state a claim for copyright infringement, both "copying" and "unlawful appropriation" must be alleged. *Rentmeester v. Nike, Inc*., 883 F.3d 1111, 1117 (2018). The Complaint alleges both. *See* Compl. at ¶2 (alleging "unauthorized misappropriation of Hanagami's popular dance"), 32 ("Epic [copies and codes dances and movements] by either tracing frames directly from the source material (in this case Hanagami's YouTube video) or directing performers to copy the movements from those videos for motion capture and coding.").

When a plaintiff lacks direct evidence of copying, he can attempt to prove it circumstantially by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying. *See Baxter v. MCA, Inc*., 812 F.2d 421, 423 (9th Cir. 1987); 4 Nimmer on Copyright § 13.01[B]. The allegations in the complaint create a presumption of copying, which Epic could

- 7 -

attempt to rebut by proving independent creation.[2] *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486 (9th Cir. 2000).

The Ninth Circuit utilizes a two-part analysis, consisting of the "extrinsic test" and the "intrinsic test," to determine whether works are substantially similar. *See Rentmeester*, 883 F.3d at 1118. Only the extrinsic test's application is relevant here as it is the only test that may be decided by the court as a matter of law. *McCulloch v. Albert E. Price, Inc.*, 823 F.2d 316, 319 (9th Cir. 1987). However, no court in this district has ever utilized either test to compare a registered choreographic work with another choreographic work. Thus, this is a case of first impression for which Epic's cited cases are, in many ways, inapplicable.

In *Rentmeester*, the Ninth Circuit held that before works can be compared under the extrinsic test, the "court must 'filter out' the unprotectable elements of the plaintiff's work—primarily ideas and concepts, material in the public domain, and *scènes à faire*…" 883 F.3d at 1118. Epic omits this list of unprotectable elements, instead focusing on what it alleges (incorrectly) are only four "Steps"[3] that it contends are not protectable. But there is a marked difference between elements of a work that are unprotectable and elements of a protected work that, standing alone, would not be entitled to independent copyright protection.

The so-called "Steps" that Epic asks the Court to filter out of the Registered Copyright are a related series of dance movements and patterns imbued with the creativity of a professional artist and organized into a coherent whole. These are the characteristics of copyrightable choreographic works set forth in the Compendium of Copyright Office Practices, Compendium II (1984) ("Compendium II") and *Horgan*. The infringed portion of the Registered Choreography, although a subset

---

[2] Epic has not argued that it independently created the movements in the infringing emote.

[3] Despite its initial position that there are only four steps, Epic itself later details no less than eight movements that are included in the infringement. MTD at p. 5.

- 8 -

of a larger whole, is nonetheless a "coherent whole" onto itself; it is plainly *not* a "building block," as Epic has argued in its attempt to escape liability.

Taken to its logical conclusion, Epic's position erases copyright protection for choreography. Every copyrighted choreography can be broken down into constituent parts that are comprised of individual progressions of movements. According to Epic, these each can be filtered out based on nothing other than a defendant's bald statement that they are short. Having successfully filtered out all of "building blocks" from any infringement analysis, no copyrightable subject matter remains for choreographers to protect. Moreover, if copyright infringement in choreography requires a finding that all or nearly all of the copyrighted work was copied, it offers no plausible protection at all.

The *Rentmeester* case is instructive in this regard. "Photographs cannot be dissected into protected and unprotected elements in the same way" as novels, plays and motion pictures, where unprotectable elements like "ideas and scenes a faire" can be filtered and protectable elements can be compared.[4] 883 F.3d at 1118. Choreography too has a distinct analysis. Indeed, none of the dismissals that were affirmed by the Ninth Circuit cited by Epic, involve choreography or exact copying.

The choreography that Epic copied is not *de minimis;* Epic only offers the opinions of its counsel to support such a finding. It is complex, unique, and creative. Neither the Compendium II nor *Horgan* provide a requisite complexity of dance movements or minimum length of patterns. Moreover, to call the portion that Epic misappropriated "*de minimis*" is extremely convenient considering that Epic copied it stroke for stroke and sold it for money. If the infringing portion is that simple and basic, Epic may have provided a single other instance of a similar independently-

---

[4] The additional Ninth Circuit cases are also unavailing.  For example, *White v. Twentieth Century Fox Corp*. involves the comparison of a screenplay and a movie involving, among other things, "grocery store scenes…includ[ing] as a main prop shopping carts full of food," which is wholly inapplicable to this case.   572 F. App'x 475, 477 (9th Cir. 2014).  *Thomas v. Walt Disney Co*. also involves a literary work and a movie.  337 F. App'x 694, 694 (9th Cir. 2009).

created choreography or a choreographic work that would have suffered had this allegedly "*de minimis*" "building block" been removed from the public coffers. Epic did not do so because they could not.

The remaining cases cited by Epic are also distinguishable from the case at bar. In *Wild v. NBC Universal*, the plaintiff alleged that the fourth season of NBC's TV series *Heroes* infringed his graphic novel. 513 F. App'x 640, 641 (9th Cir. 2013). A comparison of screen shots of *Heroes* with individual frames of the graphic novel revealed nothing more than "unprotectable 'stock scenes' or 'scenes a faire' (situations that naturally flow from a basic premise)." *Id*. The Court found that "[a]ny remaining comparable aspects of these scenes constitute nothing more than 'random similarities scattered throughout the works' that are insufficient to support a claim of substantial similarity." *Id*. at 642 (internal citations omitted). By contrast, Hanagami's infringed movements are not stock scenes and they are admittedly *identical* to those that Epic packaged and sold in its "It's Complicated" emote. This was intentional by Epic, and not a random similarity. Nor are they scattered throughout the infringing emote, they are front and center, comprising a substantial portion of that work and forming the basis for its value to Epic's customers.

In *Puckett v. Hernandez*, this Court found that the two songs at issue "involve[d] the same idea of expressing one's love but not having those actions and feelings reciprocated" but the "expressions of that idea [we]re clearly quite different." No. 2:16 Civ. 02199, 2016 WL 7647555, at *5 (C.D. Cal. Dec. 21, 2016). The Court went on to find that the "similar expressions of 'I would die for you baby' and 'You won't/didn't do the same,'" could not sustain a finding of substantial similarity. By contrast, in this case, Epic lifted *exact movements*—not "similar expression."

Similarly, in *Abdullah v. Walt Disney Co*., this Court found that "Plaintiffs alleged similarities only amount to mischaracterizations of the works or *scènes à faire* to fairy tales such as princes, princesses, castles, magical powers, love,

- 10 -

betrayal, and a protagonist who seeks to conceal a characteristic from the public." No. 215CV09581SVWJPR, 2016 WL 5380930, at *5 (C.D. Cal. Mar. 14, 2016), aff'd, 714 F. App'x 758 (9th Cir. 2018). Here, Epic is the one mischaracterizing the Registered Copyright and no *scènes à faire* is alleged to infringe.

Finally, in *Reflex Media, Inc. v. Pilgrim Studios, Inc.*, prior to comparing the works at issue, the Court first removed generic elements including, "(1) casting young attractive singles, (2) filming multiple-day dates in exotic locations, (3) contestants participating in bonding activities, and (4) a theme and mood of fun, adventure, and anticipation for the prospect of burgeoning romantic feelings between the participants on the show" – none of which relate to any issue in this case. No. 2:18 Civ. 02260, 2018 WL 6566561, at *10 (C.D. Cal. Aug. 27, 2018). The Court went on to find that "[t]hough the two works have identical titles," which are not protected by copyright, there was a "lack of substantial similarity between any protectable elements of the respective works as well as [] significant differences between the works." *Id.* at *12. These protectable elements included plot, theme, dialogue, mood, setting, characters, and pace. *Id.* at *9-11. The analysis at issue is, of course, markedly different than a comparison of two television shows and involves comparing movements (which are, in this case, identical).

Epic's motion does not address the allegation that the copied portion of its emote comprises "the most recognizable portion of Hanagami's Registered Choreography." *See* Compl. at ¶40. Epic was caught red handed here.

### 1.  The Works as a Whole are Substantially Similar

Epic misleadingly recontextualizes the infringing emote as part of the ecosystem of all of Fortnite and every dance sold in its store. Epic goes so far as to submit its own video of the infringing emote in the context of the game. Declaration of Dale M. Cendali, Esq. ("Cendali Decl."), Dkt. No. 30, Ex. B. To capture this kludge, Epic had to create two players, purchase or otherwise equip "It's Complicated" with one player, and then film the first player from the perspective of

- 11 -

the second player. This is a fabrication. That is not how Epic's customers would encounter the infringing emote. Epic's customers encounter it in the Item Shop, where they are presented with the choreography and a button that permits them to spend in-game currency (which can be purchased using real-world currency) to purchase the emote for the equivalent of five U.S. dollars.  Declaration of David L. Hecht, dated June 6, 2022 ("Hecht Decl."), Exhibit 1; Compl. at ¶¶25-29, 38-40. Once a choreography is purchased, a player can make their character display that choreography for other players or for themselves. Epic does not even mention the Item Shop in its motion. Each item is a separate product and the correct context for an alleged infringement is *the specific item*. Epic's appeal to the creativity of the entire Fortnite ecosystem, even if it had been properly raised outside the context of a fair use defense on motion to dismiss, is unavailing.

Epic's attempt to hide behind the "enormity" of the Fortnite ecosystem is akin to a cable provider asserting that one of its pay-per-view movies cannot possibly infringe another work because there are other channels and movies on the platform; or if a bootleg DVD vendor argued that the customer took the DVD home, where it became part of their entire collection of DVDs and that the court must find substantial similarity to the entire collection to find infringement. The "It's Complicated" emote stands alone because it is offered for sale alone.

While closer to the case at bar than *Wild*, *Newton* is also distinguishable. In *Newton*, the Ninth Circuit affirmed the district court's decision to grant summary judgment because the use of the "sample," which consisted of a "three-note segment" (*i.e.*, C – D flat – C, over a held C note), was *de minimis*. Notably, the Ninth Circuit assumed that the sampled segment of the composition was sufficiently original to merit copyright protection—despite the short length. 388 F.3d 1189, 1192 (9th Cir. 2004). Moreover, a taking is *de minimis* only if "the average audience would not recognize the appropriation." *See Fisher v. Dees*, 794 F.2d 432, 434 n.2 (9th Cir. 1986). Here, the Complaint describes the opposite: "[u]pon its release, the

- 12 -

1    reaction from many players worldwide was immediate recognition of the 'It's
2    Complicated' emote as embodying the Registered Choreography." Compl. at ¶41.
3    Accordingly, Epic's use cannot be considered *de minimis*.

4                    2.    The Infringed Choreography Alone is Protectable

5          Epic does not – because it cannot – cite a single case that supports its argument
6    that the infringed portion of the Registered Choreography is undeserving of
7    copyright protection. Epic attempts to flip the burden of proof upside down, putting
8    the onus on Hanagami to "independently show that [the infringed "Steps"] are
9    protectible. MTD at p. 11. This is not the law. Hanagami already has a copyright
10   registration covering the "Steps" – and more. He need only show that Epic copied
11   "enough of the [choreography's] protected expression to render the[] works
12   'substantially similar." *Rentmeester*, 883 F.3d at 1118.

13         As even Epic recognizes, the infringed portion of the Registered
14   Choreography includes *a combination of different movements*, including (1) "the
15   right foot kick[ing] forward," (2) the right foot "touch[ing] to the side," (3) "the
16   hips twist[ing] counterclockwise," (4) "a shoulder touch," (5) "a head pull," (6) "a
17   bent-arm," (7) a "finger point," and (8) "an arm opening." MTD at p. 5. Plaintiff is
18   not seeking to claim that he has any rights to any of these movements in isolation.
19   Rather, it is the combination of these movements and their relative timing and
20   transitions which comprise Hanagami's infringed choreography. That combination
21   is far from "a building block," as Epic hopes this Court would believe. If mere
22   building blocks were used by Epic, players would not have immediately recognized
23   Epic's emote as utilizing the Registered Choreography. Dkt. 1 at 41.

24         Each of the examples Epic provides in its introductory sentence is a short,
25   static, silhouette or pose that represents an idea for a dance move. The *grand jeté* is
26   the *idea* of a jumping split. The downward dog is the *idea* of a static position with
27   the rear end pointing skyward. *Dirty Dancing* showed us the *idea* of raising your
28   dance partner perpendicular above your head. Epic tries to downplay the complexity

- 13 -

of the choreography it copied by diminutively referring to them as the "Steps." But beyond that frail veneer, Epic fails to draw any connection between the "Steps" and any simple, basic idea. It is not sufficient for Epic to claim that the infringing choreography is the idea of the doing the moves of that choreography. Again, this would subsume the entirety of copyright protection for choreography. That is why every one of the cases cited by Epic in support for its conclusion is inapposite.

In *Bikram's Yoga College of India, L.P. v. Evolution Yoga, LLC*, the plaintiff attempted to protect the action of putting individual yoga poses together into a sequence that was sold as a healing art. 803 F.3d 1032, 1044 (9th Cir. 2015). Here, Hanagami is protecting (and received a registration for) his choreography, created for entertainment and expression: the main motive of the Copyright Act.

The *Rentmeester* court held that plaintiff's "copyright does not confer a monopoly on that general 'idea' or 'concept'; he cannot prohibit other photographers from taking their own photos of [Michael] Jordan in a leaping, *grand jeté* inspired pose." *Rentmeester*, 883 F.3d at 1121. Hanagami makes no such claim—he has not attempted to claim ownership of anything as fundamental as a static pose.

*Folkens v. Wyland Worldwide, LLC* similarly involves the concept of a dolphins' pose in artistic work, which is nothing like the specific choreography in the present case. 882 F.3d 768, 774 (9th Cir. 2018). And *Reece v. Island Treasures Art Gallery, Inc*. involves a photograph and a stained-glass artwork, both of which captured a woman performing hula on the beach, not specific movements in a choreography.[5] 468 F. Supp. 2d 1197, 1199 (D. Haw. 2006).

All of the Copyright Office actions cited by Epic are inapposite and improperly submitted for judicial notice here. The Copyright Office has not reviewed the specific portion of Registered Choreography that is at issue here on its own. Had they done so, their decision would not be binding but may be entitled to

---

[5] Likewise, every one of the cases cited in footnote 5 of Epic's motion deal with static poses. *See* MTD. At 11-12 n.5.

1   some deference. *New York Mercantile Exch., Inc. v. IntercontinentalExchange, Inc.,*
2   389 F. Supp. 2d 527, 543 (S.D.N.Y. 2005), aff'd, 497 F.3d 109 (2d Cir. 2007); *see*
3   *Morris v. Bus. Concepts, Inc.*, 283 F.3d 502, 505-06 (2d Cir. 2002). But the
4   Copyright Office's decisions regarding completely different works of choreography
5   can be afforded no deference here nor any consideration whatsoever. Epic offers
6   mere speculation that the result would be the same here. Epic does not even attempt
7   to explain how the rejected works might be similar enough to compare other than
8   their relative length.[6]

9       Epic also twists the law in its argument that "individual elements of works are
10  not protectable where they involve the building blocks of creative expression that, if
11  protected, would inhibit the creation of new works." MTD. at 13. To support this
12  proposition, Epic cites to *Zhang v. Heineken*, which involves renditions of Chinese
13  characters and held that "words and short phrases" are not protectable.  No. 08 Civ.
14  06506, 2010 WL 11596643, at *4 (C.D. Cal. Sept. 29, 2010). Hanagami is not
15  looking to protect the equivalent of words or short phrases; again, Epic offers only
16  its own bare contention to the contrary. Indeed, the routine is performed by trained
17  dancers in the Registered Choreography and complicated enough that Epic itself
18  calls the emote "It's Complicated." *See* Hecht Decl., Ex. 2

19      The so-called "Steps" are not standard. Epic cites myriad cases that involve
20  standard words or images, but stops short of showing how the movements at issue
21  here are standard.  None of the cases that Epic cites in footnote 7 of the motion are
22  instructive. *See* MTD. at 13 n. 7. The instant case does not involve any recipe
23  instructions, part numbers, standard ordinary employment phraseology, decorative
24  features, or a standard calendar or anything generic or standard of the sort.

25      An individual movement itself may not be protectable—but the so-called
26  "Steps," the infringed portion of the Registered Choreography, are a series of

27

28
_____

[6] With respect to the "Carlton," the rejection was appealed and is currently pending.

- 15 -

1  movements which is neither standard nor basic. Epic does not argue that these
2  constitute are a social dance, or a "gesture." Thus, the "Steps" are protectible.

3         3.     The Infringed Portion is Substantially Similar to the Emote

4         There is no portion of a copyrighted work that the law simply permits another
5  to copy, no matter how short. Hanagami has alleged that "the emote contains the
6  most recognizable portion of Hanagami's Registered Choreography, the portion for
7  the hook at the beginning of the chorus of the song, which repeats several times
8  throughout the song." Compl. at ¶40. Epic stole the heart of the work.

9         Choreography is entitled to broad, not thin, protection. In *Williams v. Gaye*,
10 (the "Blurred Lines case") the Ninth Circuit held that the scope of copyright
11 protection is "based on the 'range of expression' involved." 895 F.3d 1106, 1120
12 (9th Cir. 2018) (citing *Mattel, Inc. v. MGA Entm't, Inc*., 616 F.3d 904, 913–14 (9th
13 Cir. 2010)). Musical compositions, are "not confined to a narrow range of
14 expression" since they are "comprised of a large array of elements, some
15 combination of which is protectable by copyright." *Id*. (citing *Swirsky v. Carey*, 376
16 F.3d 841, 845 (9th Cir. 2004), as amended on denial of reh'g (Aug. 24, 2004)).
17 Choreographic compositions are similar to musical compositions in this regard as
18 the potential movements that the human body can do are at least as numerous as the
19 notes on a piano. There are countless ways to do eight counts of physical movement
20 and transition between them.

21        Epic and its attorneys are not choreography experts and their analysis of the
22 choreography is understandably incorrect, if not intentionally misleading.
23 Hanagami's Registered Choreography is *not* a "five-minute dance"—nor does it
24 contain "about 520 counts of music, broken down into 104 counts of music." MTD
25 at 4. By Plaintiff's (a professional choreographer's) count, and as is clear from the
26 video, the choreography actually contains 96 counts, repeated five times in the
27 video. *See* Cendali Decl., Ex. A. In fact, nearly all of the numbers Epic has set forth
28 with respect to the choreography and the number of moves therein are inaccurate.

- 16 -

1    Hanagami included several screenshots in his complaint, which were taken

2    from the side-by-side comparison video attached hereto as Exhibit 2. Compl. at ¶43.

3    The video is even more compelling than the screenshots. Hecht Decl., Ex. 2

4    (Comparison Video). Epic's emote is the same tempo as the Registered

5    Choreography and contains at least eight of the same body shapes/positions (terms

6    of art in choreography), as well as the same pathways/transitions (additional terms

7    of art) between those shapes/positions. Using a music analogy, if a foot or arm

8    shape/position is like a note, chords are the pathways/transitions. Epic copied the

9    sequence of notes (at least eight) and all of the chords in between.

10    The Ninth Circuit, in *Swirsky*, further held that "[t]here is no one magical

11    combination of … factors that will automatically substantiate" an infringement

12    lawsuit and as "each allegation of infringement will be unique," the extrinsic test is

13    met, "[s]o long as the plaintiff can demonstrate, through expert testimony …, that

14    the similarity was 'substantial' and to 'protected elements' of the copyrighted work."

15    *Swirsky*, 376 F.3d at 849. In filing its motion to dismiss, Epic hopes to cut this

16    litigation short, long before expert discovery by substituting attorney argument in

17    lieu of an expert. But the substantial similarity of the works is clear on its face from

18    the fact that Epic meticulously copied highly complex choreographic movement,

19    performed by skilled dancers, animating them with millimeter and millisecond

20    accuracy. Hecht Decl., Ex. 2.

21    Epic's argument that it can never infringe when the misappropriated sequence

22    is "short" does not pass muster. Like the quoted excerpts from a biography of

23    President Gerald Ford at issue in *Harper & Row Publishers, Inc. v. Nation

24    Enterprises*, the infringed choreography "serve[s] as [the Registered

25    Choreography's] dramatic focal points." 471 U.S. 539, 566, 105 S. Ct. 2218, 2233,

26    85 L. Ed. 2d 588 (1985). This is akin to the "hook" or "chorus," the repeating refrain

27    that constitutes the heart of the Registered Copyright. Compl. at ¶40.

28    In *Harper & Row*, the Supreme Court cited to *Meeropol v. Nizer*, 560 F.2d

- 17 -

1   1061, 1071 (CA2 1977), where the copyrighted letters constituted less than 1% of
2   the infringing work but were prominently featured. Epic does not deny that
3   Hanagami's choreography (*i.e*., the "Steps") are prominently featured in the "It's
4   Complicated" emote. The infringement at issue here is far more than 1% of the
5   infringing work here. *See* MTD. at 18-19. By Epic's own admission, it constitutes at
6   least one quarter of the emote. *Id.*

7   The Supreme Court also cited *Roy Export Co. Establishment v. Columbia*
8   *Broadcasting System, Inc*., 503 F.Supp., at 1145, the holding of which it summarized
9   as "taking of 55 seconds out of 1 hour and 29–minute film deemed qualitatively
10  substantial." *Harper & Row Publishers*, 471 U.S. at 565, 105 S. Ct. at 2233. This
11  computes to approximately 1% of the work. This case involves Epic taking more
12  than that, even by Epic's count (which Hanagami disputes). Epic's motion to dismiss
13  should be denied for the reasons stated above.

14  **B.     Epic's Anti-SLAPP Motion to Strike is Frivolous**

15  California's anti-SLAPP law was designed "to protect nonprofit corporations
16  and common citizens 'from large corporate entities and trade associations' in
17  petitioning government." *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 143
18  (2019) (quoting *USA Waste of California, Inc. v. City of Irwindale*, 184 Cal. App.
19  4th 53, 66 (2010)); *see also* Cal. Code Civ. P. § 425.16(a) ("it is in the public interest
20  to encourage participation in matters of public significance, and that this
21  participation should not be chilled through abuse of the judicial process"). The
22  paradigmatic lawsuit that the anti-SLAPP law was designed to curb is one where "a
23  well-funded developer limits free expression by imposing litigation costs on citizens
24  who protest, write letters, and distribute flyers in opposition to a local project.
25  *FilmOn.com*, 7 Cal. 5th at 143. The claim and situation that are the subject of this
26  motion could not be further from this paradigmatic example and represents an
27  attempt to pervert the anti-SLAPP law to achieve the opposite effect: one where a
28  large, well-funded for-profit company (Epic) uses the statute as a vehicle to

- 18 -

1  discourage an individual artist (Hanagami) from vindicating their rights in court by
2  burdening them with unnecessary litigation costs and the threat of additional costs.

3       An anti-SLAPP motion entails a two-step inquiry. "First, the defendant must
4  establish that the challenged claim arises from activity protected by Cal. Code Civ.
5  P. section 425.16. If the defendant makes the required showing, the burden shifts to
6  the plaintiff to demonstrate the merit of the claim by establishing a probability of
7  success." *Baral v. Schnitt*, 1 Cal. 5th 376, 384 (2016) (citation omitted). As discussed
8  below, Epic cannot even reach the second prong of this analysis because it makes no
9  serious attempt to satisfy their burden on the first prong: that their complained-of
10 conduct was in furtherance of their exercise of free speech or petition rights on an
11 issue of public interest.

12           1.   <u>Epic's Conduct Did Not Further its Exercise of First Amendment</u>
13               <u>Rights In Connection With an Issue of Public Interest</u>

14      As an initial matter, Epic bases its motion on Cal. Code Civ. P. § 425.16(b)(1),
15 which implicates "any act of that person in furtherance of the person's right of
16 petition or free speech under the United States Constitution or the California
17 Constitution in connection with a public issue." However, Epic fails to identify what
18 this "act" is or its context under Cal. Code Civ. P. § 425.16(e), which provides for
19 four possible act/context combinations: 1) statement or writing made before an
20 official proceeding, 2) statement or writing made in connection with an issue under
21 review by a governmental body, 3) statement or writing made in a public forum in
22 connection with an issue of public interest, or 4) any other conduct in furtherance of
23 their free speech of petition rights in connection with an issue of public interest. The
24 complained-of conduct under the Unfair Competition claim – Epic's copying,
25 advertising, and sale of the in-game "It's Complicated" emote (*see* Compl. at ¶¶83-
26 88) – can only potentially fall under the last category (subsection 425.16(e)(4)),
27 otherwise known as the "catchall provision." *See FilmOn.com*, 7 Cal. 5th at 144.

28      The anti-SLAPP analysis under the catchall provision is itself a two-party

- 19 -

inquiry "rooted in the statute's purpose and internal logic": 1) what issue of public interest the speech or conduct in question implicates, and 2) whether there exists any functional relationship between the speech or conduct and the public discourse on the issue of public interest. *Id.* at 149-50. Epic falls far short of meeting its burden of satisfying this inquiry because it barely makes a half-hearted attempt at identifying the first prong (what public issue is implicated) and does not even attempt to identify the second prong (how their conduct furthers the public discourse on this issue). *See* MTD at 19-20.

First, Epic identifies the public interest issue as Hanagami's dance as well as Epic's infringement thereof, purportedly based on assertions in the Complaint. *Id.* at 19. But this analysis is both simplistic and contrary to the law. Identifying the issue of public interest requires looking to the content of the speech. *FilmOn.com*, 7 Cal. 5th at 149. Here, the "speech" in question is Epic's sale and advertising of a digital product – the "It's Complicated" emote. Nothing about this "speech" talks explicitly about Hanagami's dancing or any related infringement. Nor has Epic admitted (yet) that the infringing Emote was intentionally directed to Hanagami or his choreography.

*Consumer Justice Center v. Trimedica Int'l, Inc.*, 107 Cal. App. 4th 595 (2003), is illustrative. There, the court rejected the anti-SLAPP movant's contention that literature on their herbal supplement pill were a matter of public interest within the meaning of the anti-SLAPP statute. *Id.* at 600-02. The court did not credit the movant's argument that their "speech" implicated herbal dietary supplement as a subject of public interest; the court concluded that the "speech" was "commercial speech about the specific properties and efficacy of a particular product." *Id.* at 601. Here too, the "speech" in question is not about Hanagami nor is it about dance in general. It is not about anything. The alleged "speech" is a digital product: a dance emote (with copied choreography) offered for sale in an Item Shop. Moreover, merely being the subject of a lawsuit by Hanagami, after the fact, does not render

- 20 -

1  this digital product a subject of public interest. Otherwise, any similar claims about

2  a digital product would be automatically subject to anti-SLAPP motions as well. *See*

3  *id.* at 601 (indicating concern that examining the nature of a speech in generalities

4  instead of specifics would lead to an absurd result and allow nearly any claim to fall

5  within the ambit of the anti-SLAPP law).

6       Epic's further erroneously concludes that the mere fact that the challenged

7  claim generally involves a video game satisfies the entirety of the first prong of the

8  anti-SLAPP analysis. MTD at 19. Fortnite is the platform, the place where the

9  alleged speech occurred, not the speech itself. Not only does Epic's cited cases fail

10  to support this far-reaching assertion,[7] it is also in direct contravention to the

11  California Supreme Court's holding. The alleged speech "must in some manner itself

12  contribute to the public debate" of that issue. *FilmOn.com*, 7 Cal. 5th at 150 (quoting

13  *Wilkbanks v. Wolk*, 121 Cal. App. 4th 883, 898 (2004)). That court further found that

14  anti-SLAPP law should only be extended where doing so would encourage

15  participation in matters of public significance. *Id.* at 154. Such a determination

16  requires an inquiry into the context in which the speech is made, including, but not

17  limited to, "audience, speaker, and purpose." *Id.* at 152. The alleged speech here

18  offers no commentary nor does it add any discussion to any of the identified issues;

19  it does not add to the discourse about Fortnite, Hanagami, Hamagami's

20  choreography, or dance in general.

21       It is telling that Epic's brief entirely avoids the analysis of how the emote at

22  issue contributes to public discourse on the issue that they themselves identify. In

23  fact, they do just the opposite: the crux of their brief is Epic's belief that there is no

24  substantial similarity between the in-game emote and Hanagami's choreography.

25  Epic should not be permitted to use anti-SLAPP, a statute created to protect

26

27  ─────────────

28  [7] *Cusano v. Klein*, 473 F. App'x 803 (9th Cir. 2012), does not stand for the
proposition for which it is cited by Epic: that "video games satisfy step one of the
anti-SLAPP analysis." *See* MTD at 19.

- 21 -

1  individuals from the overreach of large corporations, to quash the valid attempts of
2  individuals to assert their rights against multi-billion-dollar companies.

3         2.    The Copyright Act Does Not Preempt the Unfair Competition
4               Claim

5         If the defendant fails to make its required showing at the first step of the anti-
6  SLAPP inquiry, the second step – establishing a probability of success on the merit
7  of the claim – is not reached. *Baral*, 1 Cal. 5th 376 at 384, 396 (2016). To the extent
8  this Court reaches the second step, it too fails the anti-SLAPP inquiry because the
9  Copyright Act does not preempt the unfair competition law ("UCL") claim.

10        For copyright preemption to occur, two requirements must be met: 1) "the
11  content of the protected right must fall within the subject matter of copyright,"[8] and
12  2) "the right asserted under state law must be equivalent to the exclusive rights
13  contained in section 106 of the Copyright Act." *Downing v. Abercrombie & Fitch*,
14  265 F.3d 994, 1003 (9th Cir. 2001) (citation omitted). With respect to the second
15  requirement, a state law claim is not preempted if it contains an extra element such
16  that it is qualitatively different from a copyright infringement claim. *Aagard v.*
17  *Palomar Builders, Inc.*, 344 F. Supp. 2d 1211, 1215 (E.D. Cal. 2004) (citations
18  omitted). As demonstrated below, Hanagami's UCL claim contains sufficient extra
19  elements to differentiate it from the copyright claims.

20        California Business & Professions Code section 17200 prohibits "any
21  unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue
22  or misleading advertising … ." Cal. Bus. & Prof. Code § 17200. "Courts broadly
23  interpret § 17200 to include anything that can be properly called a business practice
24  and that at the same time is forbidden by law." *Aagard*, 344 F. Supp. 2d at 1216
25  (citations and internal quotation marks omitted). Here, the Complaint alleges that
26  Epic's use of Hanagami's choreography created an association of Epic's emote with
27  that choreography and created a false impression that Hanagami ***endorsed*** the

28

---

[8] Hanagami does not contest the first requirement is met.

Fortnite game within which the emote exists. Compl. at ¶¶ 48-49, 83-84. Moreover, the Complaint alleges that Epic created the false impression that Hanagami consented to and endorsed the inclusion of his choreography with choreography that is not his own in a single item and the concomitant association of all of it with him. *Id*. at ¶48.   The extra elements preclude preemption. *See Butler v. Target Corp.*, 323 F. Supp. 2d 1052, 1057-58 (C.D. Cal. 2004) (no copyright preemption where use of altered lyrics in copyrighted song confused plaintiffs' fans about a false endorsement of defendant); *Schroeder v. Volvo Group North America, LLC*, No. LACV 20-05127-VAP (PVCx), 2020 WL 6562242, at *7-8 (C.D. Cal. Sept. 3, 2020) (no copyright preemption where misappropriation of plaintiff's photographs in defendant's marketing efforts deceived consumers and created a false impression that plaintiff endorsed defendant); *Henley v. Devore*, No. SACV 09-0481-JVS, 2009 WL 10697982, at *7 (C.D. Cal. July 8, 2009) (false association or endorsement claim not preempted by copyright law); *Pellegrino v. Epic Games, Inc.*, 451 F. Supp. 3d 373, 386 (E.D. Pa. 2020) (no preemption of false endorsement claim).

## C.    Attorneys' Fees Are Available to Hanagami

Epic's infringement is ongoing for purposes of 17 U.S.C. 412.  The Fortnite video game is "live," and, at least in the case of players that have purchased the emote, "caus[e] the emote to be copied to other devices for access and performance by players' avatars," as admitted by Epic. *See e.g.* Compl. at ¶57; MTD. at. 6. Accordingly, the infringement of copyright has occurred and is still occurring after the effective date of Hanagami's registration.

Furthermore, Epic's reliance on *Rosen v. Netfronts, Inc.*, No. CV-12-658 CAS (FFMx), 2013 WL 3467205 (C.D. Cal. July 9, 2013), is misplaced. There, the court held that the doctrine of continuing infringement does not apply where the infringer ceased and restarted its infringing activity. *Id*. at *3 (citations omitted). Without the benefit of discovery, there is no way to establish whether any infringement was continuous or whether there were interruptions for any period of time.

- 23 -

## IV.   CONCLUSION

Epic attempts to fear monger, warning the court that if Epic faces liability for infringement of Hanagami's work this would open the door to "subjecting anyone who publicly performs a few dance steps to liability for copyright infringement." MTD at 2. Hanagami disputes that just "a few dance steps" have been infringed here. Choreographers, like any other creators, have the right to enforce their copyrights against infringers. Epic's so-called slippery slope boils down to Epic having to diligence and pay for things that other people have created before profiting from them, which is the right outcome. For the foregoing reasons, Hanagami respectfully requests that this Court deny Epic's motion to dismiss and special motion to strike.[9]


Dated: June 6, 2022                              Respectfully Submitted,


                                                 HECHT PARTNERS LLP


                                                 By: */s/ David L. Hecht*

                                                 *Attorneys for Plaintiff Kyle Hanagami*


                                                 Hecht Partners LLP
                                                 Kathryn Lee Boyd (SBN 189496)
                                                 6420 Wilshire Blvd., 13th Floor
                                                 Los Angeles, CA 90048


                                                 David L. Hecht (*Pro Hac Vice*)
                                                 Maxim Price (*Pro Hac Vice*)
                                                 125 Park Avenue, 25th Floor

---

[9] In the event the Court grants Epic's motion in whole or in part, Hanagami requests leave to amend any cause of action that is dismissed or stricken because this is the first complaint in the action and leave should be granted freely absent a showing of prejudice. *See Eminence Cap., LLC v. Aspeon, Inc*., 316 F.3d 1048, 1051 (9th Cir. 2003) (citing Fed.R.Civ.P. 15(a)).

- 24 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

New York, NY 10017
Tel: 212-851-6821
Email: lboyd@hechtpartners.com
        dhecht@hechtpartners.com
        mprice@hechtpartners.com

- 25 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the forgoing **PLAINTIFF KYLE HANAGAMI'S OPPOSITION TO DEFENDANT EPIC GAMES, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND SPECIAL MOTION TO STRIKE (ANTI-SLAPP), OR IN THE ALTERNATIVE, MOTION TO STRIKE CERTAIN FORMS OF RELIEF** with the Clerk of the Court by using the CM/ECF system, which will automatically send a notice of electronic filing to all persons registered with ECF.

Dated: June 6, 2022                    By: */s/ David L. Hecht*

David L. Hecht

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hecht Partners LLP
Kathryn Lee Boyd (SBN 189496)
6420 Wilshire Blvd., 13th Floor
Los Angeles, CA 90048

David L. Hecht (*Pro Hac Vice*)
Maxim Price (*Pro Hac Vice*)
125 Park Avenue, 25th Floor
New York, NY 10017
Tel: 212-851-6821

*Attorneys for Plaintiff Kyle Hanagami*

THE UNITED STATES DISTRICT COURT FOR THE

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Kyle Hanagami, an individual,<br><br>Plaintiff,<br>v.<br>Epic Games, Inc., a North Carolina corporation; and Does 1 through 10, inclusive,<br><br>Defendants. | CASE NO. 2:22-cv-02063-SVW-MRWx<br><br>**PLAINTIFF KYLE HANAGAMI'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS OPPOSITION TO DEFENDANT EPIC GAMES, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND SPECIAL MOTION TO STRIKE (ANTI-SLAPP), OR IN THE ALTERNATIVE, MOTION TO STRIKE CERTAIN FORMS OF RELIEF**<br><br>Complaint Filed: March 29, 2022<br><br>Judge:        Stephen V. Wilson<br>Hearing Date: June 27, 2022<br>Time:        1:30pm<br>Courtroom:   10A |

- 1 -

**ER_071**

1

2       Pursuant to Federal Rule of Evidence 201, Plaintiff Kyle Hanagami

3  ("Hanagami") submits this request for judicial notice in support of its concurrently-

4  filed Opposition to Defendant Epic Games, Inc.'s ("Epic") Motion to Dismiss, ECF

5  30 ("MTD").

6       A court may consider the content of materials referred to in the complaint that

7  form the basis of the plaintiff's claims, even if the plaintiff neglects to attach the

8  materials to the complaint.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551

9  U.S. 308, 322 (2007) (court deciding Rule 12 motion may consider "documents

10  incorporated into the complaint by reference"); *Knievel v. ESPN*, 393 F.3d 1068,

11  1076-77 (9th Cir. 2005) (Rule 12 motion properly granted by considering web pages

12  referred to in complaint and attached to defendant's motion).

13       Hanagami's complaint expressly references and relies upon screenshots of the

14  Fortnite electronic marketplace, called in-game the "Fornite Item Shop", where the

15  "It's Complicated" emote is performed by an "avatar."  ECF 1 at ¶29.  As such,

16  Plaintiff requests judicial notice of Exhibit 1 to the Declaration of David L. Hecht,

17  which is a true and correct copy of a YouTube video titled "It's Complicated Emote

18  | Fortnite Battle Royale," that depicts the It's Complicated Emote being performed

19  by an avatar, as it appeared in the Fortnite Item Shop.  The video was captured from

20  the following address: https://www.youtube.com/watch?v=ye8BYIzPxgQ.

21       Hanagami's complaint additionally expressly references and relies upon

22  screenshots of a video showing a side-by-side comparison of the Fortnite It's

23  Complicated emote and Copyright Registration Number PA 2-277-839, which

24  covers the "How Long Choreography" (the "Registered Choreography"). ECF 1 at

25  ¶43.  As such, Plaintiff requests judicial notice of Exhibit 2 to the Declaration of

26  David L. Hecht, which is a true and correct copy of a YouTube video titled "Fortnite

27  Infringement of Kyle Hanagami Choreography", that depicts a side-by-side

28

- 2 -

1   comparison of the It's Complicated emote and the Registered Choreography.  The

2   video is also available at: https://www.youtube.com/watch?v=vXYDr9o_FJY.

3       Consequently, Exhibits 1 and 2 to the concurrently-submitted Notice of

4   Lodging and authenticated in the Hecht Declaration – are incorporated by reference

5   into the Complaint.  Thus, it is proper for this Court to take judicial notice of these

6   exhibits even though they were not attached to the Complaint. *Zaghi v. State Farm*

7   *General Insurance Company*, 77 F.Supp.3d 974, 977 (N.D. Cal. 2015) (judicial

8   notice taken of insurance policy that was central to the Plaintiff's claims but not

9   attached to the complaint.).

10

11   Dated: June 6, 2022                    Respectfully Submitted,

12

13                                           HECHT PARTNERS LLP

14

15                                           By: */s/ David L. Hecht*

16                                           *Attorneys for Plaintiff Kyle Hanagami*

17
                                             Hecht Partners LLP
18                                           Kathryn Lee Boyd (SBN 189496)
                                             6420 Wilshire Blvd., 13th Floor
19                                           Los Angeles, CA 90048
20
                                             David L. Hecht (*Pro Hac Vice*)
21                                           Maxim Price (*Pro Hac Vice*)
22                                           125 Park Avenue, 25th Floor
                                             New York, NY 10017
23                                           Tel: 212-851-6821
24                                           Email: lboyd@hechtpartners.com
25                                                  dhecht@hechtpartners.com
                                                    mprice@hechtpartners.com
26

27

28

- 3 -

1

## CERTIFICATE OF SERVICE

2      I hereby certify that I have electronically filed the forgoing **PLAINTIFF**

3 **KYLE HANAGAMI'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT**

4 **OF ITS OPPOSITION TO DEFENDANT EPIC GAMES, INC.'S MOTION**

5 **TO DISMISS PLAINTIFF'S COMPLAINT AND SPECIAL MOTION TO**

6 **STRIKE (ANTI-SLAPP), OR IN THE ALTERNATIVE, MOTION TO**

7 **STRIKE CERTAIN FORMS OF RELIEF** with the Clerk of the Court by using

8 the CM/ECF system, which will automatically send a notice of electronic filing to

9 all persons registered with ECF.

10

11      Dated: June 6, 2022                    By: */s/ David L. Hecht*
                                                    David L. Hecht
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 4 -

**ER_074**

Name & Address:

Kathryn Lee Boyd (SBN 189496)
Hecht Partners LLP
6420 Wilshire Blvd., 13th Floor
Los Angeles, CA 90048

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

KYLE HANAGAMI,

PLAINTIFF(S)

v.

EPIC GAMES, INC.,

DEFENDANT(S).

CASE NUMBER:

2:22-cv-02063-SVW-MRWx

### NOTICE OF MANUAL FILING
### OR LODGING

PLEASE TAKE NOTICE:

Pursuant to Local Rule 5-4.2, the following document(s) or item(s) are exempt from electronic filing, and will therefore be manually ☐ Filed ☑ Lodged: (**List Documents**)

Exhibit 1 to the Hecht Declaration - It's Complicated Emote _ Fortnite Battle Royale.mp4
Exhibit 2 to the Hecht Declaration - Fortnite Infringement of Kyle Hanagami Choreography.mp4

**Reason:**

☐ Under Seal
☐ In Camera
☑ Items not conducive to e-filing (i.e., videotapes, CDROM, large graphic charts)
☐ Per Court order dated: _____
☐ Other:

6/6/2022
_____
Date

David L. Hecht
_____
Attorney Name
Plaintiff Kyle Hanagami
_____
Party Represented

*Note:   File one Notice of Manual Filing or Lodging in each case, each time you manually submit a document(s).*

G-92 (05/15)                    NOTICE OF MANUAL FILING OR LODGING

**ER_075**

Hecht Partners LLP
Kathryn Lee Boyd (SBN 189496)
6420 Wilshire Blvd., 13th Floor
Los Angeles, CA 90048

David L. Hecht (*Pro Hac Vice*)
Maxim Price (*Pro Hac Vice*)
125 Park Avenue, 25th Floor
New York, NY 10017
Tel: 212-851-6821

*Attorneys for Plaintiff Kyle Hanagami*

THE UNITED STATES DISTRICT COURT FOR THE

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Kyle Hanagami, an individual,<br><br>Plaintiff,<br>v.<br>Epic Games, Inc., a North Carolina corporation; and Does 1 through 10, inclusive,<br><br>Defendants. | CASE NO. 2:22-cv-02063-SVW-MRWx<br><br>**DECLARATION OF DAVID L. HECHT IN SUPPORT OF PLAINTIFF KYLE HANAGAMI'S OPPOSITION TO DEFENDANT EPIC GAMES, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND SPECIAL MOTION TO STRIKE (ANTI-SLAPP), OR IN THE ALTERNATIVE, MOTION TO STRIKE CERTAIN FORMS OF RELIEF**<br><br>Complaint Filed: March 29, 2022<br><br>Judge:             Stephen V. Wilson<br>Hearing Date:  June 27, 2022<br>Time:             1:30pm<br>Courtroom:     10A |

- 1 -

I, David L. Hecht, declares as follows:

1.     I am a partner at the law firm Hecht Partners LLP and am counsel for Plaintiff Kyle Hanagami ("Plaintiff" or "Hanagami").  I am licensed to practice law in the State of New York and am admitted pro hac vice to practice before this Court in this matter.  I make this declaration based upon personal knowledge.  If called to testify as a witness, I could and would testify competently to the same.  I submit this declaration in support of Plaintiff Kyle Hanagami's Opposition to Defendant Epic Games, Inc.'s ("Epic") Motion to Dismiss, ECF 30 ("MTD").

2.     Lodged with the Court as Exhibit 1 is a true and correct copy of a Youtube video titled "It's Complicated Emote | Fortnite Battle Royale", that depicts the It's Complicated Emote being performed by an avatar, as it appeared in the Fortnite Item Shop. The video was captured from the following address: https://www.youtube.com/watch?v=ye8BYIzPxgQ.

3.     Lodged with the Court as Exhibit 2 is a true and correct copy of a Youtube video titled "Fortnite Infringement of Kyle Hanagami Choreography", that shows a side-by-side comparison of the Fortnite It's Complicated emote and Copyright Registration Number PA 2-277-839, which covers the "How Long Choreography".     The     video     is     also     available     at: https://www.youtube.com/watch?v=vXYDr9o_FJY.


I declare under penalty of perjury that the foregoing is true and correct.


 Dated: June 6, 2022                          Respectfully Submitted,

                                             HECHT PARTNERS LLP


                                             By: */s/ David L. Hecht*
                                             *Attorney for Plaintiff Kyle Hanagami*


- 2 -

1

**CERTIFICATE OF SERVICE**

2

    I hereby certify that I have electronically filed the forgoing **DECLARATION**

3

**OF DAVID L. HECHT IN SUPPORT OF PLAINTIFF KYLE HANAGAMI'S**

4

**OPPOSITION TO DEFENDANT EPIC GAMES, INC.'S MOTION TO**

5

**DISMISS PLAINTIFF'S COMPLAINT AND SPECIAL MOTION TO**

6

**STRIKE (ANTI-SLAPP), OR IN THE ALTERNATIVE, MOTION TO**

7

**STRIKE CERTAIN FORMS OF RELIEF** with the Clerk of the Court by using

8

the CM/ECF system, which will automatically send a notice of electronic filing to

9

all persons registered with ECF.

10

11

  Dated: June 6, 2022          By: */s/ David L. Hecht*

12

                           David L. Hecht

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 3 -

# EXHIBIT 1

# Video Lodged With The Clerk's Office

# EXHIBIT 2

# Video Lodged With The Clerk's Office

1   Dale M. Cendali (admitted *pro hac vice*)
    dale.cendali@kirkland.com
2   Joshua L. Simmons (admitted *pro hac vice*)
    joshua.simmons@kirkland.com
3   KIRKLAND & ELLIS LLP
    601 Lexington Avenue
4   New York, NY 10022
    Telephone: (212) 446-4800
5   Facsimile: (212) 446-4900

6   Yungmoon Chang (SBN 311673)
    yungmoon.chang@kirkland.com
7   KIRKLAND & ELLIS LLP
    2049 Century Park East
8   Los Angeles, CA 90067
    Telephone: (310) 552-4200
9   Facsimile: (310) 552-5900

10  *Attorneys for Defendant Epic Games,*
    *Inc.*

11

12                    **UNITED STATES DISTRICT COURT**

13                    **CENTRAL DISTRICT OF CALIFORNIA**

14
    KYLE HANAGAMI, an individual,          CASE NO. 2:22-cv-02063-SVW-
15                                          MRWx
            Plaintiff,
16                                          **DEFENDANT EPIC GAMES,**
        v.                                  **INC.'S MEMORANDUM OF**
17                                          **LAW IN SUPPORT OF ITS**
    EPIC GAMES, INC., a North               **MOTION TO DISMISS**
18  Carolina Corporation, et al.,           **PLAINTIFF'S COMPLAINT**
                                            **AND SPECIAL MOTION TO**
19          Defendants.                     **STRIKE (ANTI-SLAPP), OR IN**
                                            **THE ALTERNATIVE, MOTION**
20                                          **TO STRIKE CERTAIN FORMS**
                                            **OF RELIEF**
21
                                            Complaint Filed Date: March 29,
22                                          2022

23                                          Judge:        Stephen V. Wilson
                                            Hearing Date: June 27, 2022
24                                          Time:         1:30pm
                                            Courtroom:    10A
25

26

27

28

**ER_081**

1

## TABLE OF CONTENTS

2
**Page**

3  I.     INTRODUCTION ............................................................................ 1

4
5  II.    STATEMENT OF ALLEGED FACTS ...................................... 4

6  III.   ARGUMENT ................................................................................ 7

7         A.    Legal Standard ................................................................... 7

8         B.    Plaintiff's Copyright Claims Fail as There Is No Substantial
            Similarity Between the Works as a Matter of Law .............................. 8

9
10             1.    The Works as a Whole Are Not Substantially Similar ............ 10

11             2.    The Steps Alone Are Not Protectable ....................................... 11

12             3.    The Steps Are Not Substantially Similar to the Emote ............ 18

13         C.    The Copyright Act Preempts Plaintiff's Unfair Competition Claim .. 19

14         D.    Certain of Plaintiff's Requested Remedies Are Unavailable ............. 21

15
16  IV.   CONCLUSION ........................................................................... 23

17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aaron Basha Corp. v. Felix B. Vollman, Inc.*,
   88 F. Supp. 2d 226 (S.D.N.Y. 2000) ................................................. 13

*Abdullah v. Walt Disney Co.*,
   No. 2:15 Civ. 09581, 2016 WL 5380930 (C.D. Cal. Mar. 14, 2016) ................. 9

*Apple Comput., Inc. v. Microsoft Corp.*,
   35 F.3d 1435 (9th Cir. 1994) ................................................. 10, 18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................. 7

*Baez v. Pension Consulting Alliance, Inc.*,
   No. 2:17 Civ. 01938, 2017 WL 9500979 (C.D. Cal. July 20, 2017) ............. 8, 19

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................. 7

*Beyond Blond Prods., LLC v. Heldman*,
   479 F. Supp. 3d 874 (C.D. Cal. 2020) .............................................. 18

*Bibbero Sys., Inc. v. Colwell Sys., Inc.*,
   893 F.2d 1104 (9th Cir. 1990) ..................................................... 13

*Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC*,
   803 F.3d 1032 (9th Cir. 2015) ................................................. 11, 17

*Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC*,
   No. 2:11 Civ. 05506, 2012 WL 6548505 (C.D. Cal. Dec. 14, 2012) ........... 17, 18

*Blehm v. Jacobs*,
   702 F.3d 1193 (10th Cir. 2012) .................................................... 11

*Boost Beauty, LLC v. Woo Signatures, LLC*,
   No. 2:18 Civ. 02960, 2018 WL 5099258 (C.D. Cal. Oct. 15, 2018) ............... 19

*Brantley v. Epic Games, Inc.*,
   463 F. Supp. 3d 616 (D. Md. 2020) ....................................... 3, 14, 20, 21

*Brown v. Entm't Merchants Ass'n*,
   564 U.S. 786 (2011) ................................................................................ 19

*Cabell v. Sony Pictures Entm't, Inc.*,
   425 F. App'x 42 (2d Cir. 2011) ............................................................. 11

*Century Tile, Inc. v. Hirsch Glass Co.*,
   467 F. App'x 651 (9th Cir. 2012) .......................................................... 18

*Christianson v. West Pub. Co.*,
   149 F.2d 202 (9th Cir. 1945) ........................................................... 9, 18

*CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.*,
   97 F.3d 1504 (1st Cir. 1996) .......................................................... 13, 17

*Cusano v. Klein*,
   473 F. App'x 803 (9th Cir. 2012) .................................................. 8, 19, 20

*DBC of N.Y., Inc. v. Merit Diamond Corp.*,
   768 F. Supp. 414 (S.D.N.Y. 1991) ....................................................... 14

*Dean v. Kaiser Found. Health Plan, Inc.*,
   562 F. Supp. 3d 928 (C.D. Cal. 2022) ................................................... 19

*Derek Andrew, Inc. v. Poof Apparel Corp.*,
   528 F.3d 696 (9th Cir. 2008) .............................................................. 22

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*,
   547 F.3d 1095 (9th Cir. 2008) ............................................................... 8

*Entous v. Viacom Int'l, Inc.*,
   151 F. Supp. 2d 1150 (C.D. Cal. 2001) ................................................. 20

*Express, LLC v. Forever 21, Inc.*,
   No. 09 Civ. 04514, 2010 WL 3489308 (C.D. Cal. Sept. 2, 2010) ................. 13

*Feist Pubs., Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991) ............................................................................ 8

*Folkens v. Wyland Worldwide, LLC*,
   882 F.3d 768 (9th Cir. 2018) .............................................................. 11

*Garcia v. Google, Inc.*,
   786 F.3d 733 (9th Cir. 2015) (en banc) ............................................... 17

*Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*,
  742 F.3d 414 (9th Cir. 2014) ................................................................... 8, 20

*Hall v. Swift*,
  No. 17 Civ. 06882, 2018 WL 2317548 (C.D. Cal. Feb. 13, 2018) ............... 7, 18

*Horgan v. Macmillan, Inc.*,
  789 F.2d 157 (2d Cir. 1986) ................................................................... 14, 15

*Inhale, Inc. v. Starbuzz Tobacco, Inc.*,
  755 F.3d 1038 (9th Cir. 2014) ..................................................................... 17

*Int'l Biotical Corp. v. Associated Mills, Inc.*,
  239 F. Supp. 511 (N.D. Ill. 1964) ............................................................... 12

*Kates v. Crocker Nat'l Bank*,
  776 F.2d 1396 (9th Cir. 1985) ..................................................................... 22

*Laws v. Sony Music Entm't, Inc.*,
  448 F.3d 1134 (9th Cir. 2006) ..................................................................... 20

*Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co.*,
  170 F. Supp. 3d 1249 (C.D. Cal. 2016) ................................................... 20, 21

*Lorenzana v. S. Am. Rests. Corp.*,
  799 F.3d 31 (1st Cir. 2015) ......................................................................... 13

*Maloney v. T3Media, Inc.*,
  853 F.3d 1004 (9th Cir. 2017) ..................................................................... 21

*Masterson Mktg., Inc. v. KSL Recreation Corp.*,
  495 F. Supp. 2d 1044 (S.D. Cal. 2007) ....................................................... 18

*Mattel, Inc. v. Azrak-Hamway Int'l, Inc.*,
  724 F.2d 357 (2d Cir. 1983) ....................................................................... 11

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*,
  190 F.3d 963 (9th Cir. 1999) ....................................................................... 19

*Newton v. Diamond*,
  388 F.3d 1189 (9th Cir. 2004) ..................................................................... 10

*Ojjeh v. Brown*,
  43 Cal. App. 5th 1027 (2019) ....................................................................... 19

*Pellegrino v. Epic Games, Inc.*,
  451 F. Supp. 3d 373 (E.D. Pa. 2020)............................................................3, 20

*Pelt v. CBS, Inc.*,
  No. 92 Civ. 06532, 1993 WL 659605 (C.D. Cal. Oct. 25, 1993) .....................17

*Puckett v. Hernandez*,
  No. 2:16 Civ. 02199, 2016 WL 7647555 (C.D. Cal. Dec. 21, 2016)............9, 23

*Reece v. Island Treasures Art Gallery, Inc.*,
  468 F. Supp. 2d 1197 (D. Haw. 2006)........................................................11, 12

*Reflex Media, Inc. v. Pilgrim Studios, Inc.*,
  No. 2:18 Civ. 02260, 2018 WL 6566561 (C.D. Cal. Aug. 27, 2018) .................9

*Rentmeester v. Nike, Inc.*,
  883 F.3d 1111 (9th Cir. 2018) ...........................................................8, 9, 11, 12

*Rosen v. Netfronts, Inc.*,
  No. 12 Civ. 00658, 2013 WL 3467205 (C.D. Cal. July 9, 2013).....................22

*Saregama India Ltd. v. Young*,
  No. 02 Civ. 09856, 2003 WL 25769784 (C.D. Cal. Mar. 11, 2003).................22

*See v. Durang*,
  711 F.2d 141 (9th Cir. 1983) ...........................................................................10

*Skinder-Strauss Assocs. v. Mass. Continuing Legal Educ., Inc.*,
  914 F. Supp. 665 (D. Mass. 1995)....................................................................13

*Southco, Inc. v. Kanebridge Corp.*,
  390 F.3d 276 (3d Cir. 2004) .......................................................................13, 17

*Thomas v. Walt Disney Co.*,
  337 F. App'x 694 (9th Cir. 2009).......................................................................9

*Trenton v. Infinity Broad. Corp.*,
  865 F. Supp. 1416 (C.D. Cal. 1994) .................................................................17

*White v. Twentieth Century Fox Corp.*,
  572 F. App'x 475 (9th Cir. 2014).......................................................................9

*Wild v. NBC Univ.*,
  513 F. App'x 640 (9th Cir. 2013)..................................................................9, 10

*Wood v. Midland Credit Mgmt., Inc.*,
    No. 05 Civ. 03881, 2005 WL 3159639 (C.D. Cal. July 29, 2005)....................23

*Zekkariyas v. Univ. Music-MGB Songs*,
    No. 11 Civ. 02912, 2011 WL 13220325 (C.D. Cal. June 6, 2011)....................17

*Zhang v. Heineken N.V.*,
    No. 08 Civ. 06506, 2010 WL 11596643 (C.D. Cal. Sept. 29, 2010)...........13, 17

*Zindel v. Fox Searchlight Pictures, Inc.*,
    No. 18 Civ. 01435, 2018 WL 3601842 (C.D. Cal. July 23, 2018)......................8

**Statutes**

17 U.S.C. § 102(a) ...............................................................................14, 20

17 U.S.C. § 102(b) ...............................................................................11, 17

17 U.S.C. § 301(a) .....................................................................................20

17 U.S.C. § 412............................................................................................4, 22

Cal. Code Civ. P. § 425.16 ...............................................................1, 8, 19

California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ...........7, 23

**Rules**

Fed. R. Civ. P. 5(a) .......................................................................................1

Fed. R. Civ. P. 12(b)(6) ...................................................................*passim*

Fed. R. Civ. P. 12(f)......................................................................................1

**U.S. Copyright Office Refusal Letters**

Letter from U.S. Copyright Office re: The Dance by Alfonso Ribeiro -
    Variation B (Jan. 22, 2019) ..............................................................15

Letter from U.S. Copyright Office re: The Floss (Jan. 22, 2019) ..............12, 13, 15

Letter from U.S. Copyright Office re: Milly Rock Dance (Dec. 19, 2018) ............16

Letter from U.S. Copyright Office re: Second Request for Reconsideration for
    Refusal to Register Five-Petal Flower (July 14, 2016) .......................16

**Other Authorities**

37 C.F.R. § 202.1 ............................................................... 15, 17

Copyright Office Compendium § 313 ........................................ 13

Copyright Office Compendium § 805 ................................ 12, 14, 15, 17

H.R. Rep. 94-1476 ............................................................... 14

1    Defendant Epic Games, Inc. ("Epic") submits this memorandum in support of
2    its motion to dismiss Plaintiff Kyle Hanagami's ("Plaintiff") Complaint, Dkt. 1,
3    pursuant to Federal Rule of Civil Procedure 12(b)(6) and special motion to strike
4    pursuant to California Code of Civil Procedure § 425.16, or in the alternative, motion
5    to strike pursuant to Federal Rule of Civil Procedure 12(f) certain forms of relief
6    sought by Plaintiff.

7    **I.    INTRODUCTION**

8    Imagine a ballet without a *grand jeté*, a yoga class without a downward-dog
9    pose, or the film *Dirty Dancing* without Patrick Swayze lifting Jennifer Grey over his
10   head.  To ensure that new creative works can use these building blocks of expression,
11   Congress made clear that, although copyright law protects choreography, it does not
12   protect individual dance steps or simple routines.  Likewise, the Copyright Act
13   ensures that a litigant cannot use state law to create liability for copying works that are
14   within the subject matter of copyright (whether protected by it or not).  These
15   protections exist for good reason as artists are often inspired by, and weave together,
16   dance steps into their own choreography.

17   Through this lawsuit, Plaintiff seeks to change these fundamental principles,
18   imposing liability where it has never existed before.[1]  As discussed below, this marked
19   shift is foreclosed by the Copyright Act, the U.S. Copyright Office's regulations, and
20   Ninth Circuit case law, all of which make clear that performing or incorporating into a
21   new work a dance step or simple routine does not make someone a copyright

22   _____

23   [1]  This is not the first time that Plaintiff's counsel has attempted to convince a court
24   to change copyright law in this way.  In 2018 and 2019, Plaintiff's counsel filed
     eight lawsuits in this District alleging that dance steps were copied in video games,
25   and attempting to create the "outcry on social media" that Plaintiff references in his
     Complaint.  After the defendants in those cases, including Epic, moved to dismiss,
26   including on the same grounds as this motion to dismiss and that the Copyright
     Office had refused to register the dance steps, the plaintiffs voluntarily dismissed
27   their complaints.  Moreover, as discussed below, when similar lawsuits were filed
     in different courts asserting state law claims, those courts granted motions to
28   dismiss those claims on preemption grounds.

EPIC'S MEMORANDUM ISO MOTION        1    Case No. 2:22-cv-02063-SVW-MRWx
TO DISMISS PLAINTIFF'S COMPLAINT

infringer.  Plaintiff's request to alter that approach, subjecting anyone who publicly performs a few dance steps to liability for copyright infringement, should be rejected and all claims in his Complaint dismissed.

With regard to his copyright claims (Counts I and II), Plaintiff registered with the Copyright Office a ***five-minute long***, real-world dance consisting of numerous dancers performing different steps strung together.  The Copyright Office registered the work as a whole, but in this litigation, Plaintiff cherry-picks ***four steps*** (that take two seconds to perform) (the "Steps") and asserts they have been infringed by *Fortnite*.  *Fortnite* is a massive, complex virtual world where people from across the world connect, meet, play, talk, compete, dance and attend concerts and cultural events.  Specifically, Plaintiff focuses his attention on four out of sixteen steps in one of *Fortnite*'s nearly 500 emotes, called "It's Complicated" (the "Emote").

Plaintiff's claim fails as a matter of law because the works—the five-minute dance that Plaintiff registered, on the one hand, and *Fortnite*, on the other—are not substantially similar.  Indeed, although Plaintiff asserts that *Fortnite* infringes his copyrights, nowhere in the Complaint does he assert, nor could he, that the works are similar as a whole: in contrast to Plaintiff's five-minute dance performed by real dancers, *Fortnite* involves a highly creative, fantasy world, containing characters and settings that have nothing to do with Plaintiff's Steps.  The Emote is only one tiny part of that world, and the accused steps are only a minority of its steps.  Plaintiff cannot avoid comparing the works as a whole and, when that analysis is conducted, it is clear that the registered work is not substantially similar to *Fortnite*, requiring dismissal of Plaintiff's claim as a matter of law.

In addition to the works as a whole not being substantially similar, Plaintiff cannot show substantial similarity between his work and the Emote as a matter of law.  As an initial matter, any copyright that Plaintiff may hold in the five-minute registered work does not extend to the two seconds of Steps in isolation.  The Steps are merely building blocks of choreographic expression, which are not protectable—just as words

and short phrases, geometric shapes, and colors are not protectable in written or printed works—as protecting them would prevent others from creating new works.  In the dance context, this legal concept is apparent from (a) the legislative history of the Copyright Act, which expressly states that "simple [dance] routines" are not copyrightable; (b) the Copyright Office's regulations, which do not permit individual dance steps or simple routines to be registered for copyright protection; and (c) Ninth Circuit case law holding that such elements are not protectable, but rather should be free for all to use.  Thus, as a matter of law, the Steps must be filtered out and cannot be considered in the substantial similarity analysis, leaving nothing to compare to the Emote.

Even if the Steps were protectable (they are not), the choreography and the Emote have marked differences, as is reflected by Plaintiff's allegations (or lack thereof).  On the one hand, Plaintiff does not allege that any of the remaining steps of his choreography were copied; and on the other hand, the majority of the Emote contains steps that do not appear anywhere in Plaintiff's work.  As even the Emote alone is not substantially similar to Plaintiff's registered work, Plaintiff's copyright claims should be dismissed for this reason as well.

Plaintiff also asserts an unfair competition claim (Count III), in which he attempts to recast the same underlying facts as a state law cause of action.  The Copyright Act, however, explicitly prohibits plaintiffs from achieving through state law that which is foreclosed by black-letter copyright law principles: claims that involve copying of material that is within the subject matter of copyright are preempted.  Indeed, in a markedly similar case where Epic was accused of copying a different dance step, the court dismissed the plaintiff's unfair competition claim as preempted, concluding that (a) the dance step, whether copyrightable or not, was within the subject matter of copyright; and (b) the claim was premised on allegations of copying.  *Brantley v. Epic Games, Inc.*, 463 F. Supp. 3d 616, 624, 627 (D. Md. 2020); *see also Pellegrino v. Epic Games, Inc.*, 451 F. Supp. 3d 373, 387–88 (E.D. Pa.

EPIC'S MEMORANDUM ISO MOTION        3     Case No. 2:22-cv-02063-SVW-MRWx
TO DISMISS PLAINTIFF'S COMPLAINT

2020) (dismissing as preempted state law claims premised on copying allegations, as movement was within the subject matter of copyright).  Moreover, such use of California state law is prohibited by its anti-SLAPP statute, as *Fortnite* is an expressive work.  Thus, Plaintiff bears the burden of proving a probability of prevailing on his California law claim to avoid chilling the valid exercise of Epic's free speech rights.  As he cannot do so, the claim should be dismissed and Epic's anti-SLAPP motion granted.

Finally, although the Court need not reach this issue if it dismisses the Complaint, Plaintiff's overreaching also extends to his fees and damages theories. Plaintiff's request for attorney's fees should be stricken because 17 U.S.C. § 412 requires Plaintiff to have registered his copyright **before** the alleged infringement began.  Here, there can be no dispute that he registered his copyright **after** the alleged infringement.  Likewise, Plaintiff's requests for punitive and exemplary damages should be stricken because they are not available as remedies under the Copyright Act or California's Unfair Competition Law.  Accordingly, Epic respectfully requests that the Court grant its motion in its entirety and, as Plaintiff cannot plead around these defects, do so with prejudice.

## II.   STATEMENT OF ALLEGED FACTS

On November 11, 2017, Plaintiff published the YouTube video titled "CHARLIE - PUTH - How Long | Kyle Hanagami Choreography" ("How Long Video").[2]  Dkt. 1 (Compl.) ¶ 16.  The video contains a five-minute dance performed to the song "How Long," by Charlie Puth.  As can be observed by a copy of the video, it contains about 520 counts of music, broken down into 104 counts of music for each of five different groups of dancers.  Declaration of Dale M. Cendali, Esq., dated May 27,

---

[2]   Although Epic disputes the veracity of Plaintiff's allegations, as required by the caselaw, it assumes they are true for the limited purpose of this motion.

2022 ("Cendali Decl.") Ex. A (deposit copy of How Long Video).[3]  As shown below, the dancers perform a variety of different movements including slides, jumps, leg lifts, spins, waves, rolls, and freestyle choreography.

  

 

*Id.*  Of the five-minute long video, the Steps take about two seconds to perform.  *Id.* The lower half of the body simply repeats the same movement: the right foot kicks forward, then touches to the side as the hips twist counterclockwise.  The upper body performs four movements: a shoulder touch; a head pull; a bent-arm, finger point; and an arm opening.

Plaintiff alleges that Epic appropriated the Steps in *Fortnite*.  Compl. ¶ 2. *Fortnite* features an extensive world, where players may explore, build, and destroy, and also battle against each other via player-to-player combat.  *See id.* ¶¶ 4, 20–22. Players choose to represent themselves by picking an avatar and customizing it.  *Id.* ¶ 22.  *Fortnite*'s avatars feature a variety of human features, non-human features (such as a banana outfit or animal head), outfits, and weapons, as shown below.

---

[3]  Exhibits A and B to the Cendali Declaration should be considered by the Court for the reasons set forth in Epic's concurrently-filed Request for Judicial Notice.



Cendali Decl. ¶ 3; Compl. ¶ 22.  Players can customize their in-game avatars by using new characters, pickaxes, gliders, clothes, and emotes.  Compl. ¶ 22.  Emotes are animations players use to, among other things, celebrate a victory in a battle royale game or dance while attending concerts.  Compl. ¶¶ 22–30.

On August 25, 2020, Epic released Chapter 2, Season 3 of *Fortnite*, which includes the Emote.  *Id.* ¶ 38.  The Emote consists of 16 counts of movement, only four of which are accused of being copied from Plaintiff.  The Emote is accompanied by an original soundtrack without lyrics, not the "How Long" by Charlie Puth song to which the registered work is performed in Plaintiff's deposit copy.  Some sample images of the Emote being performed are included below:

  

  

Cendali Decl. Ex. B.

On February 18, 2021, six months after Epic released the Emote, Plaintiff applied for a copyright registration on the choreography contained in the How Long Video. Compl. ¶ 56, Ex. A (Copyright Registration No. PA 2-277-839), at 2. The effective date of the registration is February 20, 2021. Compl. Ex. A, at 3. According to the registration certificate, Plaintiff's copyright claim was limited to the choreography contained in the How Long Video, not the music or audiovisual elements. *Id.*

On March 29, 2022, Plaintiff filed this case. Specifically, Plaintiff asserts three causes of action: (1) Direct infringement of copyright; (2) Contributory infringement of copyright; and (3) Unfair competition under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200. *Id.*

## III.   ARGUMENT

### A.   Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The Court must disregard allegations that are legal conclusions, even when disguised as facts." *Hall v. Swift*, No. 17 Civ. 06882, 2018

WL 2317548, at *3 (C.D. Cal. Feb. 13, 2018).  It, however, may consider works referenced in the Complaint.  *See Zindel v. Fox Searchlight Pictures, Inc.*, No. 18 Civ. 01435, 2018 WL 3601842, at *3 (C.D. Cal. July 23, 2018).

California's anti-SLAPP statute subjects to a special motion to strike any "cause of action against a person arising from any act of that person in furtherance of the person's right of . . . free speech . . . in connection with a public issue."  Cal. Code Civ. P. § 425.16(b)(1).  Anti-SLAPP motions require a two-part analysis.  ***First***, the court determines whether "the challenged cause of action arises from activity protected under the statute."  *Baez v. Pension Consulting Alliance, Inc.*, No. 2:17 Civ. 01938, 2017 WL 9500979, at *2 (C.D. Cal. July 20, 2017).  "California courts have interpreted this piece of the defendant's threshold showing rather loosely . . . and have held that a court must generally presume the validity of the claimed constitutional right in the first step of the anti- SLAPP analysis."  *Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 422 (9th Cir. 2014) (internal quotation marks omitted).[4]  ***Second***, the burden shifts to the plaintiff to "demonstrate[] a probability of prevailing on the merits of its" claims.  *GLAAD*, 742 F.3d at 425.

## B.   Plaintiff's Copyright Claims Fail as There Is No Substantial Similarity Between the Works as a Matter of Law

Plaintiff's copyright claims (Counts I and II) should be dismissed as a matter of law.  To state a claim of copyright infringement, Plaintiff must allege: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  To assess the second element, courts look to whether the works are "substantially similar" by applying the two-part "extrinsic" and "intrinsic" tests.  *Rentmeester v. Nike, Inc.*,

---

[4]   Courts routinely find creative works, like video games, satisfy step one.  *See Cusano v. Klein*, 473 F. App'x 803, 804 (9th Cir. 2012) (collecting cases finding first prong satisfied by television programs and video games); *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008) (*Grand Theft Auto: San Andreas* video game protected).

883 F.3d 1111, 1118 (9th Cir. 2018).  The extrinsic test requires courts to "'filter out' the unprotectable elements of the plaintiff's work" and then compare the "protectable elements that remain" to "corresponding elements of the defendant's work to assess similarities in the objective details of the works." *Id.*  "The intrinsic test requires a more holistic, subjective comparison of the works to determine whether they are substantially similar in 'total concept and feel.'" *Id.*  If either test fails, there is no substantial similarity.

"When the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss." *Christianson v. West Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945).  A motion to dismiss should be granted where, after comparing the copyrighted and accused works, the ***extrinsic test*** is not satisfied.  *See id.*; *Wild v. NBC Univ.*, 513 F. App'x 640, 642 (9th Cir. 2013) (affirming dismissal because "Plaintiff cannot satisfy the extrinsic test"); *Puckett v. Hernandez*, No. 2:16 Civ. 02199, 2016 WL 7647555 (C.D. Cal. Dec. 21, 2016) (Wilson, J.) (no substantial similarity despite plaintiff pointing to common phrases between his song and Bruno Mars' song); *Abdullah v. Walt Disney Co.*, No. 2:15 Civ. 09581, 2016 WL 5380930 (C.D. Cal. Mar. 14, 2016) (Wilson, J.) (denying motion for reconsideration of dismissal based on a finding of no substantial similarities in plot, sequence, theme, dialogue); *Reflex Media, Inc. v. Pilgrim Studios, Inc.*, No. 2:18 Civ. 02260, 2018 WL 6566561 (C.D. Cal. Aug. 27, 2018) (dismissing copyright claims with prejudice because of lack of substantial similarity between two shows with identical titles and similar plots, locations, and characters).  Indeed, the Ninth Circuit routinely affirms such dismissals. *See, e.g.*, *Rentmeester*, 883 F.3d at 1121 (affirming dismissal where photographs were not substantially similar despite similar subject matter and pose); *White v. Twentieth Century Fox Corp.*, 572 F. App'x 475, 477 (9th Cir. 2014) (affirming dismissal where "most of the alleged similarities [between films] are not protectable"); *Thomas v. Walt*

1   *Disney Co.*, 337 F. App'x 694, 694 (9th Cir. 2009) (affirming dismissal because
2   "literary work was not 'substantially similar' to defendants' animated movie").

3           1.    <u>The Works as a Whole Are Not Substantially Similar</u>

4        When this extrinsic analysis is conducted, the Ninth Circuit requires the works
5   to be "considered as a whole." *Apple Comput., Inc. v. Microsoft Corp.*, 35 F.3d 1435,
6   1443 (9th Cir. 1994); *See v. Durang*, 711 F.2d 141, 144 (9th Cir. 1983) (analyzing
7   works "as a whole" to consider similarities "in context").

8        Here, however, Plaintiff does not even attempt to claim that his registered work
9   as a whole is substantially similar to *Fortnite*.  Nor could he.  *Fortnite* involves a
10   highly creative fantasy world in which players can explore, build, destroy, and battle
11   each other.  Players can select emotes to reflect emotion in the game, and the Emote is
12   one of nearly five hundred available.  By contrast, Plaintiff's registered work contains
13   steps performed to "How Long," by Charlie Puth, by groups of dancers in a dance
14   studio in Los Angeles, California.  Plaintiff tacitly admits the works' dissimilarity as
15   nowhere in the Complaint does he suggest that (a) any other part of the five-minute
16   choreography he registered appears in *Fortnite*, or (b) any part of *Fortnite* is similar to
17   the work other than the Emote—not *Fortnite*'s battle-royale format, characters,
18   setting, theme, or mood.  Thus, as a matter of law, Plaintiff's registered work is not
19   substantially similar to *Fortnite*.  *See Wild*, 513 F. App'x at 641 (no substantial
20   similarity due to differences in "plot and storylines, their characters, the dialogue, the
21   setting and themes, and the mood").

22        Instead, the Complaint's fundamental flaw is that, whatever copyright Plaintiff
23   may have in his five minutes of choreography, he asserts only the Steps were copied.
24   Given the enormity of *Fortnite* as a whole, copying steps that take two seconds to
25   perform does not make the works substantially similar.  *See Newton v. Diamond*, 388
26   F.3d 1189, 1195–96 (9th Cir. 2004) (six-second sampling consisting of "roughly two
27   percent of the four-and-a-half-minute" recording).  Accordingly, the copyright claims
28   should be dismissed for this reason alone

2.      The Steps Alone Are Not Protectable

In addition to failing to establish substantial similarity when the works as a whole are compared, Plaintiff cannot state a claim as to the Emote in isolation.  As an initial matter, although Plaintiff registered the choreography in the five-minute How Long Video, as he only claims that the Steps are copied, he must independently show that they are protectable.  He cannot do so in light of two legal principles.

**First**, the Copyright Act makes clear that, even when a work is copyrightable, that copyright does not extend to unprotectable elements.  *See* 17 U.S.C. § 102(b) ("In no case does copyright protection . . . extend to any idea . . . .").  That principle has particular importance in works involving movements.  For example, in *Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC*, the plaintiff had registered a book, but the Ninth Circuit held that its copyright did not extend to his sequence of yoga steps.  *See* 803 F.3d 1032, 1040 (9th Cir. 2015).  Similarly, in *Rentmeester*, although the plaintiff may have held a copyright in his photograph, the Ninth Circuit affirmed a Rule 12(b)(6) dismissal due to a lack of substantial similarity, holding that the plaintiff did not own the "general 'idea' or 'concept' . . . of [Michael] Jordan in a leaping, grand jeté-inspired" movement that appeared in the work.  *Id.* at 1121 (movement at issue shown below); *see also Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 774 (9th Cir. 2018) (dolphins' pose in artistic work unprotectable).  And in *Reece v. Island Treasures Art Gallery, Inc.*, despite the fact that the parties' works showed the same dance movement (shown below), the court held that the "idea of a hula dancer performing an 'ike movement in the hula kahiko style from the noho position is not protected."  468 F. Supp. 2d 1197, 1206 (D. Haw. 2006) (works not substantially similar).[5]

---

[5]    *See also Blehm v. Jacobs*, 702 F.3d 1193, 1201 (10th Cir. 2012) ("a copyright owner has no monopoly over the idea of a muscular doll in a standard pose"); *Cabell v. Sony Pictures Entm't, Inc.*, 425 F. App'x 42 (2d Cir. 2011) ("brandishing a blow dryer as a weapon" and "fighting poses" were "unprotectable ideas"); *Mattel, Inc. v. Azrak-Hamway Int'l, Inc.*, 724 F.2d 357, 360 (2d Cir. 1983)

   

***Rentmeester* Movement**                    ***Reece* Movement**[6]
883 F.3d at 1126

Likewise, when the Copyright Office registers a choreographic work, that registration does not apply to individual dance steps or simple routines within the work.  U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 805.5(A) (3d ed. 2017).  For example, the Copyright Office refused to register the "Floss" dance steps, which consisted of swaying the hips side-to-side while bending the knees on alternating sides and swinging the arms while keeping the wrists in a straight line, first at a slower tempo and then at a very fast tempo.  Dkt. 35-7, at 7 (Copyright Office refusal letter), *Redd v. Epic Games, Inc.*, No. 2:18 Civ. 10444 (C.D. Cal.) (also filed herewith as Cendali Decl. Ex. D).  When those steps later were incorporated into a much longer work, the Copyright Office did register the work.  Given the prior attempt to register the "Floss," however, the Copyright Office made clear in the registration certificate that the work was "registered based on original selection, coordination, and/or arrangement of steps or movements" and that the "[r]egistration does not extend to individual dance steps."  Dkt. 35-4, at 2 (Copyright

_____

("Though the dolls' bodies are very similar, nearly all of the similarity can be attributed to the fact that both are artist's renderings of the same unprotectable idea—a superhuman muscleman crouching in what since Neanderthal times has been a traditional fighting pose."); *Int'l Biotical Corp. v. Associated Mills, Inc.*, 239 F. Supp. 511, 514 (N.D. Ill. 1964) (various poses were unprotectable ideas).

[6]  No. 06 Civ. 00489 (D. Haw.) (Dkt. 63-14, Ex. G) (Dkt. 63-15, Ex. H) (also filed herewith as Cendali Decl. Ex. C).

EPIC'S MEMORANDUM ISO MOTION          12   Case No. 2:22-cv-02063-SVW-MRWx
TO DISMISS PLAINTIFF'S COMPLAINT

Office public catalog entry for "Flossin Dance"), *Redd v. Epic Games, Inc.*, No. 2:18 Civ. 10444 (C.D. Cal.) (also filed herewith as Cendali Decl. Ex. E).

Here, whatever copyright may exist in the registered choreography as a whole, the Steps standing alone must qualify as protectable to be considered in the substantial similarity analysis.

***Second***, it is black-letter copyright law that individual elements of works are not protectable where they involve the building blocks of creative expression that, if protected, would inhibit the creation of new works.  For example, "words and short phrases" are not protectable.  *Zhang v. Heineken N.V.*, No. 08 Civ. 06506, 2010 WL 11596643, at *4 (C.D. Cal. Sept. 29, 2010).  This is because "even if the word or short phrase is novel or distinctive or lends itself to a play on words," it contains "a *de minimis* amount of authorship."  Compendium § 313.4(C).  Similarly, "variations of long-established Chinese word characters" were not protectable as doing so would "effectively give [plaintiff] a monopoly on renditions of these five Chinese characters."  *Zhang*, 2010 WL 11596643, at *5 (dismissal on the pleadings).  "[B]lank forms which do not convey information are not copyrightable" as they are where information is recorded, and do not convey information themselves.  *Bibbero Sys., Inc. v. Colwell Sys., Inc.*, 893 F.2d 1104, 1106 (9th Cir. 1990).  And "mere changes in color are generally not subject to copyright protection."  *Express, LLC v. Forever 21, Inc.*, No. 09 Civ. 04514, 2010 WL 3489308, at *6 (C.D. Cal. Sept. 2, 2010).[7]

---

[7] *See also Lorenzana v. S. Am. Rests. Corp.*, 799 F.3d 31, 34 (1st Cir. 2015) (affirming dismissal as recipe instructions and name not protectable); *Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276, 287 (3d Cir. 2004) ("part numbers" not protectable); *CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.*, 97 F.3d 1504, 1520 (1st Cir. 1996) ("ordinary employment phraseology" not protectable); *Aaron Basha Corp. v. Felix B. Vollman, Inc.*, 88 F. Supp. 2d 226, 230 (S.D.N.Y. 2000) (not protectable to use "decorative features . . . commonly used throughout the jewelry business," such as "precious metals, gemstones, and enamel"); *Skinder-Strauss Assocs. v. Mass. Continuing Legal Educ., Inc.*, 914 F. Supp. 665, 674 (D. Mass. 1995) ("a standard calendar, a list of important holidays, a map of Massachusetts, a national map including time zones, and a date calculation chart"

EPIC'S MEMORANDUM ISO MOTION        13    Case No. 2:22-cv-02063-SVW-MRWx
TO DISMISS PLAINTIFF'S COMPLAINT

1   This principle applies with equal force to the field of dance.  The Copyright Act

2   protects works of authorship, including "choreographic works."  17 U.S.C.

3   § 102(a)(4).  As explained in the Compendium of U.S. Copyright Office Practices—

4   the Copyright Office's substantive manual for its staff on the contours of copyright

5   law and Office policies—choreography is the "composition and arrangement of 'a

6   related series of dance movements and patterns organized into a coherent whole.'"

7   Compendium § 805.1 (quoting *Horgan v. Macmillan, Inc.*, 789 F.2d 157, 161 (2d Cir.

8   1986)).  Thus, the Copyright Office would register a "choreographed music video for

9   a song titled 'Made in the USA'" if the dance "is a complex and intricate work

10   performed by a troupe of professional dancers."  *Id.* § 805.5(A).

11   Critically, however, "[c]horeographic works are distinguished from *de minimis*

12   movements, dance steps, social, dances, and simple routines, which are not

13   copyrightable."  *Brantley*, 463 F. Supp. 3d at 622 (relying on Compendium

14   § 805.5(A)–(B)).  That is because, in recognition that the constituent parts of a

15   choreographic work must be available for others to use, Congress was explicit that

16   "simple routines" are neither choreographic works nor copyrightable, H.R. Rep. 94-

17   1476, at 53, and the Copyright Office's Compendium explains that "[i]ndividual

18   movements or dance steps by themselves are not copyrightable."  *Brantley*, 463 F.

19   Supp. 3d at 622 (citing Compendium § 805.5(A)).  Other examples of unprotectable

20   movements include "the basic waltz step, the hustle step, the grapevine, or the second

21   position in classical ballet."  *Id.* (likewise, an endzone dance that "consists of a few

22   movements of the legs, shoulders, and arms" is not protectable).  Further, "short dance

23   routines consisting of only a few movements or steps with minor linear or spatial

24   variations, even if the routine is novel or distinctive," are not protectable.  *Id.*

25   As a result, "it is not possible to copyright a series of dance movements that

26   constitute a relatively small part of a theatrical performance, such as a discrete routine

27

28   not protectable); *DBC of N.Y., Inc. v. Merit Diamond Corp.*, 768 F. Supp. 414, 416
(S.D.N.Y. 1991) ("Familiar symbols or designs" not protectable).

EPIC'S MEMORANDUM ISO MOTION      14   Case No. 2:22-cv-02063-SVW-MRWx
TO DISMISS PLAINTIFF'S COMPLAINT

within a variety show, dance contest, or other exhibition." *Id.* § 805.5(B)(1).  Thus, although the "Made in the USA" dance above might be registered as a whole, if "[d]uring the chorus, the dancers form the letters 'U, S, A' with their arms . . . the Office would reject a claim limited to the 'U, S, A' gesture." *Id.* § 805.5(A).  This approach makes sense as "[i]ndividual dance steps and short dance routines are the building blocks of choreographic expression, and allowing copyright protection for these elements would impede rather than foster creative expression." *Id.* (citing *Horgan*, 789 F.2d at 161).  Thus, "individual elements of a dance are not copyrightable for the same reason that individual words, numbers, notes, colors, or shapes are not protected by the copyright law." *Id.* (citing 37 C.F.R. § 202.1).  As discussed above, courts routinely hold that these types of elements are unprotectable, and will dismiss copyright claims based on them at the pleadings stage.  *See supra* 13.

The Copyright Office's prior applications of this standard are particularly useful here.  For example, in the prior cases filed by Plaintiff's counsel against Epic, the dance steps at issue frequently were denied registration.  In one particularly salient instance, the plaintiff attempted to register the "Carlton," which involved multiple dance steps: first, the "dancer sways their hips as they step from side to side, while swinging their arms in an exaggerated manner"; then, "the dancer takes two steps to each side while opening and closing their legs and their arms in unison"; and finally, the "dancer's feet are still and they lower one hand from above their head to the middle of their chest while fluttering their fingers." Dkt. 23-8, at 7 (Copyright Office refusal letter), *Ribeiro v. Epic Games, Inc.*, No. 2:18 Civ. 10412 (C.D. Cal.) (also filed herewith as Cendali Decl. Ex. F).  The Copyright Office refused registration because the "Carlton" was merely a "simple routine." *Id.* at 6.[8]

---

[8]   The Copyright Office refused to register similar simple routines in other cases. Dkt. 35-7, at 7 (Copyright Office refusal letter for the "Floss" dance steps), *Redd v. Epic Games, Inc.*, No. 2:18 Civ. 10444 (C.D. Cal.) (also filed herewith as Cendali Decl. Ex. D); Dkt. 59-3, at 8 (Copyright Office refusal letter for the "Milly Rock" dance steps, which consisted of a side step with an accompanying swinging arm

EPIC'S MEMORANDUM ISO MOTION        15    Case No. 2:22-cv-02063-SVW-MRWx
TO DISMISS PLAINTIFF'S COMPLAINT

1      In another example, the Copyright Office refused registration of a complicated

2 dance routine by world-renowned modern dance company Pilobolus titled "Five-Petal

3 Flower."  The Five-Petal Flower dance routine was described as follows:

4      On the left-hand side is the silhouette of a woman facing the right side of

5      the screen. On the right-hand side several people quickly tumble onto the

6      stage, forming the silhouette of a five-petal flower with their intertwined

7      bodies. Simultaneously, the silhouette of a giant hand moves from the left

8      to the right side of the screen, and appears to pull at the top of the five-

9      petal flower. The hand then points at the flower formation in a common

10      gesture that means "stay put." The flower formation stays still for the

11      remainder of the video. The hand moves back to the left side of the

12      screen and appears to pluck off the head of the woman, who shrugs her

13      arms and slightly kicks her legs outward as if stunned. Her hands reach

14      for the headless top of her body to feel for the head, and then return to

15      her sides. The giant hand moves over the woman's body and her head

16      reappears; the hand moves again and most of her body disappears

17      underneath the hand. The woman remains near-motionless before the

18      video abruptly ends.

19 Letter from U.S. Copyright Office to Puo-I "Bonnie" Lee (dated July 14, 2016),

20 *available at* https://www.copyright.gov/rulings-filings/review-board/docs/five-

21 petalflower.pdf ("Pilobous Letter") (also filed herewith as Cendali Decl. Ex. H).

22 Despite the detailed description of Pilobolus' dance, the Copyright Office concluded

23 that the routine was "*de minimis*" because it consisted of "simple movements" that

24 were "insufficient to enable copyright registration."  *Id.* at 4.

25

26

27      movement and movement of the ribs that was then repeated on the other side and is
     performed at a quick tempo), *Ferguson v. Epic Games, Inc.*, No. 2:18 Civ. 10110

28      (C.D. Cal.) (also filed herewith as Cendali Decl. Ex. G).

1    The Copyright Office's guidance is critical as the Ninth Circuit has held that,

2    "[w]hen interpreting the Copyright Act," courts should "defer to the Copyright

3    Office's interpretations," *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038, 1041

4    (9th Cir. 2014), because of its "body of experience and informed judgment." *Garcia*

5    *v. Google, Inc.*, 786 F.3d 733, 742 (9th Cir. 2015) (en banc).  For example, the

6    Copyright Office has determined that "examples of works not subject to copyright"

7    include "[w]ords and short phrases."  Material Not Subject to Copyright, 37 C.F.R.

8    § 202.1(a) (2018).  Courts routinely dismiss cases on the pleadings relying solely on

9    this regulation.  *See Zekkariyas v. Univ. Music-MGB Songs*, No. 11 Civ. 02912, 2011

10   WL 13220325, at *2 (C.D. Cal. June 6, 2011) (granting Rule 12(b)(6) motion based

11   solely on regulation); *Zhang*, 2010 WL 11596643, at *5 (quoting regulation for

12   proposition that "'words and short phrases' are not copyrightable"); *see also Southco,*

13   *Inc. v. Kanebridge Corp.*, 390 F.3d 276, 286 (3d Cir. 2004); *CMM*, 97 F.3d at 1520

14   (same); *Trenton v. Infinity Broad. Corp.*, 865 F. Supp. 1416, 1426 (C.D. Cal. 1994)

15   (same); *Pelt v. CBS, Inc.*, No. 92 Civ. 06532, 1993 WL 659605, at *3 (C.D. Cal. Oct.

16   25, 1993) (same).

17   Consistent with the foregoing, in *Bikram's Yoga College of India, L.P. v.*

18   *Evolation Yoga, LLC*, the court held that a "Sequence of 26 yoga poses" was too

19   simple to qualify as a choreographic work.  No. 2:11 Civ. 05506, 2012 WL 6548505,

20   at *4 (C.D. Cal. Dec. 14, 2012).  On appeal, the Ninth Circuit acknowledged the

21   touchstones of dance copyright discussed above, but focused its analysis on the fact

22   that the yoga poses were uncopyrightable under 17 U.S.C. § 102(b).  *Bikram's*, 803

23   F.3d at 1043.

24   Here, Plaintiff likewise cannot establish that the Steps are protectable,

25   particularly given that they are even simpler and shorter than (1) the multi-step

26   "Carlton," (2) Pilobolus' intricate modern dance piece, and (3) the 26 poses in

27   *Bikram's*.  They are merely a sequence of hip twists and arm motions that are the kind

28   of movements that are unprotectable on their own.  Compendium § 805.5(A) (dance

EPIC'S MEMORANDUM ISO MOTION          17   Case No. 2:22-cv-02063-SVW-MRWx
TO DISMISS PLAINTIFF'S COMPLAINT

that "merely consists of a few movements of the legs, shoulders, and arms"
unprotectable); Pilobolus Letter at 4. Moreover, they are indisputably shorter than the
sequence of 26 yoga poses that were denied protection by the Ninth Circuit.
*Bikram's*, 2012 WL 6548505, at *4.

### 3. The Steps Are Not Substantially Similar to the Emote

As Plaintiff's registration of the five-minute choreographic work does not
extend to the Steps individually, they must be filtered out of the substantial similarity
analysis. *Beyond Blond Prods., LLC v. Heldman*, 479 F. Supp. 3d 874, 882–83 (C.D.
Cal. 2020) (holding that copyright registration did not provide protection to
combination of two unprotectable elements); *Apple*, 35 F.3d at 1443 ("[T]he
unprotectable elements have to be identified, or filtered, before the works can be
considered as a whole."). With no protectable elements to compare to the Emote,
there can be no substantial similarity, and Plaintiff's copyright claim must be
dismissed.[9] *See Christianson*, 149 F.2d at 204 (affirming grant of motion to dismiss
where only similarities between two maps were unoriginal or mere ideas); *Hall*, 2018
WL 2317548, at *8 (granting Rule 12(b)(6) motion where "only thing that Plaintiffs
allege Defendants copied" was "too brief, unoriginal, and uncreative to warrant
protection").[10]

Even if the Steps were protectable (to be clear, they are not), dismissal would
be warranted given the major differences between the Steps and the Emote.
Specifically, the Emote contains 16 counts of movement, and Plaintiff does not allege

---

[9] Moreover, as previously discussed, the works as a whole are not substantially
similar. *See supra* 10.

[10] Even if the Dance Step had a small sliver of copyright protection, such a thin
copyright would require a showing of "virtually identical" copying. *Century Tile,
Inc. v. Hirsch Glass Co.*, 467 F. App'x 651, 652 (9th Cir. 2012). In such
circumstances, "even relatively small differences . . . may exclude copyright
infringement." *Masterson Mktg., Inc. v. KSL Recreation Corp.*, 495 F. Supp. 2d
1044, 1048 (S.D. Cal. 2007).

EPIC'S MEMORANDUM ISO MOTION          18     Case No. 2:22-cv-02063-SVW-MRWx
TO DISMISS PLAINTIFF'S COMPLAINT

that 12 of those counts, or 75%, were copied. This is for good reason as those movements do not appear in Plaintiff's work. Thus, as the registered work is not substantially similar to the Emote, Counts I and II should be dismissed. *See Boost Beauty, LLC v. Woo Signatures, LLC*, No. 2:18 Civ. 02960, 2018 WL 5099258, at *5 (C.D. Cal. Oct. 15, 2018) (contributory infringement claim must be dismissed if direct infringement claim is dismissed).

### C. The Copyright Act Preempts Plaintiff's Unfair Competition Claim

Plaintiff's remaining claim for unfair competition (Count III) should be dismissed because it is preempted by the Copyright Act and, by asserting it, Plaintiff has violated California's anti-SLAPP statute. Under that statute, when a state law claim is asserted against an expressive work, like *Fortnite*, it is the ***plaintiff's*** burden to prove a probability of prevailing to avoid chilling the valid exercise of free speech rights. Cal. Code Civ. P. § 425.16(b)(1); *see Dean v. Kaiser Found. Health Plan, Inc.*, 562 F. Supp. 3d 928, 928 (C.D. Cal. 2022) (citing *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999)) ("California's anti-SLAPP statute may be used to challenge state law claims in federal question cases."). An anti-SLAPP motion requires a two-part analysis, which is satisfied here.

***First***, the court determines whether "the challenged cause of action arises from activity protected under the statute," *Baez*, 2017 WL 9500979, at *2, the provisions of which "must be construed broadly." *Ojjeh v. Brown*, 43 Cal. App. 5th 1027, 1035 (2019). Plaintiff's unfair competition claim targets *Fortnite*. Compl. ¶ 85. Thus, as courts have repeatedly held that "video games qualify for First Amendment protection," *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 790 (2011), this alone satisfies the first prong. *See Cusano*, 473 F. App'x at 804 (video games satisfy step one of anti-SLAPP analysis). Moreover, Plaintiff has asserted that his dancing, as well as Epic's alleged infringement thereof, is a matter of public concern. Compl. ¶¶ 15, 34, 51, 64, 78. This too establishes the first prong. *See Ojjeh*, 43 Cal. App. 5th

at 1042–43 (discussing "functional relationship between the speech and the public conversation about the matter of public interest").

*Second*, the burden shifts to Plaintiff to "demonstrate[] a probability of prevailing on the merits of" his claims. *GLAAD*, 742 F.3d at 425. Plaintiff cannot do so because his claim is preempted. The Copyright Act provides the exclusive remedy for "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright." 17 U.S.C. § 301(a). A state law claim is preempted if (1) the work is within the type of works protected by copyright, and (2) the claim seeks to vindicate rights equivalent to those protected by copyright law. *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006) (right of publicity claim preempted).

As to the first prong, Plaintiff's unfair competition claim is predicated on the same dance that forms the basis of his copyright claims. Compl. ¶¶ 84, 85 (allegations based on "Hanagami's dance" and "Registered Choreography"). As choreography is the subject matter of copyright, 17 U.S.C. § 102(a)(4), the first prong is satisfied. *Cusano*, 473 F. App'x at 804 (first prong satisfied by types of works listed in 17 U.S.C. § 102(a)).[11] Indeed, like Plaintiff here, the plaintiffs in *Brantley* asserted an unfair competition claim based on Epic's alleged use of their dance step, but the claim was dismissed as preempted because "the misappropriation of an original work" formed "the gravamen of both types of claims." 463 F. Supp. 3d at 627; *Pellegrino*, 451 F. Supp. 3d at 387–88 (dismissing as preempted state law claims concerning plaintiff's movement that were alleged to have been copied into *Fortnite* as movement was within the subject matter of copyright). Similarly, the plaintiff in *Lions Gate*

---

[11] Even if the Steps are not copyrightable, they still fall "within the 'subject matter of copyright' for the purposes of preemption analysis" as even unprotected subject matter satisfies the first prong. *Entous v. Viacom Int'l, Inc.*, 151 F. Supp. 2d 1150, 1159 (C.D. Cal. 2001); *see also Brantley*, 463 F. Supp. 3d at 624 (as "scope of copyright preemption is broader than that of copyright protection, it is sufficient . . . that [dance step] is within the 'general subject matter' of copyright").

1 *Entertainment Inc. v. TD Ameritrade Services Co.* asserted an unfair competition

2 claim based on the use of the dance lift from the film *Dirty Dancing* where Patrick

3 Swayze lifts Jennifer Grey over his head.  170 F. Supp. 3d 1249, 1254 (C.D. Cal.

4 2016).  That claim too was preempted.  *Id.* at 1264 (dance lift subject matter of

5 copyright).

6      As to the second prong, no extra element makes Plaintiff's unfair competition

7 claim different from a copyright claim as the alleged acts of unfair competition are

8 quintessential acts of copyright infringement: copying, use, and creating a derivative

9 work.  Compl. ¶¶ 84 ("By misappropriating Hanagami's dance and through the

10 improper copying and use of the Registered Choreography"), 85 ("copying the 'It's

11 Complicated' emote").  Plaintiff's unfair competition claim even explicitly seeks to

12 enjoin "Defendants . . . from further using his ***Registered Choreography***."  *Id.* ¶ 87

13 (emphasis added).  Thus, Plaintiff's unfair competition claim seeks to vindicate rights

14 equivalent to those protected by copyright law and is preempted.  *See Maloney v.*

15 *T3Media, Inc.*, 853 F.3d 1004, 1019 (9th Cir. 2017) (affirming grant of special motion

16 to strike and dismissal of unfair competition claim where use was not "independent of

17 the display, reproduction, and distribution of the copyrighted material"); *Brantley*, 463

18 F. Supp. 3d at 627 (holding that "rights protected by the unfair competition claims are

19 not qualitatively different from those protected by the Copyright Act because the

20 gravamen of both types of claims is the misappropriation of an original work").

21      As Plaintiff's unfair competition claim is preempted by the Copyright Act,

22 Plaintiff cannot satisfy his burden under California's anti-SLAPP statute, and the

23 claim should be dismissed.

24      **D.  Certain of Plaintiff's Requested Remedies Are Unavailable**

25      If the Court does not dismiss Plaintiff's entire Complaint, several forms of

26 damages should be stricken because Plaintiff is precluded from seeking them as a

27 matter of law.

28

***First***, Plaintiff requests "attorneys' fees" in connection with his copyright claim. Fees are unavailable because Plaintiff did not register his copyright until after the alleged infringement began. Compl. ¶ 67. The Copyright Act states that "no award of statutory damages or of attorney's fees . . . shall be made for . . . any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." 17 U.S.C. § 412. Plaintiff admits that the Emote became available on August 25, 2020, Compl. ¶ 38, ***after*** Plaintiff first published the How Long Video in 2017, *id.* ¶ 1, but ***before*** February 20, 2021, the effective date of Plaintiff's registration, *id.* ¶ 56.[12] Thus, Plaintiff is not entitled to attorney's fees. *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (attorney's fees not available where "infringement commenced prior to . . . registration date").[13]

***Second***, although Plaintiff seeks punitive and exemplary damages, Compl. ¶¶ 68, 82, they are not available as a remedy for copyright claims. *See Saregama India Ltd. v. Young*, No. 02 Civ. 09856, 2003 WL 25769784, at *1 (C.D. Cal. Mar. 11, 2003) ("Punitive damages are not available under the Copyright Act.").

***Third***, Plaintiff seeks punitive damages and exemplary damages on his unfair competition claims. Compl. 23:12. The Ninth Circuit, however, holds that "California law does not recognize the recovery of damages by individuals for unfair business practices." *Kates v. Crocker Nat'l Bank*, 776 F.2d 1396, 1398 (9th Cir.

---

[12] Plaintiff also would not benefit from the three-month publication safe harbor as the How Long Video was published in 2017, but Plaintiff did not apply to register it until 2021. Compl. ¶ 16, Ex. A (registration certificate) at 2–3.

[13] That the Emote was available in *Fortnite* after Plaintiff registered his copyright does not change the analysis. *See Rosen v. Netfronts, Inc.*, No. 12 Civ. 00658, 2013 WL 3467205, at *3 (C.D. Cal. July 9, 2013) ("Under the doctrine of continuing infringement, 'the first act of infringement in a series of ongoing infringements of the same kind marks the commencement of one continuing infringement under § 412.'" (citing *Derek Andrew, Inc.*, 528 F.3d at 699)).

EPIC'S MEMORANDUM ISO MOTION        22   Case No. 2:22-cv-02063-SVW-MRWx
TO DISMISS PLAINTIFF'S COMPLAINT

1  1985); *see also Wood v. Midland Credit Mgmt., Inc.*, No. 05 Civ. 03881, 2005 WL

2  3159639, at *5 (C.D. Cal. July 29, 2005) (holding that "neither nonrestitutionary nor

3  punitive damages are an available form of remedy under California Business and

4  Professions Code § 17200").  For these reasons, Plaintiff's requests for punitive and

5  exemplary damages should be stricken.

6  **IV.  CONCLUSION**

7      For the foregoing reasons, Epic respectfully requests that Plaintiff's Complaint

8  be dismissed in its entirety with prejudice, as amendment would be futile.  *See*

9  *Puckett*, 2016 WL 7647555, at *7.

10

11   DATED:  May 27, 2022                     Respectfully submitted,

12

13                                     */s/ Dale M. Cendali*
                                       Dale M. Cendali (admitted *pro hac vice*)
14                                     dale.cendali@kirkland.com
                                       Joshua L. Simmons (admitted *pro hac vice*)
15                                     joshua.simmons@kirkland.com
                                       KIRKLAND & ELLIS LLP
16                                     601 Lexington Avenue
                                       New York, New York 10022
17                                     Telephone: (212) 446-4800
                                       Facsimile: (212) 446-4900
18
                                       Yungmoon Chang (SBN 311673)
19                                     yungmoon.chang@kirkland.com
                                       KIRKLAND & ELLIS LLP
20                                     2049 Century Park East
                                       Los Angeles, CA 90067
21                                     Telephone: (310) 552-4200
                                       Facsimile: (310) 552-5900
22
                                       *Attorneys for Defendant Epic Games, Inc.*
23

24

25

26

27

28

1

**PROOF OF SERVICE**

2      On May 27, 2022, I electronically filed the foregoing **MEMORANDUM OF**

3  **POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT EPIC GAMES,**

4  **INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND SPECIAL**

5  **MOTION TO STRIKE (ANTI-SLAPP), OR IN THE ALTERNATIVE,**

6  **MOTION TO STRIKE CERTAIN FORMS OF RELIEF** with the Clerk of the

7  Court by using CM/ECF system, which will send a notice of electronic filing to all

8  persons registered for ECF. All copies of documents required to be served by Fed. R.

9  Civ. P. 5(a) and L.R. 5-3.1.1 have been so served.

10

11                                    */s/ Dale M. Cendali*
                                          Dale M. Cendali

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EPIC'S MEMORANDUM ISO MOTION        1      Case No. 2:22-cv-02063-SVW-MRWx
TO DISMISS PLAINTIFF'S COMPLAINT

1  Dale M. Cendali (admitted *pro hac vice*)
   dale.cendali@kirkland.com
2  Joshua L. Simmons (admitted *pro hac vice*)
   joshua.simmons@kirkland.com
3  KIRKLAND & ELLIS LLP
   601 Lexington Avenue
4  New York, New York 10022
   Telephone: (212) 446-4800
5  Facsimile: (212) 446-4900

6  Yungmoon Chang (S.B.N. 311673)
   yungmoon.chang@kirkland.com
7  KIRKLAND & ELLIS LLP
   2049 Century Park East
8  Los Angeles, CA 90067
   Telephone: (310) 552-4200
9  Facsimile: (310) 552-5900

10 *Attorneys for Defendant Epic Games, Inc.*

11                 **UNITED STATES DISTRICT COURT**

12                 **CENTRAL DISTRICT OF CALIFORNIA**

13

14 KYLE HANAGAMI, an individual,   )   CASE NO. 2:22-cv-02063-SVW-
                                    )   MRWx
15          Plaintiff,              )
                                    )
16      v.                          )   **DEFENDANT EPIC GAMES, INC.'S**
                                    )   **REQUEST FOR JUDICIAL**
17 EPIC GAMES, INC., a North        )   **NOTICE IN SUPPORT OF ITS**
   Carolina Corporation, et al.,    )   **MOTION TO DISMISS**
18                                  )   **PLAINTIFF'S COMPLAINT AND**
           Defendants.              )   **SPECIAL MOTION TO STRIKE**
19                                  )   **(ANTI-SLAPP), OR IN THE**
                                    )   **ALTERNATIVE, MOTION TO**
20                                  )   **STRIKE CERTAIN FORMS OF**
                                    )   **RELIEF**
21                                  )
                                    )   Complaint Filed Date:  March 29, 2022
22                                  )
                                    )   Judge:        Stephen V. Wilson
23                                  )   Hearing Date: June 27, 2022
                                    )   Time:         1:30pm
24                                  )   Courtroom:    10A

25

26

27

28

1      Pursuant to Federal Rule of Evidence 201, Defendant Epic Games, Inc.

2   ("Epic") submits this request for judicial notice in support of its concurrently-filed

3   motion to dismiss Plaintiff Kyle Hanagami's ("Plaintiff") Complaint (Dkt. No. 1) (the

4   "Complaint") in its entirety, pursuant to Federal Rule of Civil Procedure ("Federal

5   Rule") 12(b)(6); special motion to strike (anti-SLAPP) Plaintiff's unfair competition

6   claim (Count III), pursuant to California Code of Civil Procedure § 425.16; or in the

7   alternative, motion to strike certain forms of relief sought by Plaintiff, pursuant to

8   Federal Rule 12(f).

9      As discussed below, Epic requests that, in deciding Epic's motion, this Court

10  consider the works at issue that were incorporated by reference into and relied upon

11  by Plaintiff in his Complaint.  "[A] court may properly take judicial notice of . . .

12  material which is included as part of the complaint or relied upon by the complaint."

13  *Frere v. Medtronic, Inc.*, No. 5:15 Civ. 02338, 2016 WL 1533524, at *3 (C.D. Cal.

14  Apr. 6, 2016); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Zindel*

15  *v. Fox Searchlight Pictures, Inc.*, No. 2:18 Civ. 1435, 2018 WL 3601842, at *3 (C.D.

16  Cal. July 23, 2018).  Courts also may take judicial notice of documents where the

17  "plaintiff's claim depends on the contents of a document," even though the plaintiff

18  does not explicitly refer to the document in the complaint.  *Knievel*, 393 F.3d at 1076.

19     In copyright cases, in particular, courts routinely take judicial notice of the

20  works at issue to determine whether to grant a motion to dismiss like that filed by

21  Epic.  For example, in *Fillmore v. Blumhouse Productions, LLC*, the court took

22  judicial notice of a manuscript and film that were referenced in, but not attached to,

23  the plaintiff's complaint.  No. 2:16 Civ. 04348, 2017 WL 4708018, at *3 (C.D. Cal.

24  July 7, 2017) (granting motion to dismiss).  Similarly, in *Silas v. Home Box Office,*

25  *Inc.*, the court took judicial notice of a motion picture trailer, a shortened trailer, a

26  screenplay, a treatment, and the *Ballers* television series that were referenced in the

27  plaintiff's complaint but not attached.  201 F. Supp. 3d 1158, 1168 (C.D. Cal. 2016)

28

EPIC'S REQUEST FOR JUDICIAL          CASE NO. 2:22-CV-02063-SVW-MRWx
NOTICE ISO MOTION TO DISMISS AND
SPECIAL MOTION TO STRIKE             1

(granting motion to dismiss).  In *Sobhani v. @Radical.Media Inc.*, the court took judicial notice of the content of the movie *Cast Away* where the plaintiff alleged that the defendant's commercial infringed his commercial spoof of that movie, and the movie was not attached to the plaintiff's complaint.  257 F. Supp. 2d 1234, 1235 n.1 (C.D. Cal. 2003); *see also Zindel*, 2018 WL 3601842, at *3 (on motion to dismiss, taking judicial notice of two versions of a play, a film, and book where plaintiff alleged that defendants infringed his copyrights in the play at issue with a film and a novelization of that film but did not attach those works to the complaint); *Campbell v. Walt Disney Co.*, 718 F. Supp. 2d 1108, 1111 (N.D. Cal. 2010) (on motion to dismiss, taking judicial notice of the movie *Cars* and written screenplay where "[p]laintiff refer[red] to the contents of the motion picture 'Cars' and the text of [the screenplay] in the Complaint but [did] not attach either as an exhibit").

Here, Plaintiff's Complaint asserts that he posted a video titled "CHARLIE PUTH - How Long | Kyle Hanagami Choreography" to YouTube ("How Long Video").  Dkt. 1 (Compl.) ¶ 16.  It also alleges that Plaintiff "is the author and copyright claimant of Copyright Registration Number PA 2-777-839, which covers the 'How Long Choreography,'" the asserted choreography in the How Long Video. *Id.* ¶ 1.  Accordingly, it is appropriate for this Court to consider the deposit copy that Plaintiff submitted to the Copyright Office showing him performing the dance.  Declaration of Dale M. Cendali, Esq., dated May 27, 2022 ("Cendali Decl.") Ex. A (deposit copy); *Frere*, 2016 WL 1533524, at *3.

In addition, Plaintiff alleges that the "It's Complicated" emote contained in Epic's *Fortnite* infringes Plaintiff's registered work.  *See, e.g.*, Compl. ¶¶ 2, 3.  Thus, this Court also may consider the "It's Complicated" emote.  Cendali Decl. Ex. B; *Sobhani*, 257 F. Supp. 2d at 1235 n.1; *Silas*, 201 F. Supp. 3d at 1168 (C.D. Cal. 2016).

1    For the foregoing reasons, Epic respectfully requests that the Court take judicial

2  notice of the works at issue (*i.e.*, Exhibits A and B to the Cendali Declaration).[1]

3

    DATED:  May 27, 2022

4                                             /s/ Dale M. Cendali
                                        _____
5                                       Dale M. Cendali (admitted *pro hac vice*)
                                        dale.cendali@kirkland.com
6                                       Joshua L. Simmons (admitted *pro hac vice*)
                                        joshua.simmons@kirkland.com
7                                       KIRKLAND & ELLIS LLP
                                        601 Lexington Avenue
8                                       New York, New York 10022
                                        Telephone: (212) 446-4800
9                                       Facsimile: (212) 446-4900

10                                      Yungmoon Chang (S.B.N. 311673)
                                        yungmoon.chang@kirkland.com
11                                      KIRKLAND & ELLIS LLP
                                        2049 Century Park East
12                                      Los Angeles, CA 90067
                                        Telephone: (310) 552-4200
13                                      Facsimile: (310) 552-5900

14                                      *Attorneys for Defendant Epic Games, Inc.*

15

16

17

18

19

20

21

22

23

24  _____

25  [1]   For the convenience of the Court, the Cendali Declaration also attaches certain
          legal authorities cited in Epic's memorandum of law.  Cendali Decl. Exs. C–H.
26        The Court does not require judicial notice to consider those materials.  Fed. R.
          Evid. 201; *United States ex rel. Robinson Rancheria Citizens Council v. Borneo,*
27        *Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (stating that a court "may take notice of
          proceedings in other courts, both within and without the federal judicial system, if
28        those proceedings have a direct relation to matters at issue").

EPIC'S REQUEST FOR JUDICIAL              CASE NO. 2:22-CV-02063-SVW-MRWx
NOTICE ISO MOTION TO DISMISS AND
SPECIAL MOTION TO STRIKE                 3

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I have electronically filed the foregoing **DEFENDANT EPIC GAMES, INC.'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE (ANTI-SLAPP)** with the Clerk of the Court by using CM/ECF system, which will automatically send a notice of electronic filing to all persons registered for ECF.

/s/ <em>Dale M. Cendali</em>
Dale M. Cendali

Yungmoon Chang (SBN 311673)
yungmoon.chang@kirkland.com
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| KYLE HANAGAMI | CASE NUMBER: |
| | 2:22-cv-2063 SVW-MRWx |
| v.   PLAINTIFF(S) | |
| EPIC GAMES, INC. | **NOTICE OF MANUAL FILING OR LODGING** |
| DEFENDANT(S). | |

PLEASE TAKE NOTICE:

Pursuant to Local Rule 5-4.2, the following document(s) or item(s) are exempt from electronic filing, and will therefore be manually ☐ Filed ☑ Lodged: (**List Documents**)

EXHIBIT A - CHARLIE PUTH - How Long_Kyle Hanagami Choreography.mp4
EXHIBIT B - INGAME RECORDING - It's Complicated Emote.mp4

**Reason:**

☐   Under Seal

☐   In Camera

☑   Items not conducive to e-filing (i.e., videotapes, CDROM, large graphic charts)

☐   Per Court order dated: _____

☐   Other:

May 27, 2022
_____
Date

Dale M. Cendali
_____
Attorney Name

Epic Games, Inc.
_____
Party Represented

*Note:   File one Notice of Manual Filing or Lodging in each case, each time you manually submit a document(s).*

1  Dale M. Cendali (admitted *pro hac vice*)
   dale.cendali@kirkland.com
2  Joshua L. Simmons (admitted *pro hac vice*)
   joshua.simmons@kirkland.com
3  KIRKLAND & ELLIS LLP
   601 Lexington Avenue
4  New York, NY 10022
   Telephone: (212) 446-4800
5  Facsimile: (212) 446-4900

6  Yungmoon Chang (SBN 311673)
   yungmoon.chang@kirkland.com
7  KIRKLAND & ELLIS LLP
   2049 Century Park East
8  Los Angeles, CA 90067
   Telephone: (310) 552-4200
9  Facsimile: (310) 552-5900

10 *Attorneys for Defendant Epic Games,*
   *Inc.*

11

12                     **UNITED STATES DISTRICT COURT**

13                     **CENTRAL DISTRICT OF CALIFORNIA**

14

15  KYLE HANAGAMI, an individual,      )   CASE NO. 2:22-cv-02063-SVW-
                                        )   MRWx
16              Plaintiff,              )
                                        )
17        v.                            )   **DECLARATION OF DALE M.**
                                        )   **CENDALI, ESQ. IN SUPPORT OF**
18  EPIC GAMES, INC., a North           )   **DEFENDANT EPIC GAMES, INC.'S**
    Carolina Corporation, et al.,       )   **MOTION TO DISMISS**
19                                      )   **PLAINTIFF'S COMPLAINT AND**
              Defendants.               )   **SPECIAL MOTION TO STRIKE**
20                                      )   **(ANTI-SLAPP), OR IN THE**
                                        )   **ALTERNATIVE, MOTION TO**
21                                      )   **STRIKE CERTAIN FORMS OF**
                                        )   **RELIEF**
22                                      )
                                        )   Complaint Filed Date:  March 29, 2022
23                                      )
                                        )   Judge:          Stephen V. Wilson
24                                      )   Hearing Date:   June 27, 2022
                                        )   Time:           1:30pm
25                                      )   Courtroom:      10A
                                        )
26

27

28

---

1  I, Dale M. Cendali, Esq., declare as follows:

2      1.     I am a partner at the law firm of Kirkland & Ellis LLP and counsel of

3  record for Defendant Epic Games, Inc. ("Epic").  I am licensed to practice law in the

4  State of New York and am admitted *pro hac vice* to practice before this Court.  I

5  submit this declaration in support of Epic's motion to dismiss Plaintiff Kyle

6  Hanagami's ("Plaintiff") Complaint in its entirety and special motion to strike (anti-

7  SLAPP) Plaintiff's unfair competition claim (Count III), or in the alternative, motion

8  to strike certain forms of relief sought by Plaintiff.

9      2.     As referenced in the Complaint, on February 18, 2021, Plaintiff filed an

10 application to register "choreography" in a video performed to the song "How Long,"

11 by Charlie Puth.  As part of his application, Plaintiff submitted a copy of the video,

12 which is five minutes in length, containing approximately 520 counts of dancing (104

13 counts of music for each of five different groups of dancers).  A true and correct copy

14 of the video deposit copy will be lodged with the Court as **Exhibit A**.

15     3.     On August 25, 2020, Epic released Chapter 2, Season 3 of *Fortnite*,

16 which includes the "It's Complicated" emote (the "Emote").  The Emote contains 16

17 counts of movement.  A true and correct copy of a video of the Emote will be lodged

18 with the Court as **Exhibit B**.

19     4.     In Epic's memorandum of law, it cites to *Reece v. Island Treasures Art*

20 *Gallery, Inc.*, 68 F. Supp. 2d 1197 (D. Haw. 2006).  For the Court's convenience,

21 attached hereto as **Exhibit C** are true and correct copies of the "Makanani"

22 photograph and "Nohe" stained glass artwork referenced in that decision.  Dkt. Nos.

23 63-14 and 63-15, No. 1:06 Civ. 00489, 68 F. Supp. 2d 1197 (D. Haw. 2006).

24     5.     Epic's memorandum of law also cites to certain legal authorities from the

25 Copyright Office.  For the Court's convenience, attached hereto as **Exhibit D** is a true

26 and correct copy of the E-File Correspondence for the "Floss" dance steps, including

27 the Copyright Office refusal letter on pages 7–8 thereof, that was filed as Dkt 35-7 in

28

---

DECLARATION OF DALE M. CENDALI                    CASE NO. 2:22-CV-02063-SVW-MRWx
ISO EPIC'S MOTION TO DISMISS          1

1  *Redd v. Epic Games, Inc.*, No. 2:18 Civ. 10444 (C.D. Cal.).

2       6.    Attached hereto as **Exhibit E** is a true and correct copy of the Copyright

3  Office public catalog entry for the "Flossin Dance" that was filed as Dkt. 35-4 in *Redd*

4  *v. Epic Games, Inc.*, No. 2:18 Civ. 10444 (C.D. Cal.).

5       7.    Attached hereto as **Exhibit F** is a true and correct copy of the E-File

6  Correspondence for the "Carlton" dance steps, including the Copyright Office refusal

7  letter on pages 7–8 thereof, that was filed as Dkt. 23-8 in *Ribeiro v. Epic Games, Inc.*,

8  No. 2:18 Civ. 10412 (C.D. Cal.).

9       8.    Attached hereto as **Exhibit G** is a true and correct copy of the E-File

10  Correspondence for the "Milly Rock" dance steps, including the Copyright Office

11  refusal letter on pages 8–9 thereof, that was filed as Dkt. 59-3 in *Ferguson v. Epic*

12  *Games, Inc.*, No. 2:18 Civ. 10110 (C.D. Cal.).

13       9.    Attached hereto as **Exhibit H** is a true and correct copy of the Copyright

14  Office letter to Puo-I "Bonnie" Lee (dated July 14, 2016), that is available at

15  https://www.copyright.gov/rulings-filings/review-board/docs/five-petal-flower.pdf.

16

17  I declare under penalty of perjury that the foregoing is true and correct.

18

19    Executed on May 27, 2022       */s/ Dale M. Cendali*

20                                 Dale M. Cendali (admitted *pro hac vice*)

21                                 dale.cendali@kirkland.com
                               KIRKLAND & ELLIS LLP

22                                 601 Lexington Avenue
                               New York, New York 10022

23                                 Telephone: (212) 446-4800
                               Facsimile: (212) 446-4900

24

25                                 *Attorney for Defendant Epic Games, Inc.*

26

27

28

# EXHIBIT A

## PHYSICAL EXHIBIT TO BE FILED WITH THE CLERK

## CHARLIE PUTH - Low Long_Kyle Hanagami Choreography.mp4

# EXHIBIT B

## PHYSICAL EXHIBIT TO BE FILED WITH THE CLERK

## INGAME RECORDING -
## It's Complicated Emote.mp4

# EXHIBIT C





EXHIBIT "H"

# EXHIBIT D

# EXHIBIT G



# COPY OF E-FILE CORRESPONDENCE SR 1-7053827951

**Correspondence Activities Report**

SR 1-7053827951
**Activity Type:** Email - Outbound
**Created on:** 10/22/2018 7:02:15 PM
**Subject:** Confirmation of Receipt
**Body:**

THIS IS AN AUTOMATED EMAIL - PLEASE DO NOT REPLY.


Your Application and payment for the work THE FLOSS were received by the
U.S.Copyright Office on 10/22/2018.


PLEASE NOTE: Your submission is not complete until you upload or mail the
material you are registering. To do so, logon
to https://eco.copyright.gov/eService_enu/ and click on case number
1-7053827951 in the Open Cases table. Follow the instructions to either upload a
digital copy or mail a physical copy (with shipping slip attached) of the work being
registered. Additional instructions and requirements for submitting the material
being registered can be found at http://www.copyright.gov/eco/tips/.


SHIPPING SLIPS: If you mail physical copies of the material being registered, the
effective date of registration will be based on the date on which we receive the
copies WITH CORRESPONDING SHIPPING SLIPS ATTACHED.


A printable copy of the application will be available within 24 hours by clicking the
My Applications link in the left top most navigation menu of the Home screen.


You may check the status of this claim via eCO using this number 1-7053827951.
If you have questions or need assistance, Copyright Office contact information can
be found at http://www.copyright.gov/help/index.html#general.


United States Copyright Office

**Activity Type:** Email - Outbound
**Created on:** 10/22/2018 7:09:08 PM
**Subject:** Acknowledgement of Uploaded Deposit
**Body:**
THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT REPLY. Thank you for submitting your registration claim using the Electronic Copyright Office (ECO) System. The following files were successfully uploaded for service request 1-7053827951 File Name :floss_video.mov File Size :3146646 KB Date/Time :10/22/2018 7:03:48 PM [THREAD ID: 1-38UWEM4] United States Copyright Office

**Activity Type:** Email - Outbound
**Created on:** 10/22/2018 7:09:12 PM
**Subject:** Acknowledgement of Uploaded Deposit
**Body:**
THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT REPLY. Thank you for submitting your registration claim using the Electronic Copyright Office (ECO) System. The following files were successfully uploaded for service request 1-7053827951 File Name :floss_video.mov File Size :3146646 KB Date/Time :10/22/2018 7:05:35 PM [THREAD ID: 1-38UWEMP] United States Copyright Office

**Activity Type:** Letter - Outbound
**Created on:** 01/22/2019 1:42:32 PM
**Comments:** See Merged Correspondence



**United States Copyright Office**

Library of Congress · 101 Independence Avenue SE · Washington DC 20559-6000 · www.copyright.gov

January 22, 2019

The Law Office of Dayna Thomas, LLC
Attn: Dayna Thomas
201 17th Street Suite 300
Atlanta, GA 30363
United States

Correspondence ID:    1-3DJ8KKZ

RE:    THE FLOSS

Dear Dayna Thomas:

You have submitted an application to register a copyright claim in choreography for a work titled *The Floss*. This application has been assigned U.S. Copyright Office service request number 1-7053827951. Upon review of the material deposited for registration, we must refuse registration for *The Floss* because the work submitted for registration is a simple dance routine. As such, it is not registrable as a choreographic work.

The Office defines choreography as the composition and arrangement of a related series of dance movements and patterns organized into an integrated, coherent, and expressive whole. By definition, choreography is a subset of dance, and the U.S. Copyright Office may only register a choreographic work if it contains a sufficient amount of choreographic authorship. *Compendium of U.S. Copyright Office Practices* § 805.1 (3d. ed., 2017). However, the term "choreography" is not synonymous with "dance." When drafting the current copyright law, Congress made it clear that it did not intend to protect all forms of dance or movement, specifically stating that "'choreographic works' do not include social dance steps and simple routines." H.R. Rep. No. 94-1476, at 54 (1976). Additionally, "[i]ndividual movements or dance steps by themselves are not copyrightable, such as the basic waltz step, the hustle step, the grapevine, or the second position in ballet." *Compendium (Third)* § 805.5(A).

The fact that a dance or movement may contain more than a trivial amount of original authorship is irrelevant to this determination. Social dances, simple routines, single dance steps and other uncopyrightable movements are not "choreographic works" under Section 102(a)(4) of the Copyright Act. As such, they cannot be registered, even if they contain a substantial amount of original, creative expression.

The work submitted for registration with this application consists of a single dance step, popularly known as "The Floss." *See Compendium (Third)* § 309.2 (noting that the Office may take administrative notice of facts or matters known to the Office or the general public). The dancer sways their hips side to side while coordinating their arms to move in the opposite direction.

Dayna Thomas                                    - 2 -                                    1-3DJ8KKZ

This single dance step is not registrable as a choreographic work. Accordingly, your application for registration is refused. The Office will retain the application, copy of the work, and the non-refundable filling fee in accordance with U.S. Copyright laws and regulations.

This letter is for your information only; no response is necessary.

Sincerely,

Saskia Florence
Supervisory Registration Specialist
Performing Arts Division
U.S. Copyright Office

Enclosures:
  Reply Sheet



**United States Copyright Office**

Library of Congress · 101 Independence Avenue SE · Washington DC 20559-6000 · www.copyright.gov



**✶ 1 - 3 D J 8 K K Z ✶**

# Return this sheet **if** you request reconsideration.

### How to request reconsideration:

- Send your request in writing. **Please note that your request must be postmarked (via the U.S. Postal Service) or dispatched (via commercial carrier, courier, or messenger) no later than three months after a refusal is issued.**
- Explain why the claim should be registered or why it was improperly refused.
- Enclose the required fee – see below.
- Address your request to:

  **RECONSIDERATION**
  **Copyright RAC Division**
  **P.O. Box 71380**
  **Washington, DC 20024-1380**

**Note:** Include the Correspondence ID Number (see above) on the first page. Indicate either "First Reconsideration" or "Second Reconsideration" as appropriate on the subject line.

**Notification of decision**: The Copyright Office will send a written notification of its decision, including an explanation of its reasoning.

**First Request for Reconsideration:** The Registration Program Office considers the first request. If it upholds the refusal, you may submit a second request.

**Second Request for Reconsideration:** The Copyright Office Board of Review considers the second request. The Board consists of the Register of Copyrights and the General Counsel (or their respective designees), and a third member appointed by the Register. The Board's decision constitutes final agency action.

**FEES:**

| | |
|---|---|
| **First Request** | $250 per claim (i.e. the work(s) contained on one application) |
| **Second Request** | $500 per claim (i.e. the work(s) contained on one application) |

# EXHIBIT E

# EXHIBIT D



**ER_139**

Help   Search   History   Titles   Start Over

Contact Us  |  Request Copies  |  Get a Search Estimate  |  Frequently Asked Questions (FAQs) about Copyright  |
Copyright Office Home Page  |  Library of Congress Home Page

**ER_140**

# EXHIBIT F

# EXHIBIT H

Case 2:18-cv-10412-CJC-RAO   Document 33-6   Filed 05/27/23   Page 2 of 40   Page ID #:178



# COPY OF E-FILE CORRESPONDENCE SR 1-7226013290

## Correspondence Activities Report

**SR** 1-7226013290
**Activity Type:** Email - Outbound
**Created on:** 12/14/2018 9:13:00 PM
**Subject:** Confirmation of Receipt
**Body:**

THIS IS AN AUTOMATED EMAIL - PLEASE DO NOT REPLY.


Your Application and payment for the work The Dance by Alfonso Ribeiro -
Variation B were received by the U.S.Copyright Office on 12/14/2018.


PLEASE NOTE:  Your submission is not complete until you upload or mail the
material you are registering. To do so, logon
to https://eco.copyright.gov/eService_enu/ and click on case number
1-7226013290 in the Open Cases table. Follow the instructions to either upload a
digital copy or mail a physical copy (with shipping slip attached) of the work being
registered. Additional instructions and requirements for submitting the material
being registered can be found at http://www.copyright.gov/eco/tips/.


SHIPPING SLIPS:  If you mail physical copies of the material being registered, the
effective date of registration will be based on the date on which we receive the
copies WITH CORRESPONDING SHIPPING SLIPS ATTACHED.


A printable copy of the application will be available within 24 hours by clicking the
My Applications link in the left top most navigation menu of the Home screen.


You may check the status of this claim via eCO using this number 1-7226013290.
If you have questions or need assistance, Copyright Office contact information can
be found at http://www.copyright.gov/help/index.html#general.


United States Copyright Office

**Activity Type:** Email - Outbound
**Created on:** 01/10/2019 10:25:10 PM
**Subject:** Acknowledgement of Uploaded Deposit
**Body:**
THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT REPLY. Thank you for submitting your registration claim using the Electronic Copyright Office (ECO) System. The following files were successfully uploaded for service request 1-7226013290 File Name :will_smith__alfonso_ribeiro_and_dj_jazzy_jeff_perform_the_carlton_dance_-_the_graham_norton_show-edited.mp4 File Size :24654479 KB Date/Time :1/10/2019 10:20:48 PM [THREAD ID: 1-3CY70N7] United States Copyright Office

**Activity Type:** Email - Outbound
**Created on:** 01/10/2019 10:25:11 PM
**Subject:** Acknowledgement of Uploaded Deposit
**Body:**
THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT REPLY. Thank you for submitting your registration claim using the Electronic Copyright Office (ECO) System. The following files were successfully uploaded for service request 1-7226013290 File Name :the_dance_-_the_graham_norton_show-edited.mp4 File Size :24654479 KB Date/Time :1/10/2019 10:21:41 PM [THREAD ID: 1-3CY70NS] United States Copyright Office

**Activity Type:** Letter - Outbound
**Created on:** 01/22/2019 11:46:30 AM
**Comments:** See Merged Correspondence



**United States Copyright Office**

Library of Congress · 101 Independence Avenue SE · Washington DC 20559-6000 · www.copyright.gov

January 22, 2019

Pierce Bainbridge Beck Price & Hecht LLP
Attn: David Hecht
20 West 23rd Street Fifth Floor
New York, NY 10010
United States

Correspondence ID:   1-3DJ4TP3

RE:   The Dance by Alfonso Ribeiro - Variation B

Dear David Hecht:

You have submitted an application to register a copyright claim in choreography for a work titled *The Dance by Alfonso Ribeiro - Variation B*. This application has been assigned U.S. Copyright Office service request number 1-7226013290. Upon review of the material deposited for registration, we must refuse registration for *The Dance by Alfonso Ribeiro - Variation B* because the work submitted for registration is a simple dance routine. As such, it is not registrable as a choreographic work.

The Office defines choreography as the composition and arrangement of a related series of dance movements and patterns organized into an integrated, coherent, and expressive whole. By definition, choreography is a subset of dance, and the U.S. Copyright Office may only register a choreographic work if it contains a sufficient amount of choreographic authorship. *Compendium of U.S. Copyright Office Practices* § 805.1 (3d. ed., 2017). However, the term "choreography" is not synonymous with "dance." When drafting the current copyright law, Congress made it clear that it did not intend to protect all forms of dance or movement, specifically stating that "'choreographic works' do not include social dance steps and simple routines." H.R. Rep. No. 94-1476, at 54 (1976). Additionally, "[i]ndividual movements or dance steps by themselves are not copyrightable, such as the basic waltz step, the hustle step, the grapevine, or the second position in ballet." *Compendium (Third)* § 805.5(A).

The fact that a dance or movement may contain more than a trivial amount of original authorship is irrelevant to this determination. Social dances, simple routines, and other uncopyrightable movements are not "choreographic works" under Section 102(a)(4) of the Copyright Act. As such, they cannot be registered, even if they contain a substantial amount of original, creative expression. For the same reason, the Office cannot register derivative social dances or derivative simple routines. A dance that is merely an adaptation of a social dance or simple routine is also considered a social dance or simple routine that does not qualify as a choreographic work under Section 102(a)(4) of the Act.

The work submitted for registration with this application consists of a simple routine made up of three dance steps, the first of which is popularly known as "The Carlton." *See Compendium (Third)* § 309.2 (noting that the Office may take administrative notice of facts or matters known to the Office or the

David Hecht                                    - 2 -                                    1-3DJ4TP3

general public). The dancer sways their hips as they step from side to side, while swinging their arms in an exaggerated manner.  In the second dance step, the dancer takes two steps to each side while opening and closing their legs and their arms in unison.  In the final step, the dancer's feet are still and they lower one hand from above their head to the middle of their chest while fluttering their fingers.

The combination of these three dance steps is a simple routine that is not registrable as a choreographic work. Accordingly, your application for registration is refused. The Office will retain the application, copy of the work, and the non-refundable filling fee in accordance with U.S. Copyright laws and regulations.

This letter is for your information only; no response is necessary.

Sincerely,

Saskia Florence
Supervisory Registration Specialist
Performing Arts Division
U.S. Copyright Office

Enclosures:
   Reply Sheet



**United States Copyright Office**

Library of Congress · 101 Independence Avenue SE · Washington DC 20559-6000 · www.copyright.gov



**\* 1 - 3 D J 4 T P 3 \***

# Return this sheet <u>if</u> you request reconsideration.

## How to request reconsideration:

- Send your request in writing. **Please note that your request must be postmarked (via the U.S. Postal Service) or dispatched (via commercial carrier, courier, or messenger) no later than three months after a refusal is issued.**
- Explain why the claim should be registered or why it was improperly refused.
- Enclose the required fee – see below.
- Address your request to:

  **RECONSIDERATION**
  **Copyright RAC Division**
  **P.O. Box 71380**
  **Washington, DC 20024-1380**

  Note: Include the Correspondence ID Number (see above) on the first page. Indicate either "First Reconsideration" or "Second Reconsideration" as appropriate on the subject line.

**Notification of decision**: The Copyright Office will send a written notification of its decision, including an explanation of its reasoning.

**First Request for Reconsideration:** The Registration Program Office considers the first request. If it upholds the refusal, you may submit a second request.

**Second Request for Reconsideration:** The Copyright Office Board of Review considers the second request. The Board consists of the Register of Copyrights and the General Counsel (or their respective designees), and a third member appointed by the Register. The Board's decision constitutes final agency action.

## FEES:

| | |
|---|---|
| **First Request** | $250 per claim (i.e. the work(s) contained on one application) |
| **Second Request** | $500 per claim (i.e. the work(s) contained on one application) |

# EXHIBIT G

Case 2:13-cv-20010-SVC-RAO   Document 59-7   Filed 05/27/19   Page 1 of 14   Page ID #:342

# EXHIBIT H



# COPY OF E-FILE
# CORRESPONDENCE
# SR 1-7192939861

### Correspondence Activities Report

**SR** 1-7192939861
**Activity Type:** Email - Outbound
**Created on:** 12/04/2018 08:14:24 AM
**Subject:** Confirmation of Receipt
**Body:**

THIS IS AN AUTOMATED EMAIL - PLEASE DO NOT REPLY.

Your Application and payment for the work Milly Rock Dance were received by the U.S.Copyright Office on 12/4/2018.

PLEASE NOTE:  Your submission is not complete until you upload or mail the material you are registering. To do so, logon to https://eco.copyright.gov/eService_enu/ and click on case number 1-7192939861 in the Open Cases table. Follow the instructions to either upload a digital copy or mail a physical copy (with shipping slip attached) of the work being registered. Additional instructions and requirements for submitting the material being registered can be found at http://www.copyright.gov/eco/tips/.

SHIPPING SLIPS:  If you mail physical copies of the material being registered, the effective date of registration will be based on the date on which we receive the copies WITH CORRESPONDING SHIPPING SLIPS ATTACHED.

A printable copy of the application will be available within 24 hours by clicking the My Applications link in the left top most navigation menu of the Home screen.

You may check the status of this claim via eCO using this number 1-7192939861. If you have questions or need assistance, Copyright Office contact information can be found at http://www.copyright.gov/help/index.html#general.

United States Copyright Office

**Activity Type:** Email - Outbound
**Created on:** 12/04/2018 08:17:10 AM
**Subject:** Acknowledgement of Uploaded Deposit
**Body:**
THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT REPLY. Thank you for submitting your registration claim using the Electronic Copyright Office (ECO) System. The following files were successfully uploaded for service request 1-7192939861 File Name :2milly_rocking_on_the_jeep.mp4 File Size :6682302 KB Date/Time :12/4/2018 8:14:39 AM [THREAD ID: 1-3AYLO9Y] United States Copyright Office

**Activity Type:** Letter - Outbound
**Created on:** 12/19/2018 1:14:49 PM
**Comments:** See Merged Correspondence

**Activity Type:** Letter - Outbound
**Created on:** 12/19/2018 2:46:02 PM
**Comments:** See Merged Correspondence

**Activity Type:** Email - Outbound
**Created on:** 12/20/2018 07:20:23 AM
**Attachment:** Y
**Subject:** 1-7192939861 Milly Rock Dance
**Body:**
Dear David Hecht: The Copyright Office refused registration for this work on 12.19.18. You will receive a refusal letter by mail shortly. Attached you will find a copy of the letter that was mailed out on 12.19.18. This email is for your information only. Please do not reply to this email. Copyright Office Examiners cannot communicate any further regarding this application. Further instructions will be provided in the letter you should be receiving shortly. Sincerely, Ed Bellafiore Copyright Examiner, Performing Arts Office of Registration Policy &Practice United States Copyright Office 101 Independence Avenue SE Washington, DC 20559-6222 www.copyright.gov When replying to this email, please include the following thread id (entire line) within the body of your response to expedite routing to the correct office. [THREAD ID:1-3BQYK8C]

 **United States Copyright Office**

Library of Congress · 101 Independence Avenue SE · Washington DC 20559-6000 · www.copyright.gov

December 19, 2018

Pierce Bainbridge Beck Price & Hecht LLP
Attn: David Hecht
20 West 23rd Street Fifth Floor
New York, NY 10010
United States

Correspondence ID:   1-3BQTJOI

RE:   Milly Rock Dance

Dear David Hecht:

We have received an application to register a claim to copyright in choreography for the work entitled *Milly Rock Dance*. For the reasons discussed below, the Office refuses registration of this claim.

As an initial matter, we note that on October 10, 2018 under service request number 1-6882249391, the Office received a related choreographic claim by the same author and claimant named on the application for *Milly Rock* Dance for a work entitled *2 Milly Rock*. Expedited handling was requested for 2 Milly Rock on the basis of prospective litigation. The deposit submitted with the October 10th application consists of a short video of approximately two dozen children imitating a simple routine or social dance move being demonstrated by three people at the front of the room. Notably, the video appears to be a demonstration of a particular social dance move, popularly known as the Milly Rock. *See Compendium (Third)* § 309.2 (noting that the Office may take administrative notice of facts or matters known to the Office or the general public).

The Office expeditiously refused registration for *2 Milly Rock* in a letter dated October 16, 2018. The refusal letter explained that the work did not constitute a choreographic work, but rather represented a simple dance routine. As the legislative history of the 1976 Act states, choreography does not include social dance steps or simple routines. H.R. REP. NO. 94-1476, at 53-54 (1976).

The current application for *Milly Rock Dance*, submitted on December 4, 2018 under service request number 1-7192939861, was sent with a different deposit: a video of an individual on top of the roof of a parked car performing simple dance movements in an improvisational manner, including the *2 Milly Rock* dance that had previously been refused by the Office on October 16, 2018. The Office also takes notice that, unlike the October 10th application, for which you requested "special handling" due to prospective litigation, you did not request special handling for the December 4th submission, which was filed the day before an infringement suit was initiated. While the video submitted for registration with the December 4th application is different and longer than the video submitted with the October 10th application, the Office finds that this longer routine of improvisational dance movements does not constitute a work of choreography. The movements represented in the video deposited for *Milly Rock*

David Hecht                                                                1-3BQTJOI

*Dance* depict a simple routine made up of social dance steps and do not represent an integrated, coherent and expressive compositional whole and is thus not eligible for copyright registration.

For copyright purposes, "choreography" is the composition and arrangement of a related series of dance movements and patterns organized into an integrated, coherent and expressive whole. *See Horgan v. Macmillan, Inc.*, 789 F.2d 157, 161 (2d Cir. 1986). Choreographic works are typically performed by skilled dancers for an audience. By contrast, social dances, such as ballroom dances, line dances, and similar movements are not created for professional dancers. They are instead intended to be performed by the general public for their own enjoyment. For more information on registration of choreographic works, please see *Compendium (Third)* § 805.

The Office finds that the video submitted with the December 4th application, depicting a social dance move known as the Milly Rock, does not support a claim in a choreographic work. For the foregoing reasons, registration for *Milly Rock Dance*, service request 1-7192939861, must be refused. In accordance with U.S. Copyright Office practices, we will retain the application, deposit, and non-refundable application fee.

This letter is for your information only; no response is necessary.


Sincerely,



Ed Bellafiore
Copyright Examiner, Performing Arts
Office of Registration Policy & Practice
United States Copyright Office
101 Independence Avenue SE
Washington, DC 20559-6222
www.copyright.gov



Enclosures:
  Reply Sheet



**United States Copyright Office**

Library of Congress · 101 Independence Avenue SE · Washington DC 20559-6000 · www.copyright.gov



**\* 1 - 3 B Q T J O I \***

# Return this sheet <u>if</u> you request reconsideration.

## How to request reconsideration:

- Send your request in writing.  **Please note that your request must be postmarked (via the U.S. Postal Service) or dispatched (via commercial carrier, courier, or messenger) no later than three months after a refusal is issued.**
- Explain why the claim should be registered or why it was improperly refused.
- Enclose the required fee – see below.
- Address your request to:

  **RECONSIDERATION**
  **Copyright RAC Division**
  **P.O. Box 71380**
  **Washington, DC 20024-1380**

  Note:   Include the Correspondence ID Number (see above) on the first page.  Indicate either "First Reconsideration" or "Second Reconsideration" as appropriate on the subject line.

**Notification of decision**:  The Copyright Office will send a written notification of its decision, including an explanation of its reasoning.

**First Request for Reconsideration:** The Registration Program Office considers the first request. If it upholds the refusal, you may submit a second request.

**Second Request for Reconsideration:** The Copyright Office Board of Review considers the second request. The Board consists of the Register of Copyrights and the General Counsel (or their respective designees), and a third member appointed by the Register. The Board's decision constitutes final agency action.

**FEES:**

| | |
|---|---|
| **First Request** | $250 per claim (i.e. the work(s) contained on one application) |
| **Second Request** | $500 per claim (i.e. the work(s) contained on one application) |

 **United States Copyright Office**

Library of Congress · 101 Independence Avenue SE · Washington DC 20559-6000 · www.copyright.gov

December 19, 2018

Pierce Bainbridge Beck Price & Hecht LLP
Attn: David Hecht
20 West 23rd Street Fifth Floor
New York, NY 10010
United States

Correspondence ID:   1-3BQR7II

RE:   Milly Rock Dance

Dear David Hecht:

We have received an application to register a claim to copyright in choreography for the work entitled
*Milly Rock Dance*. For the reasons discussed below, the Office refuses registration of this claim.

As an initial matter, the Office notes that on October 10, 2018 under service request number 1-
6882249391, the Office received a related choreographic claim by the same author and claimant entitled
*2 Milly Rock* requesting expedited handling on the basis of prospective litigation. The deposit submitted
with the October 10th application consists of a short video of approximately two dozen children
imitating the simple routine or social dance move being demonstrated by three people at the front of the
room. Notably, the video appears to be a demonstration of a particular social dance move, popularly
known as the *Milly Rock Dance*. *See Compendium* (*Third*) § 309.2 (noting that the Office may take
administrative notice of facts or matters known to the Office or the general public).

The Office expeditiously refused registration for this work in a letter dated October 16, 2018, because
the work did not constitute a choreographic work, but rather represented a simple dance routine. As the
legislative history of the 1976 Act states, choreography does not include social dance steps or simple
routines.   House Report 94-1476 at 53-54.

The current application for *Milly Rock Dance*, under service request number 1-7192939861, was sent
with a different deposit: a video of an individual on top of the roof of a parked car performing simple
dance movements in an improvisational manner, including the *2 Milly Rock* dance that had previously
been refused by the Office on October 16, 2018. The Office also takes notice that, unlike the earlier
submission that was claimed to be eligible for "special handling" due to prospective litigation, this
December 4th submission did not request special handling, and was filed the day before an infringement
suit was initiated. While the video submitted for registration with the December 4th application is
different and longer than the video submitted with the October 10th application, the Office finds that this
longer routine of improvisational dance movements does not constitute a work of choreography. The
movements represented in the video depict a simple routine made up of social dance steps and do not

David Hecht                                                                      1-3BQR7II

represent an integrated, coherent and expressive compositional whole and is thus not eligible for
copyright registration.

For copyright purposes, "choreography" is the composition and arrangement of a related series of dance
movements and patterns organized into an integrated, coherent and expressive whole. *See Horgan v.
Macmillan, Inc.*, 789 F.2d 157, 161 (2d Cir. 1986). Choreographic works are typically performed by
skilled dancers for an audience. By contrast, social dances, such as ballroom dances, line dances, and
similar movements are not created for professional dancers. They are instead intended to be performed
by the general public for their own enjoyment. For more information on registration of choreographic
works, please see *Compendium (Third)* § 805.

The Office finds that the video submitted with the December 4th application, depicting a social dance
move known as the *Milly Rock Dance*, does not support a claim in a choreographic work. For the
foregoing reasons, registration for *Milly Rock Dance*, service request 1-7192939861, must be refused. In
accordance with our practices, we will retain the application and deposit, and apply the fee towards
administrative costs.

This letter is for your information only; no response is necessary.


Sincerely,



Ed Bellafiore
Copyright Examiner, Performing Arts
Office of Registration Policy & Practice
United States Copyright Office
101 Independence Avenue SE
Washington, DC  20559-6222
www.copyright.gov


Enclosures:
   Reply Sheet



**United States Copyright Office**

Library of Congress · 101 Independence Avenue SE · Washington DC 20559-6000 · www.copyright.gov



**\* 1 - 3 B Q R 7 I I \***

# Return this sheet <u>if</u> you request reconsideration.

## How to request reconsideration:

- Send your request in writing. **Please note that your request must be postmarked (via the U.S. Postal Service) or dispatched (via commercial carrier, courier, or messenger) no later than three months after a refusal is issued.**
- Explain why the claim should be registered or why it was improperly refused.
- Enclose the required fee – see below.
- Address your request to:

   **RECONSIDERATION**
   **Copyright RAC Division**
   **P.O. Box 71380**
   **Washington, DC 20024-1380**

   **Note:** Include the Correspondence ID Number (see above) on the first page. Indicate either "First Reconsideration" or "Second Reconsideration" as appropriate on the subject line.

**Notification of decision:** The Copyright Office will send a written notification of its decision, including an explanation of its reasoning.

**First Request for Reconsideration:** The Registration Program Office considers the first request. If it upholds the refusal, you may submit a second request.

**Second Request for Reconsideration:** The Copyright Office Board of Review considers the second request. The Board consists of the Register of Copyrights and the General Counsel (or their respective designees), and a third member appointed by the Register. <u>The Board's decision constitutes final agency action.</u>

**FEES:**

| | |
|---|---|
| **First Request** | $250 per claim (i.e. the work(s) contained on one application) |
| **Second Request** | $500 per claim (i.e. the work(s) contained on one application) |

# EXHIBIT H



**United States Copyright Office**
Library of Congress · 101 Independence Avenue SE · Washington, DC 20559-6000 · www.copyright.gov

July 14, 2016

Puo-I "Bonnie" Lee
Bryan Cave LLP
1290 Avenue of the Americas
New York, NY 10104-2000

Re:  **Second Request for Reconsideration for Refusal to Register Five-Petal Flower;
      Correspondence ID: 1-N27VRB**

Dear Ms. Lee:

The Review Board of the United States Copyright Office ("Board") has considered
Pilobolus, Inc.'s ("Pilobolus") second request for reconsideration of the Registration Program's
refusal to register a choreography claim in the work titled "Five-Petal Flower" ("Work"). After
reviewing the application, deposit copy, and relevant correspondence, along with the arguments
in the second request for reconsideration, the Board affirms the Registration Program's denial of
registration.

## I.   DESCRIPTION OF THE WORK

The Work is a 14-second video recording in which human silhouettes appear against a
blue screen. On the left-hand side is the silhouette of a woman facing the right side of the
screen. On the right-hand side several people quickly tumble onto the stage, forming the
silhouette of a five-petal flower with their intertwined bodies. Simultaneously, the silhouette of
a giant hand moves from the left to the right side of the screen, and appears to pull at the top of
the five-petal flower. The hand then points at the flower formation in a common gesture that
means "stay put." The flower formation stays still for the remainder of the video. The hand
moves back to the left side of the screen and appears to pluck off the head of the woman, who
shrugs her arms and slightly kicks her legs outward as if stunned. Her hands reach for the
headless top of her body to feel for the head, and then return to her sides. The giant hand moves
over the woman's body and her head reappears; the hand moves again and most of her body
disappears underneath the hand. The woman remains near-motionless before the video abruptly
ends.

## II.  ADMINISTRATIVE RECORD

On June 20, 2013, Pilobolus filed an application to register a copyright claim in the
Work. In a September 17, 2013 letter, a Copyright Office registration specialist refused to
register the claim, finding that it "does not contain an amount of choreographic authorship

Puo-I "Bonnie" Lee                          2                          July 14, 2016
Bryan Cave LLP

substantial enough to warrant a claim to copyright in choreography" and noting that "[t]he
legislative history makes it clear that choreography does not include simple routines." Letter
from Micky Goldstein, Registration Specialist, to Puo-I "Bonnie" Lee, Bryan Cave, LLP (Sept.
17, 2013).

    In a letter dated November 4, 2013, Pilobolus requested that the Office reconsider its
initial refusal to register the Work. Letter from Bonnie Lee, Bryan Cave LLP, to U.S.
Copyright Office (Nov. 4, 2013) ("First Request"). After reviewing the Work in light of the
points raised in the First Request, the Office re-evaluated the claims and again concluded that
the Work "do[es] not contain a sufficient amount of choreographic authorship to support [a]
claim[] in copyright." Letter from Stephanie Mason, Attorney-Advisor, to Bonnie Lee, Bryan
Cave, LLP (Apr. 28, 2014).

    In a letter dated June 26, 2014, Pilobolus requested that, pursuant to 37 C.F.R. §
202.5(c), the Office reconsider for a second time its refusal to register the Work. Letter from
Bonnie Lee, Bryan Cave, LLP, to U.S. Copyright Office (June 26, 2014) ("Second Request").
In that letter, Pilobolus listed a number of awards and accolades it has received for its work,
which it describes as "a unique form of shadow-based choreography using proprietary
techniques for projecting, distorting and manipulating light to create silhouettes using human
bodies." Second Request at 2. Pilobolus argued that its work is "widely recognized as an
original and never-before-seen form of dance expression" that "employs the human body as
pure sculptural matter, with dancers linking and unlinking, twisting and tumbling to create an
ever-changing series of forms." Second Request at 2-3.

## III.   DECISION

### A.   *The Legal Framework - Originality*

    A work may be registered if it qualifies as an "original work[] of authorship fixed in
any tangible medium of expression." 17 U.S.C. § 102(a). In this context, the term "original"
consists of two components: independent creation and sufficient creativity. *See Feist Publ'ns,
Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). First, the work must have been
independently created by the author, *i.e.*, not copied from another work. *Id.* Second, the work
must possess sufficient creativity. *Id.* Only a modicum of creativity is necessary, but the
Supreme Court has ruled that some works (such as the alphabetized telephone directory at issue
in *Feist*) fail to meet even this low threshold. *Id.* The Court observed that "[a]s a constitutional
matter, copyright protects only those constituent elements of a work that possess more than a *de
minimis* quantum of creativity." *Id.* at 363. It further found that there can be no copyright in a
work in which "the creative spark is utterly lacking or so trivial as to be virtually nonexistent."
*Id.* at 359.

    The Office's regulations implement the longstanding requirement of originality set forth
in the Copyright Act and described in the *Feist* decision. *See, e.g.*, 37 C.F.R. § 202.1(a)
(prohibiting registration of "[w]ords and short phrases such as names, titles, slogans; familiar
symbols or designs; [and] mere variations of typographic ornamentation, lettering, or coloring");
*id.* § 202.10(a) (stating "to be acceptable as a pictorial, graphic, or sculptural work, the work
must embody some creative authorship in its delineation or form"). As applied to choreography,
the *Compendium of U.S. Copyright Office Practices, Third Edition*, explains,

Puo-I "Bonnie" Lee                                3                                July 14, 2016
Bryan Cave LLP

> Individual movements or dance steps by themselves are not copyrightable, such
> as the basic waltz step, the hustle step, the grapevine, or the second position in
> classical ballet.  Likewise, the U.S. Copyright Office cannot register short
> dance routines consisting of only a few movements or steps with minor linear
> or spatial variations, even if the routine is novel or distinctive.  The individual
> elements of a dance are not copyrightable for the same reason that individual
> words, numbers, notes, colors, or shapes are not protected by the copyright law.
> Individual dance steps and short dance routines are the building blocks of
> choreographic expression, and allowing copyright protection for these elements
> would impede rather than foster creative expression.

U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES §
805.5(A) (3d ed. 2014) ("COMPENDIUM (THIRD)") (citations omitted).

Some combinations of common or standard dance elements may contain sufficient
creativity with respect to how they are juxtaposed or arranged to support a copyright. *See
Horgan v. Macmillan, Inc.*, 789 F.2d 157, 161 (2d Cir. 1986) (explaining that "individual
[dance] steps [] may be utilized as the choreographer's basic material in much the same way
that words are the writer's basic material.") (quoting U.S. COPYRIGHT OFFICE, COMPENDIUM OF
U.S. COPYRIGHT OFFICE PRACTICES § 450.06 (2d ed. 1984) ("COMPENDIUM (SECOND)")).
Nevertheless, not every combination or arrangement will be sufficient to meet this test. *See
Feist,* 499 U.S. at 358 (finding the Copyright Act "implies that some 'ways' [of selecting,
coordinating, or arranging uncopyrightable material] will trigger copyright, but that others will
not").  A determination of copyrightability in the combination of standard elements depends on
whether the selection, coordination, or arrangement is done in such a way as to result in
copyrightable authorship. *Id.*; *see also Atari Games Corp. v. Oman,* 888 F.2d 878 (D.C. Cir.
1989).

A mere simplistic arrangement of non-protectable elements does not demonstrate the
level of creativity necessary to warrant protection.  For example, the United States District
Court for the Southern District of New York upheld the Copyright Office's refusal to register
simple designs consisting of two linked letter "C" shapes "facing each other in a mirrored
relationship" and two unlinked letter "C" shapes "in a mirrored relationship and positioned
perpendicular to the linked elements." *Coach Inc. v. Peters*, 386 F. Supp. 2d 495, 496 (S.D.N.Y.
2005).  Likewise, the Ninth Circuit has held that a glass sculpture of a jellyfish consisting of
clear glass, an oblong shroud, bright colors, vertical orientation, and the stereotypical jellyfish
form did not merit copyright protection. *See Satava v. Lowry*, 323 F. 3d 805, 811 (9th Cir.
2003).  The language in *Satava* is particularly instructive:

> It is true, of course, that a combination of unprotectable elements may
> qualify for copyright protection.  But it is not true that *any* combination of
> unprotectable elements automatically qualifies for copyright protection.  Our
> case law suggests, and we hold today, that a combination of unprotectable
> elements is eligible for copyright protection only if those elements are
> numerous enough and their selection and arrangement original enough that
> their combination constitutes an original work of authorship.

*Id.* (internal citations omitted).

Puo-I "Bonnie" Lee                              4                              July 14, 2016
Bryan Cave LLP

Finally, Copyright Office registration specialists (and the Board) do not make aesthetic judgments in evaluating the copyrightability of particular works. *See* COMPENDIUM (THIRD) § 310.2. The attractiveness of a design, the espoused intentions of the author, the design's visual effect or appearance, its symbolism, the time and effort it took to create, or the design's commercial success in the marketplace are not factors in determining whether a design is copyrightable. *See, e.g., Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239 (1903).

## B.  *Analysis of the Work*

After careful examination, the Board finds that the Work fails to satisfy the requirement of creative authorship in a choreographic work and thus is not copyrightable.

Here, it is undisputed that the Work is comprised of bodily movements and the largely static combination of several bodies into the shape of a flower. The question is whether the combination of the static portrayals and performative movements result in copyrightable choreography. The Board finds that, viewed as a whole, the individual movements collectively result in a 14-second routine that is *de minimis,* such that to "allow[] copyright protection for these elements would impede rather than foster creative expression." COMPENDIUM (THIRD) § 805.5(A). The tumbling sequence creating the five-petal flower formation and the reactions of the woman having her head "plucked off" are each comprised of simple gestures and movements. Similarly, the giant hand in silhouette that "grows" the "flower" and plucks and then replaces the woman's head uses very simple hand gestures to accomplish these acts: it pulls, points, plucks, and wiggles. It is true that, as explained above, the combination of simple movements may satisfy the requirement for copyrightable authorship if they are selected, coordinated, and/or arranged in a sufficiently creative manner. The Board finds, however, that viewed as a whole, the collection and arrangement of these simple movements are insufficient to enable copyright registration.

Pilobolus argues that "[a]pplicable legal authority does not require that choreography be of a certain length in order to qualify for copyright registration." Second Request at 2. While it is true there is no bright line test, the Office "cannot register short . . . routines consisting of only a few movements or steps with minor linear or spatial variations, even if the routine is novel or distinctive," because "[i]ndividual dance steps and short dance routines are the building blocks of choreographic expression, and allowing copyright protection for these elements would impede rather than foster creative expression." COMPENDIUM (THIRD) § 805.5(A) (citing *Horgan,* 789 F.2d at 161.

Pilobolus also asserts that the Work is copyrightable because it "can only be performed by dancers specifically trained for the work, because the work requires extraordinary physical strength." Second Request at 3. But the execution of the dancers is only one factor in determining whether a work contains copyrightable choreographic authorship. *See* COMPENDIUM (THIRD) § 805.2 (identifying six elements that may be found in choreographic works, including execution by skilled performers, but noting that "the presence or absence of a given element is not determinative of whether a particular dance constitutes choreography."). If a work lacks sufficient dance steps, movements and/or patterns it does not meet the test for a choreographic copyright claim, no matter the dancers' contributions. *See id.* § 805.1.

Puo-I "Bonnie" Lee            5          July 14, 2016
Bryan Cave LLP

       Finally, Pilobolus points out that its dance collective has received numerous accolades, and states that because the "Philobus style" employs a "never-before-seen form of dance expression," it has been praised as "not a typical dance company." Second Request at 1-3. But the Board may not consider Philobus' entire repertoire when evaluating the copyrightability of the brief sequence contained in the applied-for Work. Accordingly, the Board concludes that the Work does not possess the requisite amount of creative authorship to warrant copyright registration.

## IV.    CONCLUSION

       For the reasons stated herein, the Review Board of the United States Copyright Office affirms the refusal to register the copyright claim in the Work. Pursuant to 37 C.F.R. § 202.5(g), this decision constitutes final agency action in this matter.

BY: _____

Regan A. Smith
Copyright Office Review Board

Hecht Partners LLP
Kathryn Lee Boyd (SBN 189496)
6420 Wilshire Blvd., 13th Floor
Los Angeles, CA 90048

David L. Hecht (*Pro Hac Vice* forthcoming)
Maxim Price (*Pro Hac Vice* forthcoming)
125 Park Avenue, 25th Floor
New York, NY 10017
Tel: 212-851-6821

*Attorneys for Plaintiff Kyle Hanagami*

# THE UNITED STATES DISTRICT COURT FOR THE

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Kyle Hanagami, an individual,<br><br>Plaintiff,<br><br>v.<br><br>Epic Games, Inc., a North Carolina corporation; and Does 1 through 10, inclusive,<br><br>Defendants. | Case No.  22-CV-2063<br><br>COMPLAINT for:<br><br>1.  Direct Infringement of Copyright;<br>2.  Contributory Infringement of Copyright;<br>3.  Unfair Competition Under Cal. Bus. & Prof. Code § 17200, et seq.<br><br><br>Demand for Jury Trial |

**Complaint – Demand for Jury Trial**

Plaintiff Kyle Hanagami ("Plaintiff" or "Hanagami"), by and through his undersigned counsel at Hecht Partners LLP asserts the following claims against Defendant Epic Games, Inc. ("Epic") and Does 1 through 10 (collectively referred to as "Defendants"), and alleges as follows:

## I.   OVERVIEW

1.     Hanagami is the author and copyright claimant of Copyright Registration Number PA 2-277-839, which covers the "How Long Choreography" (the "Registered Choreography"), attached hereto as Exhibit A.  The Registered Choreography was completed in 2017 and first published by Hanagami on November 11, 2017 (on YouTube.com) as reflected in the Certificate of Registration (the "YouTube Video").  The YouTube Video depicting the Registered Choreography went viral after its release; it currently has nearly 36 million views as of the filing of this complaint.

2.     Through its unauthorized misappropriation of Hanagami's popular dance in its video game, Fortnite Battle Royale ("Fortnite"), Epic has unfairly profited from exploiting Hanagami's Registered Choreography.

3.     Defendants capitalized on the Registered Choreography's popularity, particularly with Hanagami's younger fans, by selling the Registered Choreography as an in-game purchase in Fortnite under the name "It's Complicated," which players can buy to customize their avatars for use in the game.  This dance was immediately recognized by players as Hanagami's Registered Choreography. Despite utilizing the Registered Choreography created and popularized by Hanagami, Epic did not credit Hanagami nor seek his consent to use, display, reproduce, sell, or create a derivative work based upon the Registered Choreography.

4.     Since being released in or around September 2017, Fortnite has become among the most popular video games ever with revenue far more than $10

- 1 -

billion. Indeed, Fortnite made approximately $5.1 billion in 2020. As a free-to-play game, Fortnite derives its sales exclusively through purchases from its marketplace that can be found in-game. Players pay real money for their virtual Fortnite characters to have outfits and be able to perform certain moves or dances. One such in-game-purchase that Epic makes available in the marketplace consists entirely of an inch-perfect copy of part of Hanagami's Registered Choreography. Epic should not be able to profit from Hanagami's fame and hard work by its intentional misappropriation of Hanagami's Registered Choreography. Hanagami seeks injunctive relief and damages, including, but not limited to, Epic's profits attributed to its improper use and sale of the Registered Choreography.

## II.     THE PARTIES

5.     Hanagami resides in Studio City, California.

6.     Epic is a North Carolina business corporation with its principal place of business at 620 Crossroads Boulevard, Cary, NC 27518. Epic is the creator and developer of the Fortnite video game franchise, which was first released in July 2017. Epic has offices in California and is registered as entity number C4262536.

7.     The true names and identities of the defendants herein sued as Does 1 through 10, inclusive, are unknown to Hanagami, who therefore sues those defendants by such fictitious names. When the true names of those defendants have been ascertained, Hanagami will amend this complaint accordingly. Each of the defendants aided and abetted and is responsible in some manner for the occurrences herein alleged, and Hanagami's injuries were proximately caused thereby. Defendants Epic and Does 1 through 10, inclusive, shall collectively be referred to as "Defendants."

8.     At all times herein mentioned, each of the defendants was acting as an agent, servant, employee or representative of defendants, and, in doing the things alleged in this Complaint, was acting within the course and scope of that agency,

- 2 -

service, employment, or joint venture.

### III.   SUBJECT MATTER JURISDICTION AND VENUE

9.    The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332 (diversity), and 28 U.S.C. § 1367 (supplemental jurisdiction).

10.    Venue is proper in this District under A) 28 U.S.C. § 1391(b)(2) (federal question jurisdiction), because a substantial part of the events or omissions giving rise to the claim occurred in this District; and B) 28 U.S.C. §§ 1391(b)(1) and (c) (personal jurisdiction), because all defendants are subject to personal jurisdiction in this State and at least one in this District.

### IV.   FACTUAL BACKGROUND

**A.    Kyle Hanagami and the Registered Choreography**

11.    Hanagami an eminent choreographer.  Based in Los Angeles, he has become one of the industry's most sought-after talents across nearly every medium, including world tours, music videos, television and film, live performances, commercials, and social media brand deals.  His creativity and unique take on choreography are highly recognizable.  Hangami's work has been utilized by some of the most well-known artists in the world, including Jennifer Lopez, Britney Spears, Justin Beiber, BlackPink, and NSYNC.

12.    In 2013, Dance Spirit Magazine named Hanagami "Hollywood's hottest up-and-coming choreographer."  Since that time, Hanagami has become one of Hollywood's most established choreographers.

13.    Hanagami has been on faculty at three of the top studios in Los Angeles, including the Debbie Reynolds Dance Studio, Movement Lifestyle, and the Edge Performing Arts Center.  His classes at those studios were awarded "Best Dance Class" by the Industry Dance Awards.  He has also taught masterclasses at Millennium Dance Complex.

- 3 -

14.    Outside of the studio, Hanagami has partnered with globally recognized brands like Nike, Disney, Google, Netflix, and Calvin Klein.

15.    Hanagami has also built an online empire with his numerous viral dance videos, including the YouTube Video featuring the Registered Choreography.   He holds the title of YouTube's most viewed choreography video of all time for his "Shape of You" dance class video, which currently stands at over 230 million views.  Hanagami's YouTube reach is at 4.54 million subscribers with over 857 million total video views as of the date of this filing.  Aside from YouTube, Kyle Hanagami is one of the most recognizable faces & names in choreography/dance within social media, with over 1.6 million Instagram followers and over 1.3 million TikTok followers.

16.    Hanagami created the Registered Choreography featured in the YouTube Video titled "CHARLIE PUTH – How Long | Kyle Hanagami Choreography."   (The title references singer Charlie Puth and his song "How Long," which plays in the background of the video.)   The video is available at: https://www.youtube.com/watch?v=iW2yUrXXRTI.    It was first published on November 11, 2017.

17.    The Registered Choreography exploded in popularity following the release of the YouTube Video.  To date, the video has received nearly 36 million views and the Registered Choreography continues to maintain its popularity.

**B.    Fortnite: The Most Popular Video Game In the World**

18.    Even prior to releasing Fortnite, which would become among the most popular and successful video games ever, Epic had already developed two popular video game franchises: Unreal and Gears of War. Since releasing the first Gears of War game in 2005, Epic released several subsequent Gears of War video games, and the franchise has made has made over $1 billion in total sales.

19.    In or around 2011, following the release of the third Gears of War

installment, Fortnite began from an Epic internal video game "hackathon," or a gathering of Epic developers to brainstorm ideas and create games in a short period. Although the Fortnite game was not developed during the hackathon, the idea to merge building games (*i.e.*, Minecraft) and shooter games (*i.e.*, Gears of War or Call of Duty) emerged during the hackathon.

20.     On or around July 2017, Epic released the initial version of Fortnite as a paid early-access video game. However, by September 2017, after PlayerUnknown's Battlegrounds—a game of the "battle royale" genre—became a worldwide success, Epic, within two months, added a "battle royale" mode and released Fortnite Battle Royale, a free-to-play battle royale third person shooting game on the Windows, macOS, PlayStation 4 and Xbox One platforms. Epic subsequently released Fortnite on the iOS, Nintendo and Android platforms on April 2, 2018, June 12, 2018, and August 9, 2018, respectively.

21.     Similar to PlayerUnknown's Battlegrounds, Fortnite utilizes the "battle royale" format where up to 100 players, alone, in pairs, or groups, compete to be the last player or group alive.  Fortnite now includes more than just battle royale combat and building play; Fortnite now provides other entertainment options like concerts. In 2019, an electronic music producer and DJ, Marshmello, performed at Fortnite's first-ever "virtual" concert at "Pleasant Park," a virtual location within Fornite.  In 2020, the official Fortnite account tweeted that "[o]ver 12.3 million concurrent players participated live in Travis Scott's Astronomical," which was described as "an all-time record."

22.     Epic has created a marketplace for entertainment content that happens to be within Fortnite. As a free-to-play video game, Epic allows players to download and play Fortnite for free. Fortnite is supported by in-game transactions where players can purchase virtual currency, called "Vinderbucks" or "V-Bucks." The players in turn use V-Bucks to purchase customizations in an electronic

- 5 -

marketplace for their in-game avatars.   These customizations include new characters, pickaxe modifications, glider skins, clothes, and emotes (movements or dances). Fortnite also sells "Battle Passes" or additional levels that allow you to unlock skins, gliders, and emotes unique to that Pass. Fortnite offers four pricing levels for purchasing V-Bucks:

> 1) 1,000 V-Bucks for $9.99;
>
> 2) 2,500 (+300 Bonus) V-Bucks for $24.99;
>
> 3) 6,000 (+1,500 Bonus) V-Bucks for $59.99; or
>
> 4) 10,000 (+3,500 Bonus) V-Bucks for $99.99.

23.     There are four types of emotes: common emotes, uncommon emotes, rare emotes, and epic emotes. The "rarer" the emote, the more expensive or harder it is to obtain. Uncommon emotes cost 200 V- Bucks. Rare emotes cost 500 V-Bucks. And epic emotes cost 800 V- Bucks.

24.     To start, Fortnite provides each player with one emote called "Dance Moves," a common emote, for no cost. Players can then obtain other emotes by purchasing and playing additional levels in Battle Passes (950 V-Bucks each) that come with emotes unique to that Pass, or by purchasing certain emotes directly with V-Bucks. On some occasions, Fortnite sells Battle Pass emotes directly, without requiring the player to purchase the Battle Pass.

25.     Emotes are sold in Fortnite's electronic marketplace.  It is like Amazon.com, but it only sells *virtual* products, like emotes, which only work in Fortnite's "metaverse."  Players can utilize emotes both in the battle royale and in concerts or other activities.

- 6 -

26. As depicted below, players can use U.S. Dollars to purchase virtual currency in the Fortnite electronic storefront:



27. The top of the screen above indicates several "tabs" that may be selected by players, including "Battle Pass," "Item Shop" and "Store." These features comprise the Fortnite electronic marketplace; they are different than the Fortnite Battle Royale itself, in which players can play the "game."

28. In the electronic marketplace, players can browse, or purchase, items (like emotes) in the Item Shop or view details about the current Battle Pass available for purchase. Players can select icons that represent virtual items that Epic has made available for purchase. For example, the following icon represented the It's Complicated dance emote that is at issue here.



- 7 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29.     Upon clicking this icon, the emote is demonstrated in the storefront on an avatar (which dances), similar to clothing being displayed on a mannequin.



30.     After viewing or purchasing items and customizing their avatars, players can proceed to play the battle royale game.  When a player's character is victorious, or otherwise, Fortnite permits the player to utilize an emote to convey a reaction.  Below is a screenshot of actual gameplay:



During concerts in Fortnite, players are also able to have their avatars perform the

- 8 -

emotes that they purchased.

31.    Emotes are incredibly popular and are fundamental to Fortnite's success.  Emotes are purchased, alongside clothing and skins, to personalize a players' Fortnite experience. Emotes have also become popular outside Fortnite and influence popular culture. Professional athletes in soccer and other sports have based their celebrations on dances that are sold in the Fortnite marketplace.  Young adults, teenagers, and kids also post videos of themselves on YouTube and social media performing emotes under various hashtags, including #fortnitedance or #fortnitevideos.  The original choreographer is not credited for the choreography misappropriated by Epic. Epic thus enjoys all of the commercial benefit of these public performances.

32.    Upon information and belief, Epic has created emotes by copying and coding dances and movements directly from popular videos, movies, and television shows without consent.  Epic does so by either tracing frames directly from the source material (in this case Hanagami's YouTube video) or directing performers to copy the movements from those videos for motion capture and coding.

33.    Epic has consistently sought to exploit entertainers and choreographers by copying their dances and movements. For example, Epic Donald Faison has accused epic of misappropriating his signature dance seen on the NBC television show Scrubs (named the "Dance Moves" emote), and, most pertinent here, Hanagami's Registered Choreography.  Upon information and belief, Epic did not seek consent nor authorization for the use of many of the choreographic movements that is has sold in its online marketplace as emotes over the years.

34.    In 2018, several lawsuits were filed against Epic in connection with its misappropriation of dances and movement in Fortnite.  There was an "outcry on social media," as recognized by Forbes contributor Oliver Herzfeld, who covered the litigations in a Forbes article titled, "Fortnite Sued Over Swiped Dance Move."

The article, which was published on December 11, 2018, concluded that, to a certain extent, the first of the artists to sue Epic, rapper 2 Milly, for misappropriation of his dance, had "already prevailed in the court of public opinion." The lawsuits alerted the public at large of the importance of copyright protection for choreography, which led choreographers like Hanagami to register the Registered Choreography.

35.    On information and belief, because of the lawsuits, Epic began to approach some artists about licensing choreography. However, on further information and belief, Epic typically approaches young and/or less sophisticated artists, like those who are catapulted to fame on social media platforms like TikTok, about licensing choreography for pennies on the dollar. Hanagami, a sophisticated businessman and established choreographer who is aware of the value of his choreography generally and the Registered Choreography specifically, was *never* approached by Epic about a license.

36.    Fortnite has brought Epic overwhelming success and billions of dollars in revenue. The game eclipsed 10 million players merely two weeks after its release; by July 2018, 125 million players were active. In November 2018, Bloomberg announced that Fortnite had 200 million player accounts across all platforms.

37.    Fortnite's popularity has translated into record sales for Epic in Fortnite's Item Shop. Analysts have estimated that since its release, Fortnite has generated between $1 billion to $2 billion in revenue through in-game purchases such as emotes. In May 2018, Fortnite broke its own record by generating approximately $318 million in revenue, the biggest month ever for a video game, let alone a free video game. In fact, nearly 80 million people played Fortnite in August 2018. In large part due to Fortnite's success, Epic's estimated valuation rose from about $825 million to about $5 billion in 2018. In April 2021, Epic announced

- 10 -

its equity valuation was a staggering $28.7 billion.  Yet despite all that money, Epic is unwilling to pay artists and creators like Hanagami their fair share for blatantly, knowingly, and willfully using their intellectual property.

**C.    Fortnite's Unauthorized Use of the Registered Choreography**

38.    On August 25, 2020, Fortnite released Chapter 2, Season 3 along with the "It's Complicated" emote.  On information and belief, "It's Complicated" is a reference to the difficulty of the choreography.

39.    The "It's Complicated" emote could be purchased for 500 V-Bucks when listed in the Item Shop.  If obtained or purchased, the Fortnite player's avatar can perform the choreography during Fortnite gameplay.

40.    Epic's "It's Complicated" emote contains a portion of Hanagami's Registered Choreography.  Specifically, the emote contains the most recognizable portion of Hanagami's Registered Choreography, the portion for the hook at the beginning of the chorus of the song, which repeats several times throughout the song.  Like the hook of a song, which in this case embodies the title of the song, the hook of a dance is the part that makes the performance catchy and memorable.

41.    Upon its release, the reaction from many players worldwide was immediate recognition of the "It's Complicated" emote as embodying the Registered Choreography. Because Epic did not even credit Hanagami, many players likely believed it was Epic's original creation.  For example, the "Seeq" channel on YouTube posted a video on August 25, 2020 titled, "ALL NEW Fortnite Dance Emotes in REAL LIFE 100% SYNCED!! (It's Complicated, Freewheelin'...)."  The "It's Complicated" emote is shown side-by-side with the Registered Choreography in Hanagami's YouTube Video.  The comparison video, which currently has nearly 60,000 views, is available at: https://www.youtube.com/watch?v=1ezCmAducBg.  The "It's Complicated" portion of the video begins at the 2:00 minute mark (despite being mis-labeled "Out

- 11 -

West," this portion of the video shows "It's Complicated" as referenced in the title of video).

42.     Upon information and belief, Epic intentionally developed the "It's Complicated" emote to duplicate the Registered Choreography.

43.     Epic's brazen infringement of the Registered Choreography is stunning.  A side-by-side comparison reveals the scope of the infringement:



- 12 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





- 13 -





- 14 -



44.     The lower left corner of each image indicates that the relative playback speed of the two videos was not altered (i.e., the tempo is the same in both the Registered Choreography and the emote).  Epic's infringing, unauthorized emote duplicates (without limitation) the footwork, movement of the limbs, movement of the hands and fingers, and head and shoulder movement covered by the Registered Choreography.

45.     Epic did not seek to obtain Hanagami's authorization or consent for its use of the Registered Choreography for the "It's Complicated" emote.

46.     Moreover, Hanagami did not give Epic express or implied consent for its use of the choreography for the "It's Complicated" emote. Epic also did not compensate Hanagami for its use of his Registered Choreography for the "It's Complicated" emote.

47.     Upon information and belief, Epic added the "It's Complicated" emote to intentionally exploit the popularity of Hanagami and his Registered Choreography without providing Hanagami any form of compensation.

- 15 -

48.     Epic profited from its improper misappropriation of the Registered Choreography, *inter alia*:  1) selling the infringing "It's Complicated" emote directly to players; 2) advertising the "It's Complicated" emote to attract additional players, including Hanagami's fans or those persons familiar with the Registered Choreography to play Fortnite and make in-game purchases; 4) staying relevant to its current players to incentivize those players to continue playing Fortnite; 5) impliedly representing that Hanagami consented to Epic's use of the Registered Choreography; 6) erroneously cause the association of the "It's Complicated" with the Registered Choreography; 7) creating the false impression that Hanagami endorsed Fortnite; and 8) inducing and/or contributing to Fortnite players' avatars performing the Registered Choreography.

49.     Upon information and belief, Epic uses the Registered Choreography, and other dances, to create the false impression that Epic started these dances or crazes or that the artist who created them is endorsing the game. Accordingly, upon information and belief, Epic actively and knowingly directs, causes, induces, and encourages others, including, but not limited to, its players, designers, suppliers, distributors, resellers, software developers, and repair providers, to misappropriate Hanagami's Registered Choreography.

50.     Epic can hire its own choreographers and sell dances in its Item Shop that were created by those choreographers. Epic explicitly chose to find a video made by a famous choreographer and lift the most memorable portion of his choreography and sell it.  They did this because it provided Epic with a commercial advantage to sell a choreography that was already famous and exceptionally good.

51.     Hanagami did not consent or approve Epic's use of his Registered Choreography for the "It's Complicated" emote. Other prominent artists, including Chancelor Bennett, known as Chance the Rapper, have also publicly disapproved of Epic's practices, and advocated for Epic sharing profits with the artists that

- 16 -

created the dances Epic has misappropriated.

52.    Hanagami thus bring this lawsuit to prevent Fortnite from further using his Registered Choreography, and to recover the profits rightfully owed to him.

## FIRST CAUSE OF ACTION

### (For Direct Infringement of Copyright Against All Defendants)

53.    Hanagami hereby repeats and realleges the allegations set forth in the preceding paragraphs, above, as though fully set forth herein.

54.    On or around November 11, 2017, a video titled "CHARLIE PUTH – How Long | Kyle Hanagami Choreography" was published to YouTube where it was able to be accessed by millions of people.  The YouTube Video shows the Registered Choreography.

55.    Hanagami is the undisputed creator of the wildly popular and immediately recognizable Registered Choreography. Hanagami's video fixed the Registered Choreography in a tangible medium.

56.    Hanagami applied for a copyright registration on the choreography depicted in the YouTube Video on February 18, 2021, under the title "How Long Choreography."  Hanagami deposited a copy of the YouTube Video with the application.  The Copyright Office registered the choreography.  Registration No. PA 2-277-839 was granted an effective date of registration of February 20, 2021 with a registration decision date of February 22, 2021.

57.    Defendants have infringed (and may continue to infringe) Hanagami's Registered Choreography by (1) selling the "It's Complicated" emote as an in-game purchase that, if purchased, a player can use to make his or her avatar perform during Fortnite gameplay; (2) copying the "It's Complicated" emote to its servers and/or causing the emote to be copied to other devices for access and performance by players' avatars; (3) substantially copying the Registered Choreography in

- 17 -

digital form to the Fortnite game; (4) advertising the Registered Choreography in its electronic storefront and promotional materials; and (5) creating the "It's Complicated" emote as a derivative work of the Registered Choreography using a copy of Hanagami's YouTube Video.

58.    Defendants did not seek to obtain Hanagami's permission for its use of the Registered Choreography for the "It's Complicated" emote. Nor have Defendants compensated or credited Hanagami for their use of the Registered Choreography.

59.    Moreover, Defendants actively and knowingly directed, caused, induced, and encouraged others, including, but not limited to, its players, designers, suppliers, distributors, resellers, software developers, and repair providers, to misappropriate Hanagami's Registered Choreography.

60.    Defendants have not transformed the Registered Choreography at all; "It's Complicated" is comprised of the Registered Choreography and it is sold as an individual item.

61.    Defendants make no commentary or satire with respect to the Registered Choreography, they merely use the choreography for their own profit.

62.    Defendants used Hanagami's YouTube video to create the "It's Complicated" emote knowing full well that it did not belong to Defendants.

63.    Defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of and with indifference to Plaintiff's rights.

64.    Defendants' willful and continued unauthorized use of the Registered Choreography for commercial gain has caused and will continue to cause confusion and mistake by leading the public to erroneously associate the "It's Complicated" emote offered by Epic with the Registered Choreography in violation of 17 U.S.C. §§ 101 et seq.

65.    As a result of Defendants' conduct, Hanagami has been damaged by

- 18 -

being precluded from receiving his rightful share of the profits earned by Epic for its improper and unlicensed use of Hanagami's Registered Choreography in Fortnite.

66.     Hanagami is entitled to permanent injunctive relief preventing Defendants, and their officers, agents, and employees, and all related persons from further using the Registered Choreography and engaging in other acts in violation of copyright law.

67.     As a direct and proximate result of Defendants' infringement of Plaintiff's copyrights and exclusive rights under copyright, Hanagami is also entitled to recover damages, including attorneys' fees, and any profits obtained by Defendants as a result of the infringements alleged above, in an amount according to proof to be determined at the time of trial.

68.     In doing the acts herein alleged, Defendants acted fraudulently, willfully, or with malice, and Hanagami is therefore entitled to punitive damages according to proof at the time of trial.

## SECOND CAUSE OF ACTION

### (For Contributory Infringement of Copyright Against All Defendants)

69.     Hanagami hereby repeats and realleges the allegations set forth in the preceding paragraphs, above, as though fully set forth herein.

70.     On or around November 11, 2017, a video titled "CHARLIE PUTH – How Long | Kyle Hanagami Choreography" was published to YouTube where it was able to be accessed by millions of people.  The YouTube Video shows the Registered Choreography.

71.     Hanagami is the undisputed creator of the wildly popular and immediately recognizable Registered Choreography. Hanagami's video fixed the Registered Choreography in a tangible medium.

72.     Hanagami applied for a copyright registration on the choreography

- 19 -

depicted in the YouTube Video on February 18, 2021, under the title "How Long Choreography."   Hanagami deposited a copy of the YouTube Video with the application.   The Copyright Office registered the choreography within days. Registration No. PA 2-277-839 was granted an effective date of registration of February 20, 2021 with a registration decision date of February 22, 2021.

73.     Defendants have infringed (and may continue to infringe) Hanagami's Registered Choreography by (1) selling the "It's Complicated" emote as an in-game purchase that, if purchased, a player can use to make his or her avatar perform during Fortnite gameplay; (2) copying the "It's Complicated" emote to its servers and/or causing the emote to be copied to other devices for access and performance by players' avatars; (3) substantially copying the Registered Choreography in digital form to the Fortnite game; (4) advertising the Registered Choreography in its electronic storefront and promotional materials; and (5) creating the "It's Complicated" emote as a derivative work of the Registered Choreography.

74.     By providing the "It's Complicated" emote necessary for its players to commit copyright infringement, Defendants have and continues to materially contribute to the unauthorized reproductions and distributions by its players of the Registered Choreography.

75.     Defendants did not seek to obtain Hanagami's permission for its use of the Registered Choreography for the "It's Complicated" emote. Nor have Defendants compensated or credited Hanagami for their use of the Registered Choreography.

76.     Moreover, Defendants actively and knowingly directed, caused, induced, and encouraged others, including, but not limited to, its players, designers, suppliers, distributors, resellers, software developers, and repair providers, to misappropriate Hanagami's Registered Choreography.

77.     Defendants' acts of infringement have been willful, intentional, and

- 20 -

purposeful, in disregard of and with indifference to Plaintiff's rights.

78.    Defendants' willful and continued unauthorized use of the Registered Choreography for commercial gain has caused and will continue to cause confusion and mistake by leading the public to erroneously associate the "It's Complicated" emote offered by Epic with the Registered Choreography in violation of 17 U.S.C. §§ 101 et seq.

79.    As a result of Defendants' conduct, Hanagami has been damaged by being precluded from receiving his rightful share of the profits earned by Epic for its improper and unlicensed use of Hanagami's Registered Choreography in Fortnite.\

80.    Hanagami is entitled to permanent injunctive relief preventing Defendants, and their officers, agents, and employees, and all related persons from further using the Registered Choreography and engaging in other acts in violation of copyright law.

81.    As a direct and proximate result of Defendants' infringement of Plaintiff's copyright and exclusive rights under copyright, Hanagami is also entitled to recover damages, including attorneys' fees, and any profits obtained by Defendants as a result of the infringements alleged above, in an amount according to proof to be determined at the time of trial.

82.    In doing the acts herein alleged, Defendants acted fraudulently, willfully, and with malice, and Hanagami is therefore entitled to punitive damages according to proof at the time of trial.

**THIRD CAUSE OF ACTION**

**(Unfair Competition Under Cal. Bus. & Prof. Code § 17200)**

83.    Hanagami hereby repeats and realleges the allegations set forth in the preceding paragraphs, above, as though fully set forth herein.

84.    By misappropriating Hanagami's dance and through the improper

- 21 -

copying and use of the Registered Choreography, Defendants have engaged in business acts or practices that constitute unfair competition in violation of Cal. Bus. & Prof. Code. § 17200.

85.   As a result of Defendants' violations, Defendants have unjustly enriched themselves by: (1) selling the "It's Complicated" emote as an in-game purchase that, if purchased, a player can use to make his or her avatar perform during Fortnite gameplay; (2) copying the "It's Complicated" emote to its servers and/or causing the emote to be copied to other devices for access and performance by players' avatars; (3) substantially copying the Registered Choreography in digital form to the Fortnite game; (4) advertising the Registered Choreography in its electronic storefront and promotional materials; and (5) creating the "It's Complicated" emote as a derivative work of the Registered Choreography.

86.   As a result of Defendants' conduct, Hanagami has been damaged by being precluded from receiving his rightful share of the profits from selling or licensing his exclusive copyright.

87.   Hanagami is entitled to permanent injunctive relief preventing Defendants, and their officers, agents, and employees, and all related persons from further using his Registered Choreography.

88.   Hanagami is also entitled to recover damages, including any profits obtained by Defendants as a result of the infringements alleged above, in an amount according to proof to be determined at the time of trial.

**PRAYER FOR RELIEF**

As to the First Cause of Action:

1.   For an order restraining Defendants from using, selling, or displaying Hanagami's Registered Choreography in its Fortnite game;

2.   For an award of damages according to proof;

3.   For punitive and/or exemplary damages;

- 22 -

4.      For attorney's fees and costs;

As to the Second Cause of Action:

5.      For an order restraining Defendants from using, selling, or displaying Hanagami's copyright in its Fortnite game;

6.      For an award of damages according to proof;

7.      For punitive and/or exemplary damages;

8.      For attorney's fees and costs;

As to the Third Cause of Action:

9.      For an order restraining Defendants from using, selling, or displaying Hanagami's Registered Choreography in its Fortnite game;

10.     For an award of damages according to proof;

11.     For punitive and/or exemplary damages;

12.     For attorneys' fees and costs;

As to All Causes of Action:

13.     For costs of suit; and

14.     For such other and further relief as the Court may deem proper.


Dated: March 29, 2022                    Respectfully Submitted,


HECHT PARTNERS LLP



By: */s/Kathryn Lee Boyd*

*Attorneys for Plaintiff Kyle Hanagami*

- 23 -

# EXHIBIT A

**Registration #:**   PA0002277839
**Service Request #:**   1-10114594561

## Mail Certificate

Making Moves Productions, Inc
Kyle Alexander Hanagami
4026 Fairway Ave
Studio City, CA 91604 United States

**Priority:**   Special Handling          **Application Date:**   February 18, 2021

## Correspondent

**Registration Number**

# PA 2-277-839

**Effective Date of Registration:**
February 20, 2021
**Registration Decision Date:**
February 22, 2021

## Title

|  |  |
|---|---|
| **Title of Work:** | How Long Choreography |

## Completion/Publication

|  |  |
|---|---|
| **Year of Completion:** | 2017 |
| **Date of 1st Publication:** | November 11, 2017 |
| **Nation of 1st Publication:** | United States |

## Author

|  |  |
|---|---|
| • **Author:** | Kyle Alexander Hanagami |
| **Author Created:** | Choreographic |
| **Work made for hire:** | No |
| **Citizen of:** | United States |

## Copyright Claimant

|  |  |
|---|---|
| **Copyright Claimant:** | Kyle Hanagami |
|  | 4026 Fairway Ave, Studio City, CA, 91604, United States |

## Limitation of  copyright claim

|  |  |
|---|---|
| **Material excluded from this claim:** | music |
| **New material included in claim:** | Choreography |

## Certification

|  |  |
|---|---|
| **Name:** | Kyle Hanagami |
| **Date:** | February 18, 2021 |

Page 1 of 1

Name Kathryn Lee Boyd (SBN 189496)

Address 6420 Wilshire Blvd., 14th Floor

City, State, Zip Los Angeles, CA 90048

Phone 212-851-6821

Fax

E-Mail lboyd@hechtpartners.com

☐ FPD   ☐ Appointed   ☐ CJA   ☐ Pro Per   ☒ Retained

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Kyle Hanagami, an individual,

PLAINTIFF(S),

v.

Epic Games, Inc., a North Carolina corporation; and Does 1 through 10, inclusive,

DEFENDANT(S).

CASE NUMBER:

2:22-cv-02063-SVW-MRWx

**NOTICE OF APPEAL**

NOTICE IS HEREBY GIVEN that _____ Kyle Hanagami _____ hereby appeals to

*Name of Appellant*

the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☒ Order (specify):

   Granting Motion to Dismiss

☐ Judgment (specify):


☐ Other (specify):


Imposed or Filed on ___ August 24, 2022 ___. Entered on the docket in this action on August 24, 2022 at ECF 45 .

A copy of said judgment or order is attached hereto.

9/23/2022

Date

/s/ Kathryn Lee Boyd

Signature
☐ Appellant/ProSe   ☒ Counsel for Appellant   ☐ Deputy Clerk

**Note:**   The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party.  Also, if not electronically filed in a criminal case,  the Clerk shall be furnished a sufficient number of copies of the Notice of  Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
### CIVIL DOCKET FOR CASE #: 2:22-cv-02063-SVW-MRW

Kyle Hanagami v. Epic Games, Inc. et al
Assigned to: Judge Stephen V. Wilson
Referred to: Magistrate Judge Michael R. Wilner
Case in other court: 9th CCA, 22-55890
Cause: 17:101 Copyright Infringement

Date Filed: 03/29/2022
Date Terminated: 10/03/2022
Jury Demand: Plaintiff
Nature of Suit: 820 Copyright
Jurisdiction: Federal Question

| Date Filed | # | Docket Text |
|---|---|---|
| 03/29/2022 | 1 | COMPLAINT with filing fee previously paid ($402 paid on 03/29/2022, receipt number ACACDC-33025216), filed by Plaintiff Kyle Hanagami. (Attachments: # 1 Exhibit A - Copyright Registration PA 2-277-839) (Attorney Kathryn Lee Boyd added to party Kyle Hanagami(pty:pla))(Boyd, Kathryn) (Entered: 03/29/2022) |
| 03/29/2022 | 2 | CIVIL COVER SHEET filed by Plaintiff Kyle Hanagami. (Boyd, Kathryn) (Entered: 03/29/2022) |
| 03/29/2022 | 3 | Request for Clerk to Issue Summons on Complaint (Attorney Civil Case Opening), 1 filed by Plaintiff Kyle Hanagami. (Boyd, Kathryn) (Entered: 03/29/2022) |
| 03/29/2022 | 4 | REPORT ON THE FILING OF AN ACTION regarding a copyright (Initial Notification) filed by Kyle Hanagami. (Boyd, Kathryn) (Entered: 03/29/2022) |
| 03/29/2022 | 5 | NOTICE of Interested Parties filed by Plaintiff Kyle Hanagami, identifying that there are no parties known to Plaintiff that have a pecuniary interest in the outcome of this case.. (Boyd, Kathryn) (Entered: 03/29/2022) |
| 03/29/2022 | 6 | NOTICE OF MOTION AND MOTION of Non-Resident Attorney David L. Hecht to Appear Pro Hac Vice on behalf of Plaintiff Kyle Hanagami (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-33025574) filed by Plaintiff Kyle Hanagami. (Attachments: # 1 Proposed Order) (Boyd, Kathryn) (Entered: 03/29/2022) |
| 03/29/2022 | 7 | NOTICE OF ASSIGNMENT to District Judge Stephen V. Wilson and Magistrate Judge Michael R. Wilner. (ghap) (Entered: 03/29/2022) |
| 03/29/2022 | 8 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (ghap) (Entered: 03/29/2022) |
| 03/29/2022 | 9 | Notice to Counsel Re Consent to Proceed Before a United States Magistrate Judge. (ghap) (Entered: 03/29/2022) |
| 03/29/2022 | 10 | 21 DAY Summons Issued re Complaint (Attorney Civil Case Opening), 1 as to Defendant Epic Games, Inc. (ghap) (Entered: 03/29/2022) |
| 03/29/2022 | 11 | NOTICE OF PRO HAC VICE APPLICATION DUE for Non-Resident Attorney David L Hecht on behalf on Plaintiff. A document recently filed in this case lists you as an out-of-state attorney of record. However, the Court has not been able to locate any record that you are admitted to the Bar of this Court, and you have not filed an application to appear Pro Hac Vice in this case. Accordingly, within 5 business days of the date of this notice, you must either (1) have your local counsel file an application to appear Pro Hac Vice (Form G- |

| | | |
|---|---|---|
| | | 64) and pay the applicable fee, or (2) complete the next section of this form and return it to the court at cacd_attyadm@cacd.uscourts.gov. You have been removed as counsel of record from the docket in this case, and you will not be added back to the docket until your Pro Hac Vice status has been resolved. (ghap) (Entered: 03/29/2022) |
| 03/29/2022 | [12](#) | NOTICE OF PRO HAC VICE APPLICATION DUE for Non-Resident Attorney Maxim Price on behalf on Plaintiff. A document recently filed in this case lists you as an out-of-state attorney of record. However, the Court has not been able to locate any record that you are admitted to the Bar of this Court, and you have not filed an application to appear Pro Hac Vice in this case. Accordingly, within 5 business days of the date of this notice, you must either (1) have your local counsel file an application to appear Pro Hac Vice (Form G-64) and pay the applicable fee, or (2) complete the next section of this form and return it to the court at cacd_attyadm@cacd.uscourts.gov. You have been removed as counsel of record from the docket in this case, and you will not be added back to the docket until your Pro Hac Vice status has been resolved. (ghap) (Entered: 03/29/2022) |
| 03/30/2022 | [13](#) | NOTICE of Deficiency in Electronically Filed Pro Hac Vice Application RE: NOTICE OF MOTION AND MOTION of Non-Resident Attorney David L. Hecht to Appear Pro Hac Vice on behalf of Plaintiff Kyle Hanagami (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-33025574) [6](#) . The following error(s) was/were found: Incorrect event selected. Correct event is Appear Pro Hac Vice (G-64) Other error(s) with document(s): Document is not a Noticed Motion, but an Application. Please note DJ and MJ reassignment. (lt) (Entered: 03/30/2022) |
| 04/04/2022 | [14](#) | NEW CASE ORDER upon filing of the complaint by Judge Stephen V. Wilson. (pk) (Entered: 04/04/2022) |
| 04/05/2022 | [15](#) | Corrected APPLICATION of Non-Resident Attorney David L. Hecht to Appear Pro Hac Vice on behalf of Plaintiff Kyle Hanagami (Pro Hac Vice Fee - $500 Previously Paid on 3/29/2022, Receipt No. ACACDC-33025574) filed by Plaintiff Kyle Hanagami. (Attachments: # [1](#) Proposed Order) (Boyd, Kathryn) (Entered: 04/05/2022) |
| 04/05/2022 | [16](#) | APPLICATION of Non-Resident Attorney Maxim Price to Appear Pro Hac Vice on behalf of Plaintiff Kyle Hanagami (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-33076178) filed by Plaintiff Kyle Hanagami. (Attachments: # [1](#) Proposed Order) (Boyd, Kathryn) (Entered: 04/05/2022) |
| 04/06/2022 | [17](#) | NOTICE of Deficiency in Electronically Filed Pro Hac Vice Application RE: APPLICATION of Non-Resident Attorney Maxim Price to Appear Pro Hac Vice on behalf of Plaintiff Kyle Hanagami (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-33076178) [16](#) , Corrected APPLICATION of Non-Resident Attorney David L. Hecht to Appear Pro Hac Vice on behalf of Plaintiff Kyle Hanagami (Pro Hac Vice Fee - $500 Previously Paid on 3/29/2022, Receipt No. ACACDC-33025574) [15](#) . The following error(s) was/were found: Case information is incomplete. DJ and MJ initials missing on application and proposed order. (lt) (Entered: 04/06/2022) |
| 04/07/2022 | [18](#) | Corrected APPLICATION of Non-Resident Attorney David L. Hecht to Appear Pro Hac Vice on behalf of Plaintiff Kyle Hanagami (Pro Hac Vice Fee - $500 Previously Paid on 3/29/2022, Receipt No. ACACDC-33025574) filed by Plaintiff Kyle Hanagami. (Attachments: # [1](#) Proposed Order) (Hecht, David) (Entered: 04/07/2022) |
| 04/07/2022 | [19](#) | Corrected APPLICATION of Non-Resident Attorney Maxim Price to Appear Pro Hac Vice on behalf of Plaintiff Kyle Hanagami (Pro Hac Vice Fee - $500 Previously Paid on 4/5/2022, Receipt No. ACACDC-33076178) filed by Plaintiff Kyle Hanagami. (Attachments: # [1](#) Proposed Order) (Hecht, David) (Entered: 04/07/2022) |
| 04/07/2022 | [20](#) | PROOF OF SERVICE Executed by Plaintiff Kyle Hanagami, upon Defendant Epic Games, Inc. served on 4/6/2022, answer due 4/27/2022. Service of the Summons and Complaint |

| | | |
|---|---|---|
| | | were executed upon Leeza Puckett, Intake Specialist, CT Corporation System, Registered Agent, authorized to accept service under F.R.C.P. Rule 4 in compliance with Federal Rules of Civil Procedure by personal service.Original Summons NOT returned. (Hecht, David) (Entered: 04/07/2022) |
| 04/07/2022 | 21 | ORDER by Judge Stephen V. Wilson Granting Application of Non-Resident Attorney David L. Hecht to Appear Pro Hac Vice on behalf of Plaintiff Kyle Hanagami, designating Kathryn Lee Boyd as local counsel 18 . (gk) (Entered: 04/07/2022) |
| 04/07/2022 | 22 | ORDER by Judge Stephen V. Wilson Granting Application of Non-Resident Attorney Maxim Price to Appear Pro Hac Vice on behalf of Plaintiff Kyle Hanagami, designating Kathryn Lee Boyd as local counsel 19 . (gk) (Entered: 04/07/2022) |
| 04/22/2022 | 23 | NOTICE of Appearance filed by attorney Yungmoon Chang on behalf of Defendant Epic Games, Inc. (Attorney Yungmoon Chang added to party Epic Games, Inc.(pty:dft))(Chang, Yungmoon) (Entered: 04/22/2022) |
| 04/22/2022 | 24 | APPLICATION of Non-Resident Attorney Dale M. Cendali to Appear Pro Hac Vice on behalf of Defendant Epic Games, Inc. (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-33178815) filed by Defendant Epic Games, Inc.. (Attachments: # 1 Certificate of Good Standing, # 2 Proposed Order) (Chang, Yungmoon) (Entered: 04/22/2022) |
| 04/22/2022 | 25 | APPLICATION of Non-Resident Attorney Joshua L. Simmons to Appear Pro Hac Vice on behalf of Defendant Epic Games, Inc. (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-33178862) filed by Defendant Epic Games, Inc.. (Attachments: # 1 Certificate of Good Standing, # 2 Proposed Order) (Chang, Yungmoon) (Entered: 04/22/2022) |
| 04/22/2022 | 26 | STIPULATION Extending Time to Answer the complaint as to Epic Games, Inc. answer now due 5/27/2022, re Complaint (Attorney Civil Case Opening), 1 filed by Defendant Epic Games, Inc..(Chang, Yungmoon) (Entered: 04/22/2022) |
| 04/22/2022 | 27 | NOTICE of Interested Parties filed by Defendant Epic Games, Inc., identifying Plaintiff Kyle Hanagami, Epic Games, Tencent Holdings, Ltd., AIG Specialty Insurance Company and Indian Harbor Insurance Company. (Chang, Yungmoon) (Entered: 04/22/2022) |
| 04/27/2022 | 28 | ORDER by Judge Stephen V. Wilson: granting 24 Non-Resident Attorney Dale M. Cendali APPLICATION to Appear Pro Hac Vice on behalf of Epic Games, Inc., designating Yungmoon Chang as local counsel. (lom) (Entered: 04/28/2022) |
| 04/27/2022 | 29 | ORDER by Judge Stephen V. Wilson: granting 25 Non-Resident Attorney Joshua L. Simmons APPLICATION to Appear Pro Hac Vice on behalf of Epic Games, Inc., designating Yungmoon Chang as local counsel. (lom) (Entered: 04/28/2022) |
| 05/27/2022 | 30 | NOTICE OF MOTION AND MOTION to Dismiss Case filed by Defendant Epic Games, Inc.. (Attachments: # 1 Proposed Order) (Cendali, Dale) (Entered: 05/27/2022) |
| 05/27/2022 | 31 | MEMORANDUM in Support of NOTICE OF MOTION AND MOTION to Dismiss Case 30 filed by Defendant Epic Games, Inc.. (Cendali, Dale) (Entered: 05/27/2022) |
| 05/27/2022 | 32 | REQUEST FOR JUDICIAL NOTICE re NOTICE OF MOTION AND MOTION to Dismiss Case 30 filed by Defendant Epic Games, Inc.. (Cendali, Dale) (Entered: 05/27/2022) |
| 05/27/2022 | 33 | DECLARATION of Dale M. Cendali in support of NOTICE OF MOTION AND MOTION to Dismiss Case 30 filed by Defendant Epic Games, Inc.. (Attachments: # 1 Exhibit A - Physical Exhibit - CHARLIE PUTH - How Long_Kyle Hanagami Choreography, # 2 Exhibit B - Physical Exhibit - INGAME RECORDING - It's Complicated Emote, # 3 Exhibit C - Makanani Photo and Nohe Artwork from Reece v Island Treasures Art Gallery, # 4 Exhibit D - Redd v Epic Dkt. 35-7 - Copyright Correspondence, # 5 Exhibit E - Redd v |

| | | |
|---|---|---|
| | | Epic Dkt. 35-7 - Copyright Office Public Catalog Entry, # 6 Exhibit F - Ribeiro v Epic Dkt. 23-8 - Copyright Correspondence, # 7 Exhibit G - Ferguson v Epic Dkt. 59-3 - Copyright Correspondence, # 8 Exhibit H - Pilobolus Letter)(Cendali, Dale) (Entered: 05/27/2022) |
| 05/27/2022 | 34 | NOTICE of Manual Filing filed by Defendant Epic Games, Inc. of Video Exhibits. (Cendali, Dale) (Entered: 05/27/2022) |
| 05/27/2022 | 35 | PROOF OF SERVICE filed by Defendant Epic Games, Inc., *of Exhibits A and B to 33 Declaration of Dale M. Cendali* served on May 27, 2022. (Cendali, Dale) (Entered: 05/27/2022) |
| 05/27/2022 | 36 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Request for Judicial Notice 32 . The following error(s) was/were found: Incorrect event selected. Correct event to be used is: (Motions and Related Filings) Request for Judicial Notice. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (aco) (Entered: 05/31/2022) |
| 05/31/2022 | 37 | SCHEDULING NOTICE re: MOTION to Dismiss Case 30 - The motion is accepted as filed, with the hearing set for 6/27/2022 at 01:30 PM before Judge Stephen V. Wilson. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (pc) TEXT ONLY ENTRY (Entered: 05/31/2022) |
| 06/06/2022 | 38 | NOTICE of Manual Filing filed by Plaintiff Kyle Hanagami of Exhibits 1 and 2 to the Declaration of David L. Hecht. (Hecht, David) (Entered: 06/06/2022) |
| 06/06/2022 | 39 | MEMORANDUM in Opposition to NOTICE OF MOTION AND MOTION to Dismiss Case 30 filed by Plaintiff Kyle Hanagami. (Hecht, David) (Entered: 06/06/2022) |
| 06/06/2022 | 40 | REQUEST FOR JUDICIAL NOTICE *re. Exhibit 1 and Exhibit 2 to the Hecht Declaration* filed by Plaintiff Kyle Hanagami. (Hecht, David) (Entered: 06/06/2022) |
| 06/06/2022 | 41 | DECLARATION of David L. Hecht In Support of Plaintiff's Opposition to NOTICE OF MOTION AND MOTION to Dismiss Case 30 filed by Plaintiff Kyle Hanagami. (Attachments: # 1 Exhibit 1 - It's Complicated Emote _ Fortnite Battle Royale Youtube Video, # 2 Exhibit 2 - Fortnite Infringement of Kyle Hanagami Choreography Youtube Video)(Hecht, David) (Entered: 06/06/2022) |
| 06/06/2022 | 42 | PROOF OF SERVICE filed by Plaintiff Kyle Hanagami, *re. Exhibit 1 and Exhibit 2 to the Hecht Declaration* served on June 6, 2022. (Hecht, David) (Entered: 06/06/2022) |
| 06/13/2022 | 43 | REPLY in support of NOTICE OF MOTION AND MOTION to Dismiss Case 30 filed by Defendant Epic Games, Inc.. (Cendali, Dale) (Entered: 06/13/2022) |
| 06/23/2022 | 44 | SCHEDULING NOTICE-IN CHAMBERS ORDER/TEXT ONLY ENTRY by Judge Stephen V. Wilson re: MOTION to Dismiss Case filed by Defendant Epic Games, Inc. 30 - The motion is submitted. Order to issue. The hearing previously scheduled for 06/27/2022 at 1:30 p.m. is vacated and off-calendar. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (pc) TEXT ONLY ENTRY (Entered: 06/23/2022) |
| 08/24/2022 | 45 | MINUTES ORDER GRANTING MOTION TO DISMISS 30 by Judge Stephen V. Wilson. Defendant's motion to dismiss is GRANTED.; granting 30 MOTION to Dismiss Case. (SEE DOCUMENT FOR FURTHER DETAILS). (aco) (Entered: 08/25/2022) |
| 09/23/2022 | 46 | NOTICE OF APPEAL to the 9th Circuit Court of Appeals filed by Plaintiff Kyle Hanagami. Appeal of Order on Motion to Dismiss Case 45 . (Appeal Fee - $505 Fee Paid, Receipt No. ACACDC-34044014.) (Attachments: # 1 Order at ECF 45)(Boyd, Kathryn) (Entered: 09/23/2022) |

| 09/23/2022 | [47](#) | REPRESENTATION STATEMENT re Notice of Appeal to 9th Circuit Court of Appeals, [46](#) . (Boyd, Kathryn) (Entered: 09/23/2022) |
|---|---|---|
| 09/27/2022 | [48](#) | NOTIFICATION from Ninth Circuit Court of Appeals of case number assigned and briefing schedule. Appeal Docket No. 22-55890 assigned to Notice of Appeal to 9th Circuit Court of Appeals, [46](#) as to plaintiff Kyle Hanagami. (mat) (Entered: 09/27/2022) |
| 10/03/2022 | [49](#) | MINUTES IN CHAMBERS ORDER MOVING CASE TO INACTIVE CALENDAR PENDING APPEAL by Judge Stephen V. Wilson. In light of Plaintiff's notice of appeal, the case will be stayed pending resolution of the appeal. All hearings and deadlines are currently vacated, and disposition on motions will be deferred until resolution of the appeal. The parties shall notify the Court, in writing, when the case should be restored to the active calendar. (MD JS-6. Case Terminated) (aco) (Entered: 10/04/2022) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 01/30/2023 15:48:59 | | | |
| **PACER Login:** | Dhecht11 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:22-cv-02063-SVW-MRW End date: 1/30/2023 |
| **Billable Pages:** | 6 | **Cost:** | 0.60 |